FILED

**IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

2015 JUL -2  P 12: 44

Civil Action No. 1:15 CV 847

CLER... U3 L..._..._T COURT
ALEX.....::.., \'.':.'G:.:.\

LmB / TcB

Kurt Mueller
    *Pro Se*
    Plaintiff,

    v.

UNITED STATES PATENT AND TRADEMARK OFFICE
(USPTO);

Michelle K. Lee, Under Secretary of
Commerce for Intellectual Property
and Director of the United States
Patent and Trademark Office, in her
official capacity;  and

Margaret A. (Peggy) Focarino,
Commissioner for Patents,
in her official capacity.


    Defendants

-------------------------------------

## NATURE OF THE CLAIMS

1.    Plaintiff seeks relief for Defendant's breach of contract.

## JURISDICTON

2.    This court has jurisdiction over Plaintiffs' claims for relief pursuant to 28 USC § 1346, because this action is brought against a federal agency for violation an express or implied contract with the United States. Additionally, the jurisdiction of this court is invoked pursuant to a federal question under 28 USC §1331.

## VENUE

3.    Venue rests properly in this Court pursuant to 28 USC § 1391(b) and (e), because, *inter alia*, a substantial part of the events or omissions giving rise to

the claims occurred within this judicial district, a substantial part of property that is the subject of the action is situated in this district, and a defendant in the action resides within this judicial district.

## PARTIES

4.   Plaintiff Kurt Mueller is a resident of the commonwealth of Virginia, residing at 5840 Cameron Run Terrace Apt 909, Alexandria, VA, 22303. Plaintiff proceeds *pro se*.

5.   Defendant Michelle Lee is the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, located at 600 Dulany Street, Alexandria, Virginia, 22314. The defendant is being sued in her official capacity as an agent of the United States Patent and Trademark Office, a US Government Agency.

6.   Defendant Margaret A. (Peggy) Focarino is the Commissioner for Patents of the United States Patent and Trademark Office, located at 600 Dulany Street, Alexandria, Virginia, 22314. The defendant is being sued in her official capacity as an agent of the United States Patent and Trademark Office, a US Government Agency.

## STATEMENT OF FACTS

## PRELIMINARY BACKGROUND

7.   Plaintiff has been employed by the USPTO since September 2007 as a patent examiner, and intends to remains with the USPTO for the foreseeable future.

8.   Plaintiff's relationship of employment is governed by, among other agreements, policies, and contracts, the Agreement Between U.S Department of Commerce / Patent and Trademark Office and The Patent Office Professional Association from 1986 (the "Collective Bargaining Agreement").

9.   As part of the Plaintiff's employment, the Plaintiff undertook the Signatory Authority Program.

10.  The Signatory Program is comprised of two major parts: partial, and full. Upon satisfactory completion of the partial signatory authority process, the Plaintiff would be eligible to participate in the full signatory authority process. Upon satisfactory completion of the full signatory authority process, the Plaintiff would

be considered to be a "primary" patent examiner, which among other financial and career benefits, would additionally allow the Plaintiff to be the sole examiner to work on, and ultimately approve official action on behalf of the USPTO, subject to the laws and rules governing such actions.

11.  The Plaintiff began the Partial Signatory Program on March 24, 2013. The program lasted 13 pay periods, ending on September 21, 2013. During this period, the technology center director, Wendy Garber, granted to the Plaintiff temporary partial signatory authority. Upon completion, Ms. Garber had the obligation under the Collective Bargaining Agreement and the rules regarding the Signatory Program (the agreements) to either grant the Plaintiff permanent partial signatory authority, or to provide questions of concern which would detail alleged deficiencies in the Plaintiff's quality of actions. Under the agreements, Ms. Garber was required to provide questions of concern within 10 calendar days. Ms. Garber timely provided a list of questions of concern on September 30, 2013.

12.  Under the agreements, the Plaintiff was allowed to present any rebuttal or comments to the question of concerns within 7 calendar days to Ms. Garber. The Plaintiff timely responded on October 7, 2013.

13.  Upon submission of the Plaintiff submission, Ms. Garber had the obligation under the agreements to either grant the Plaintiff permanent partial signatory authority or to deny the Plaintiff permanent partial signatory authority. Ms. Garber issued a denial letter to the Plaintiff on October 18, 2013.


## FACTS RELATED TO THE FIRST BREACH OF CONTRACT
### (The "Informal" grievance)


14.  Plaintiff hereby re-allege and incorporate the facts in the preceding paragraphs as if the same were fully set forth here.

15.  The Collective Bargaining Agreement, Article 11, section 6, clause A, provides:

> Within 20 calendar days after receipt of an unfavorable administrative decision, or the date of the event or action prompting the grievance or the date the grievant becomes aware or should have become aware of such action, the employee, or his or her representative must personally present the grievance to the employee's immediate supervisor. In the event of Office or Association grievances, the grievant representative must personally present the grievance to the lowest official with authority to adjust the grievance or to effectively recommend its adjustment.

16.  The Collective Bargaining Agreement, Article 11, section 6, refers to this first step in the grievance process as the "Informal Procedure".

17.  Upon receiving the denial letter, under the terms of the collective bargaining agreement, the Plaintiff had the option to file a grievance, alleging reasons why the denial decision by Ms. Garber was not in keeping with the rules governing the partial signatory authority. The Plaintiff was required by the collective bargaining agreement to file a grievance within 20 calendar days. On behalf of the Plaintiff, the union at the USPTO (the Patent Office Professional Association, or POPA) , timely filed a grievance on October 26, 2013. The grievance was assigned a POPA tracking number of 10-13-KM-35.

18.  The Collective Bargaining Agreement, Article 11, section 6, clause D, provides:

> The official receiving the informal grievance **shall inform** the grievant, and/or the Association, as appropriate, of his/her decision **within 20 calendar days** after receipt of the grievance. If the decision does not resolve the grievance, the official **shall immediately** issue a written memorandum to the grievant stating that the parties were unable to resolve the matter informally. Copies of the memorandum shall be provided to the Association, as appropriate.

(emphasis added).

19.  The language of the collective bargaining agreement is both unambiguous and mandatory; the official **shall**.

20.  As a consequence of this mandatory language, Technology Center (TC) Director Wendy Garber was contractually required to respond within 20 Calendar days.

21.  Plaintiff was never asked for an extension of time, nor did Plaintiff ever agree to any extension of time.

22.  As noted in the October 7, 2014 letter written by the TC Director responding to the informal grievance noted, the underling grievance was filed on October 26, 2013. That means that a reply was not issued for **346 calendar days** from the date the informal grievance was made. Even under a more charitable interpretation of the rules, the same October 7, 2014 letter notes that the grievance meeting was held on April 24, 2014. That means that a reply that was **contractually required to be issued within 20 calendar days** was in fact not issued for **at least 166 calendar days** even under the most favorable interpretation of the Contractual language available to Defendant.

23. Although the grievance was initially filed as a Union by POPA grievance, on April 23, 2014, then POPA Grievance Director Tamara Kyle sent correspondence to HR / Labor Relations official Leia Butler  stating "Kurt will be representing himself in today's presentation with the full support of POPA.  As such, his outstanding grievance is to be considered pro se from this point on." Therefore, as of April 23, 2014, it was made clear by POPA to the Defendants that there was no agent acting on behalf of the Plaintiff, and Defendant was aware as of that date that no party could agree to any extension of time on behalf of the Plaintiff except the Plaintiff himself.

24. On July 31, 2014, the Plaintiff sent an email to TC Director Garber, stating "I write to follow up on the status of the grievance previously filed by POPA on my behalf regarding the denial of partial signatory authority. Since it has been nine months since the initial denial and 3 months since the oral presentation of the "informal", I would like move this process forward. I appreciate your considered attention on this matter."

25. July 31, 2014 was after the time that POPA abandoned the case, and required Plaintiff to proceed pro se.

26. Later that same day (July 31, 2014), TC Director Wendy Garber responded to the injury stating "Kurt – thank you for following up.  I apologize for the delay. Due to the number of errors for which reconsideration was requested, going through them and giving them the level of consideration that they require takes a lot of time.  I will give you a response as soon as I can.  Please note, too, that I will be out of the office for 2 weeks beginning next Wednesday. Again – I apologize for the delay."

27. At no time after either April 23, 2014 nor after July 31, 2014 was the Plaintiff asked by TC Director Garber nor any other person acting on her behalf for an extension of time to respond. Even though as noted above the Collective Bargaining Agreement required a response within 20 calendar days, even after the reminder on July 31 it would be another **68 calendar days** before a response.

28. The failure of TC Director Wendy Garber to respond according to the time limits provided by the Collective Bargaining Agreement manifest a clear breach of contract, placing the agency in procedural default.

29. The USPTO has clearly and unmistakably bound itself to a mandatory procedure that was not followed. Even worse, the violation here is not a mere technical or trivial violation. The delay in time has obscured the Plaintiff's mental recall of the facts relevant to the case, thus prejudicing the Plaintiff's ability to meaningfully forward his interests. The facts recited above lay out a clear, unambiguous case for breach of contract.

## FACTS RELATED TO THE SECOND BREACH OF CONTRACT
### (The "Formal" grievance)

30. Plaintiff hereby re-allege and incorporate the facts in the preceding paragraphs as if the same were fully set forth here.

31. The Collective Bargaining Agreement, Article 11, section 7, clause A, provides:

> If the grievance is not resolved informally, the grievant may file a formal written grievance within 10 calendar days of receipt of the informal grievance decision.

32. The Collective Bargaining Agreement (CBA), Article 11, sections 7 & 8, refers to this first step in the grievance process as the "Formal Procedure".

33. Upon receiving the response to the informal, under the terms of the collective bargaining agreement, the Plaintiff had the option to appeal his grievance. The Plaintiff was required by the collective bargaining agreement to file a grievance within 10 calendar days.

34. On October 15, 2014, the Plaintiff timely requested an extension of time, by sending a request to HR / Labor Relations official Leia Butler, stating via email correspondence "Article 11, Section 6(A) of the Collective Bargaining Agreement provides that 'If the grievance is not resolved informally, the grievant may file a formal written grievance within 10 calendar days of receipt of the informal grievance decision.' Thus, a reply to the next highest agency official is presently due by 10/18. I request an extension of time until end of the day on 10/31. POPA and I have not yet been able to meet to discuss these issues. Further, given the length of the time since the initial denial, these issues are no longer fresh. Further time is indicated to effect a meaningful response."

35. On October 17, 2014, the Plaintiff followed up with HR / Labor Relations official Leia Butler via instant message, inquiring "Hey Leia. I assume you recieved [sic] my email regarding an extension of time?", to which Ms. Butler responded 15 minutes later with "yes, extension granted. i will respond to email now."

36. On October 23, 2014, HR / Labor Relations official Leia Butler followed up via email, stating "Per my instant message sent to you last week, this extension is granted."

37. Having timely requested and timely received an extension of time, the Plaintiff responded by appealing the response to the informal from Technology Center (TC) Director Wendy Garber to Associate Deputy Commissioner (ADC) Valencia Martin-Wallace on October 31, 2014.

38. The Collective Bargaining Agreement, Article 11, section 8, clause A, provides:

> [In a formal grievance proceeding] The official shall answer the merits of the grievance, provide any pertinent information relevant to the grievance, and present any allegations of procedural deficiencies **within ten (10) calendar days** of filing the formal grievance. The official's answer **shall** clearly indicate the reason(s) for his/her position and shall address the points raised by the grievant in the formal grievance.

(emphasis added)

39. The language of the collective bargaining agreement is both unambiguous and mandatory; the official **shall**.

40. As of today, the ADC has not replied to the formal grievance. Although the formal grievance was timely filed with the ADC, as of July 2, 2015 it has been **244 calendar days** since the filing of the formal grievance papers without any reply from the ADC.

41. The Plaintiff had requested an oral presentation to help assist the ADC in understanding any portion of the written remarks which may have been unclear. Although a meeting had been scheduled for December 3, 2014, the meeting did not occur because the ADC failed to appear at the agreed upon time and place. Neither a reason nor an apology for the ADC's failure to appear was ever provided to the Plaintiff.

42. The Plaintiff takes note that even though the meeting did not in fact take place, December 3, 2014 was **211 calendar days** ago as of July 2, 2015.

43. The failure of ADC Valencia Martin-Wallace to respond according to the time limits provided by the Collective Bargaining Agreement manifest a clear breach of contract, placing the agency in procedural default.

44. The USPTO has clearly and unmistakably bound itself to a mandatory procedure that was not followed. Even worse, the violation here is not a mere technical or trivial violation. The delay in time has obscured the Plaintiff's mental recall of the facts relevant to the case, thus prejudicing the Plaintiff's ability to meaningfully forward his interests. The facts recited above lay out a clear, unambiguous case for breach of contract.

## FACTS RELATED TO THE THIRD BREACH OF CONTRACT
### (The "Exceptions")

45. Plaintiff hereby re-allege and incorporate the facts in the preceding paragraphs as if the same were fully set forth here.

46. The Collective Bargaining Agreement, Article 11, section 7, clause A, provides:

> The grievant may file exceptions within ten (10) calendar days of receipt of the official's answer. The grievant's exceptions (if any) shall become a part of the grievance file.

47. The Collective Bargaining Agreement, Article 11, section 7, clause C, provides:

> In any grievance against the Office, all papers submitted under this section shall be filed with the Commissioner.

48. In a February 20, 2015 email correspondence, HR / Labor Relations official Leia Butler wrote "I will continue to follow up with management to obtain a response to the Formal Grievance.  Its understood that you may choose to move forward to the next step of the grievance process, which is to file exceptions."

49. Given this permission, the Plaintiff timely filed a response with the Commissioner, who is a named defendant in this complaint, on February 27, 2015.

50. The Collective Bargaining Agreement, Article 11, section 8, clause B, provides:

> The Commissioner or Association President, as applicable, shall appoint himself/herself or another official as the deciding official within two (2) workdays after receipt of grievant's exceptions.

51. To the best knowledge of the Plaintiff, the Commissioner has not either appointed herself nor another official. Under the terms of the Collective Bargaining Agreement, the Exceptions is therefore pending directly with Commission Foccarino, a named defendant in this action.

52. The Collective Bargaining Agreement, Article 11, section 8, clause E, provides:

> The deciding official may attempt to settle the grievance. However, if settlement is not possible, the deciding official shall render a written decision **within fifteen (15) calendar days** of his appointment or the close of the meeting.

(emphasis added)

53. The language of the collective bargaining agreement is both unambiguous and mandatory; the official **shall**.

54. Although the formal grievance was timely filed with the Commissioner, as of July 2, 2015 it has been **125 calendar days** since the filing of the formal grievance papers without any reply from the Commissioner.

55. In a May 21, 2015 email correspondence, HR / Labor Relations official Leia Butler wrote "As communicated to you earlier, management is in the process of responding to the merits contained in your formal grievance, which is derivative from the informal grievance. The exceptions you filed are based on the grievance process."

56. On each of May 26, 2015, June 02, 2015, June 09, 2015, and June 23, 2015, the Plaintiff has sent an email to HR / Labor Relations official Leia Butler asking "For clarity, does management intend to respond to the exceptions letter dated Feb. 27, or not?"

57. Despite the fact that this is a simple yes / no question, and the Plaintiff has now asked multiple times over the course of a month, neither HR / Labor Relations official Leia Butler nor any other official at the USPTO has responded to the inquiry.

58. It is therefore unclear that the Commissioner even intends to respond to the filed exceptions letter, as the Commissioner is contractually required to under the Collective Bargaining Agreement. Defendant's lack of response is further evidence for their continued contempt at any good faith resolution of this dispute.

59. The failure of Commissioner Peggy Focarino to respond according to the time limits provided by the Collective Bargaining Agreement manifest a clear breach of contract, placing the agency in procedural default.

60. The USPTO has clearly and unmistakably bound itself to a mandatory procedure that was not followed. Even worse, the violation here is not a mere technical or trivial violation. The delay in time has obscured the Plaintiff's mental recall of the facts relevant to the case, thus prejudicing the Plaintiff's ability to meaningfully forward his interests. The facts recited above lay out a clear, unambiguous case for breach of contract.

## LEGAL ALLOGATIONS

61. Plaintiff hereby re-allege and incorporate the facts in the preceding paragraphs as if the same were fully set forth here.

62. The USPTO's repeated failure to obey its own agreed upon rules for the processing of grievances, especially in view of the degree and scope of the failure, is both shocking and inexcusable. The length of the delay by the office, without cause or agreement to extend, of delays of this scope and length, can only justly result in procedural default on the part of the USPTO.

63. As also noted by the October 7, 2014 letter by TC Director Garber, this grievance was designated as pro se by POPA (without the permission of the Plaintiff, and POPA abandoned the Plaintiff as the Plaintiff's representative only as of the date of the oral presentation relating to the informal grievance, thus prejudicing the Plaintiff). The TC Director's letter is clear that Defendants were well aware of the fact that the Plaintiff was representing himself; therefore, the Plaintiff had no agent or representative who was empowered to agree to any extension of time and the Defendants were aware that there no such agent.

64. Nevertheless, the Plaintiff received no request for any extension of time, nor did the Plaintiff ever receive any notice from any person that an extension had been asked of by a third party or that an extension had been granted by a third party. Assuming arguendo that the TC Director asked for and received an extension by some third party, the Plaintiff was not notified and if he had been the Plaintiff would have strenuously objected at the waiver of his contractual rights on his behalf. Likewise, the Plaintiff did not receive a request for an extension of time with respect to the formal grievance process pending before the ADC until February 13, 2015, at which time the formal grievance had already been pending for at least **72 calendar days** even under the most charitable interpretation of the rules. The Plaintiff denied the request because as shown above the time period for the office to respond provided by the collective bargaining agreement had long since lapsed, and therefore the request was not even remotely close to timely.

65. Even if the Office wanted to argue that certain circumstances necessitated or made reasonable an extension *sua sponte*, the Plaintiff would first argue that the Office is without power to make such unilateral extension because it is bound by a contractual agreement that, as a pro se party who is a party to the contract, only the Plaintiff was empowered to waive, and second, even if the office did have such residual power, if the contractual language limiting the office's response time to 20 calendar days is to have any meaning whatsoever, the Office's residual power cannot be so large that the Office can unilaterally extend its own period for response to the informal grievance by a **factor of eight**. Likewise, the contractual language limiting the period of response for a formal response limiting the office's limiting the office's response time to 10 calendar days is to have any meaning whatsoever, the Office's residual power, assuming it exists at all, cannot be so large that the Office can unilaterally extend its own

period for response by a **factor of twenty three**. Likewise, the contractual language limiting the period of response for exceptions limiting the office's limiting the office's response time to 15 calendar days is to have any meaning whatsoever, the Office's residual power, assuming it exists at all cannot be so large that the Office can unilaterally extend its own period for response by a **factor of thirteen.**

66. That the office has now violated its own agreed upon time frames for response **three times**, on all three' occasions by **at least** a factor of **eight**, would be a laughable farce by the sheer scope of its absurdity if this matter were not serious.

67. The time periods provided for in the Collective Bargaining Agreement are not present merely to make the lives of the parties to a dispute less convenient. Instead, these time periods exists to make sure that the facts relevant to a dispute as clear in the minds of the participants as possible, as well as to ensure the prompt resolution of any dispute.  The grant of temporary partial signatory authority started on March 23, 2013; some of the office actions at the root of this issue are now almost two years old. In the many dozens of weeks that have followed the originally filing of this dispute, the Plaintiff has touched on hundreds of distinct matters. The office actions that form the basis of this case are now, at best, a distant, blurry memory. To now expect the Plaintiff to be able to meaningfully respond, given the elapsed time, the number of issues present, and the condensed time frame for response to which the Office holds the Plaintiff to even as it provides itself apparent unilateral authority to extend its own contractual deadlines as it sees fit without any apparent limits, denies the Plaintiff any meaningful due process.

68. The Defendant has two responses presently outstanding, and even though they are both dramatically overdue, there is simply no end in sight. Defendant has stopped responding to repeated inquiries regarding the status of their blatantly overdue response. All attempts by the Plaintiff to seek a good faith resolution of the dispute have been met with silence.

69. Plaintiff has made numerous and repeated efforts to resolve this issue amicable to the satisfaction of both parties. Defendants refuse to engage the good faith efforts of plaintiff to resolve this matter.  This court must intervene, if the Defendants are to ever be held accountable for their inexcusable and persistent delays. Without this court's intervention, the Defendants will continue in their conduct, both with respect to the present dispute and other disputes that might arise in the future.

## REQUEST FOR RELEIF

Therefore, the Plaintiff respectfully requests that this court:

70. Declare that Defendants are in breach of contract, and direct Defendants to grant Plaintiff Permanent Full Signatory Authority.

71. In the alternative, declare that Defendants are in breach of contract, and direct Defendants to grant Plaintiff Permanent Partial Signatory Authority.

72. In the alternative, declare that Defendants are in breach of contract, and direct Defendants to resolve Plaintiff's grievance in favor of Plaintiff.

73. Permanently enjoin Defendants, their officers, agents, servants, employees, and all other persons acting in concert or participation with them, from unilaterally extending any time period provided for by the Collective Bargaining Agreement with respect to any employee of the Defendant, so as to deter future behavior like that that is at issue here.

74. Provide a writ of mandamus to Defendant, directing them carry out their contractually and statutorily required duties in this matter.

75. Grant such further additional relief which the court may deem appropriate or equitable.

· Kurt Mueller
*Pro Se*

5840 Cameron Run Terrace Apt 909,
Alexandria, VA, 22303
(202) 670-3496
kurt.mueller@gmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
ALEXANDRIA DIVISION

Kurt Mueller
_____
Plaintiff,

v.

United States Patent and Trademark Office
_____
Defendant.

Civil Action No.

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

Kurt Mueller
_____
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: July 2 2015 (Date)

**OR**

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)