UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KURT MUELLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-CV-847 (LMB/TCB) |
| | ) |
| U.S. PATENT AND TRADEMARK OFFICE, ET AL., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, U.S. Patent and Trademark Office ("USPTO" or "Agency"), Michelle Lee, Under Secretary of Commerce for Intellectual Property and Director of the USPTO, and Margaret Focarino, former Commissioner for Patents, by counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by Plaintiff Kurt Mueller for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### **INTRODUCTION**

Plaintiff is a patent examiner at the USPTO and has been since 2007. On July 2, 2015, Plaintiff filed suit against the Agency alleging that the USPTO failed to follow various procedural requirements of the collective bargaining agreement between the USPTO and one of the Agency's unions in connection with grievances Plaintiff filed regarding personnel decisions. Plaintiff cites two statutes, 28 U.S.C. § 1346 (Little Tucker Act) and 28 U.S.C. § 1331 (Federal Question) as bases for invoking this Court's jurisdiction. However, the entirety of Plaintiff's complaint should be dismissed for lack of jurisdiction because Plaintiff's complaint is moot.

1

Plaintiff's grievances were adjudicated and the terms of the CBA do not allow for the relief he requests simply because a timing deadline was missed.  Furthermore, even if his claims were not moot, the Civil Service Reform Act of 1978 ("CSRA") is the integrated and comprehensive scheme for resolving federal employment disputes and precludes employees from bringing suits to enforce collective bargaining agreements in federal court.  Finally, even if the CSRA did not preclude review, Plaintiff cannot show the existence of a contract between himself and the USPTO, nor does he claim entitlement to any money damages, as required to sue under the Little Tucker Act.  Nor can this Court's jurisdiction rest on 28 U.S.C. § 1331 alone absent a valid waiver of sovereign immunity.  For these reasons, the Court lacks subject matter jurisdiction over this action, and it should be dismissed.

## FACTUAL BACKGROUND[1]

1.      Pursuant to 5 U.S.C § 7101 et seq., the United States Patent and Trademark Office and the Patent Office Professional Association ("POPA") have entered into a collective bargaining agreement ("CBA" or "Agreement").  Exhibit ("Ex.") 1 (CBA)[2].  Article 11 of the CBA provides the grievance procedure and lists the types of complaints by an employee that are covered by the procedure, including "a claim of breach of [the Agreement]."  Ex. 1, pp. 27-34, Article 11.  The grievance procedure also includes timeframes for filing and responding to grievances.  *Id.* at Article 11, sect. 6-8.  For example, the procedures require a deciding official

---

[1] Much of the factual recitation provided in this section is derived from the allegations contained in Plaintiff's complaint and attachments.  Defendants assume the accuracy of these allegations only for the purposes of this motion to dismiss.

[2] As the Fourth Circuit has repeatedly held, "[w]hen a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *See, e.g., Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotations omitted).

to issue a decision on an informal grievance within 20 days of receipt of the grievance, *id.* at Article 11, sect. 6, clause D, and a decision on a formal grievance within 15 days of when the official was appointed or after close of a settlement meeting.  *Id.* at Article 11, sect. 8, clause E; Compl. ¶ 52.  The grievance procedure also allows for the Agency or the union to invoke arbitration if grievances are not resolved at the Agency level.  Ex. 1*,* Article 11, sect. 9.  However, the grievance procedures do not give employees the right to invoke arbitration on their own.  *Id.*  Nor do the procedures provide a mechanism for judicial review of grievances.  *Id.*  Article 11 provides that the grievance procedure is the "sole and exclusive procedure available to bargaining unit members or the [union] for resolving grievances under this or any negotiated agreement between the parties."  *Id.* at Article 11, sect 2.

      2.      To achieve the position of Primary Examiner, a patent examiner must complete the USPTO's Signatory Authority Program.  Ex. 2. at 1.  Under the Signatory Authority Program, the work of a patent examiner is evaluated during separate periods of time to determine if the examiner should be delegated authority to sign office actions, which represents the official position of the USPTO with respect to a patent application.  *Id*.  The program is a four step process.  *Id.*; Compl. ¶ 10.  In the first step, after an examiner becomes a GS-13 and has performed at least at the Fully Successful level in all elements of the examiner's Performance Appraisal Plan ("PAP") during the ten consecutive pay periods following promotion to GS-13, the examiner is granted temporary Partial Signatory Authority, which allows him to sign most non-final office actions.  Ex. 2 at 2.  In the second step, the examiner enters a trial period of applying his/her temporary authority and if the examiner meets certain criteria during the trial

period, the examiner can be granted permanent Partial Signatory Authority. *Id.*[3] In the third step, after an additional period of Fully Successful performance with permanent Partial Signatory Authority, the examiner is granted temporary Full Signatory Authority – the authority to sign final office actions. *Id.* at 3. In the fourth step, an examiner enters into another trial period, during which his or her performance is evaluated based on the standards in the PAP for an examiner with permanent Full Signatory Authority. *Id.* at 2-3. If the examiner completes the trial period at the Fully Successful level, he or she is granted permanent Full Signatory Authority.

       3.       On September 17, 2007, Plaintiff was hired on a career conditional appointment with the PTO as a Patent Examiner. Compl. ¶ 7; Ex. 3. He is assigned to USPTO's Technology Center 2100, which is responsible for reviewing patent applications relating to computer architecture and software. *Id.*[4]

       4.       Plaintiff was promoted to GS-13, performed at the Fully Successful level for ten consecutive pay periods following his promotion, and was granted temporary Partial Signatory Authority for a trial period lasting from March 24, 2013 to September 21, 2013. Compl. ¶ 11.

       5.       On October 18, 2013, after the trial period ended, Plaintiff was issued a Notice of Denial of Permanent Partial Signatory Authority, due to the quality of his work during the trial period not reaching the required level. Ex. 4; Compl. ¶ 13.

       6.       On October 26, 2013, POPA filed an informal grievance on Plaintiff's behalf, challenging the denial of permanent Partial Signatory Authority. Ex. 5; Compl. ¶¶ 17, 22-23.

---

[3] The grant of permanent Partial Signatory Authority does not come with a pay raise or promotion.
[4] See also http://www.uspto.gov/about-us/organizational-offices/office-commissioner-patents/office-deputy-commissioner-patent-9.

7.     On April 23, 2014, a grievance meeting was held.  Ex. 6; Compl. ¶ 22.  Plaintiff represented himself at the meeting.  *Id.*

8.     On October 7, 2014, Plaintiff was issued a decision on his informal grievance, upholding the denial of permanent Partial Signatory Authority.  Ex. 7; Compl. ¶ 22.

9.     On October 31, 2014, Plaintiff filed a formal grievance regarding the denial of permanent Partial Signatory Authority with Valencia Martin-Wallace, then-Assistant Deputy Commissioner for Patent Operations.  Ex. 8; Compl. ¶ 37.

10.    On February 27, 2015, Plaintiff filed a document titled "Exceptions resulting from the denial of Partial Signatory Authority" with then-Commissioner for Patents, Margaret Focarino, arguing that his previously filed informal and formal grievances were not processed in accordance with the timeframes laid out in the CBA.  Ex. 9; Compl. ¶ 49.

11.    Ms. Focarino retired from the Agency effective June 30, 2015.  Ex. 10.

12.    On July 2, 2015, Plaintiff filed suit in this Court alleging that the USPTO failed to follow various procedural requirements of the CBA between the USPTO and POPA in connection with grievances he filed after he was denied partial Permanent Signatory Authority.  *See generally*, Compl.

13.    On August 13, 2015, Plaintiff was issued a decision on his formal grievance on denial of permanent Partial Signature Authority upholding that denial.  Ex. 11.

## STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant.  *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).  A defendant may move to dismiss

under Rule 12(b)(1) for lack of subject matter jurisdiction in two ways.  First, the defendant "may contend that the complaint simply 'fails to allege facts upon which subject matter jurisdiction is based.'" *Schreiber v. Dunabin*, 938 F. Supp. 2d 587, 594 (E.D. Va. 2013) (quoting *Adams v. Bain*, 697 F.2d at 1219).  "In that case, 'all the facts alleged in the complaint are assumed to be true and the [plaintiff] is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id*.  Secondly, a Rule 12(b)(1) motion may also attack the existence of subject matter jurisdiction over the case apart from the pleadings.  *United States ex rel. Carter v. Halliburton Co.*, 973 F. Supp. 2d 615, 622 (E.D. Va. 2013) (citing *Adams v. Bain*, 697 F.2d at 1219).  In this type of Rule 12(b)(1) motion, "the Court may look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.*  (internal quotation omitted); *Velasco v. Gov't of Indonesia,* 370 F.3d 392, 398 (4th Cir. 2004) (holding that "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment") (citations omitted).  If the Court determines that it lacks subject matter jurisdiction, it must dismiss the action in its entirety.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

**ARGUMENT**

### I.     Plaintiff's Claims are Moot

Since the complaint was filed, a decision on Plaintiff's formal grievance was rendered. Ex. 11.

'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction.' " *Simmons v. United Mortg. & Loan Inv., LLC,* 634 F.3d 754, 763 (4th Cir. 2011) (*quoting United States v. Hardy,* 545 F.3d 280, 283 (4th Cir. 2008)).  The Constitution limits the

jurisdiction of federal courts to actual "Cases" or "Controversies." *See* U.S. Const., art. III, § 2, cl. 1.  A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Simmons*, 634 F.3d at 763 (internal citations omitted).  The Supreme Court has held that "[t]o qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (internal quotation marks omitted).   A case can become moot due to a change in factual circumstances or in the law. *Simmons*, 634 F.3d at 763.  "The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties." *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (internal quotation marks omitted).

In his complaint, Plaintiff claimed that the USPTO did not respond to his formal grievance or "exception" regarding the denial of permanent Partial signatory authority.  Compl. ¶¶ 40, 68-69.  The relief sought by Plaintiff in this case was an adjudication of the formal grievance and "exception" in his favor, overturning the denial of permanent Partial Signatory Authority.  Compl. ¶¶ 70-72.

On August 13, 2015, the Agency rendered the requested adjudication on the formal grievance.  Ex. 11.  Plaintiff was issued a decision on his formal grievance, which upheld the denial of permanent Partial Signatory Authority.[5]  *Id.*  Consequently, Plaintiff no longer has a live case or controversy justifying injunctive relief against the Agency's alleged inaction.

Although Plaintiff did not receive the exact outcome he wanted, which was to overturn

---

[5] The Agency had no obligation also to respond to Plaintiff's so called "exception" because (1) Plaintiff's February 27, 2015 letter was not properly filed under the CBA's negotiated grievance procedure and (2) could not have been an exception in any event because there was no formal grievance decision for him to respond to.  Ex. 1, Article 11, Section 8(A).

7

the denial of permanent Partial Signatory Authority, he received the remedy he was due under the terms of the CBA, which was to receive an adjudication of his grievances.  Ex. 1, Article 11, Section 8.  For the reasons discussed in Sections II and III below, this Court does not have jurisdiction to review Plaintiff's breach of collective bargaining agreement claims.  *See* Sections II and III *infra*.

However, even assuming *arguendo* that this Court could adjudicate a matter under the CBA, the terms of the CBA do not allow for the relief that Plaintiff wants simply by virtue of a timing deadline being missed.  *See* Ex. 1, Article 11, Section 8.  Moreover, as discussed in Section III (A) *infra*, even if Plaintiff were entitled to an adjudication of his February 27, 2015 document and formal grievance in his favor, the Court lacks jurisdiction to grant equitable relief for a claim that is brought under the Little Tucker Act, such as Plaintiff's.  *See* Section III(A); *see also Lee v. Thornton,* 420 U.S. 139, 140 (1975) (the Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief); *Bobula v. Dep't of Justice,* 970 F.2d 854, 858 (Fed. Cir. 1992) ("Without a claim for monetary damages, there [is] no basis for district court jurisdiction pursuant to § 1346(a)(2).").

As the Agency rendered the requested adjudication on the formal grievance, Plaintiff has already obtained the relief to which he is entitled under the CBA.  Therefore, this Court should dismiss Plaintiff's claim regarding the formal grievance as moot.  *See Friedman's, Inc. v. Dunlap,* 290 F.3d 191, 197 (4th Cir. 2002) (affirming district court's dismissal because Plaintiff already received the relief sought).  *Cf Tran v. Holder*, Civil Action No. DKC 10–2503, 2011 WL 3236098 (D. Md. July 27, 2011) (dismissing mandamus action as moot where plaintiff received requested adjudication).

## II. Plaintiff's Breach of CBA Claims are Precluded by the CSRA

Although Plaintiff alleges the basis of his claim is breach of contract, the salient fact is that his allegations arise out of a federal collective bargaining relationship. To the extent that Plaintiff may seek any remedy for the USPTO's alleged untimely responses to his grievances, the remedy is exclusively through the CSRA and the exclusive jurisdiction for adjudications of such claims lies with the Federal Labor Relations Authority ("FLRA") and thereafter the appropriate Court of Appeals. Consequently, this Court should dismiss this action, as it lacks jurisdiction over Plaintiff's claims.

### A. The CSRA is the Exclusive Review Scheme for Federal Labor Relations

The Supreme Court has stated that the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 *et seq.*, "comprehensively overhauled the civil service system" and created an "elaborate new framework for evaluating adverse personnel actions against federal employees." *United States v. Fausto*, 484 U.S. 439, 443 (1988) (internal quotation marks and alteration omitted). The CSRA describes "in great detail the protections and remedies applicable to such action, including the availability of administrative and judicial review." *Id*. For example, Chapter 23 regulates prohibited personnel practices and specifies employee's rights of redress where applicable. *See* 5 U.S.C. §§ 1204, 1212, 1214, 1215, 2303. Chapter 75 grants certain employees the right to appeal only serious adverse employment actions, but only to the Merit Systems Protection Board and thereafter the Federal Circuit. 5 U.S.C. §§ 7511-7513. Chapter 71 of the CSRA, also known as the Federal Service Labor-Management Relations Statute ("FSLMRS"), is the detailed statutory scheme governing federal agencies' collective bargaining relationships with employees and their representatives. 5 U.S.C. § 7101 et seq. It is Chapter 71 of the CSRA that preempts Plaintiff's breach of collective bargaining claims.

Chapter 71 provides authority for an agency of the United States government to enter into a collective bargaining agreement with a labor organization. 5 U.S.C. § 7101 et seq. In addition to authorizing collective bargaining agreements in the public sector, the FSLMRS also outlines certain grievance procedures that must be included in any collective bargaining agreement for grievances falling within its coverage. *See* 5 U.S.C. § 7121. Section 7121(a)(1) provides that such grievance procedures "shall be the exclusive administrative procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). Section 7121(a)(2) provides that the agreement may exclude any matter from the agreement's grievance procedures. 5 U.S.C. § 7121(a)(2).

Section 7121(b)(1)(C)(iii) provides that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration which may only be invoked by the union or the agency. 5 U.S.C. § 7121(b)(1)(C)(iii). If the grievance and arbitration process fail to resolve the parties' differences, either party may file exceptions to the arbitrator's award with the FLRA, a three member, independent, bipartisan body. 5 U.S.C. § 7122(a). The FLRA reviews the arbitrator's award to ensure that it is not "contrary to any law, rule, or regulation" or otherwise deficient on "other grounds similar to those applied by Federal courts in private sector labor-management relations." 5 U.S.C. § 7122(a). To the extent that an FLRA order is judicially reviewable, such review may be obtained by a petition in the appropriate Court of Appeals. 5 U.S.C. § 7123(a).

Article 11 of the CBA between the USPTO and POPA provides the grievance procedure required by Section 71. Ex. 1, Article 11. "Grievance" is defined by the CBA to include a complaint by an employee against the Agency concerning "the effect or interpretation, or a claim

10

of breach, of [the] Agreement." *Id.* at Section 3(C). Therefore, Plaintiff's breach of collective bargaining claim is explicitly covered for in the grievance procedure. The grievance procedure has an informal complaint process followed by a formal complaint process. Ex. 1, Article 11, Sections 6-8. The CBA then provides for arbitration that may be invoked only by the union or the Agency. *Id.* at Section 9. Thereafter the CSRA provisions regarding the FLRA and the Court of Appeals become applicable. 5 U.S.C. §§ 7122(a) and 7123(a).

### B.     The CSRA Precludes Plaintiff's Claims

The CSRA regulates virtually every aspect of federal employment, including labor-management relations. In particular, Chapter 71 of the CSRA provides a comprehensive scheme to deal with federal labor-management disputes and prescribes in great detail the remedies applicable including the availability of administrative and judicial review. *See* 5 U.S.C. § 7101 *et seq.*; *see also Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 637-38 (D.C. Cir. 2013); *Dep't of Def. v. FLRA,* 685 F.2d 641, 644 (D.C. Cir. 1982). Noticeably missing from the complex statutory scheme for resolution of federal labor disputes is any mention of federal district court review. The absence of such a jurisdictional grant is a clear indication that Congress intended to bar federal labor dispute actions in district courts. *Yates v. United States Soldiers' and Airmen's Home, et al.,* 533 F. Supp. 461, 464 (D.D.C. 1982).

Furthermore, neither the CSRA nor its legislative history contain any indication that Congress intended that federal labor dispute claims, including claims based on collective bargaining agreements, be brought in federal district court. Congress "intentionally provided and intentionally chose not to provide particular forums and procedures for particular kinds of claims." *Am. Fed'n of Gov't Emps.,* 716 F.3d at 636. For example, Congress explicitly provided

11

a mechanism for private sector employees to bring breach of collective bargaining agreement actions against their private employers.  Section 301 of the Labor Management Relations Act provides that employees of private sector employers may bring suits for breach of collective bargaining agreements against their employers in federal district court.  29 U.S.C. § 185(a).  The CSRA contains no analogous provision for federal employees.  Furthermore, "the legislative record indicates that Congress did, in fact, consider and reject a proposed provision simialr to s 301 when it enacted the [CSRA]."  *Yates,* 533 F. Supp. at 464 (citing H.R. Rep. No 95-1403, 95th Cong., 2d Sess., 286 (1978) and H.R. Rep. No. 95-1717, 95th Cong., 2d Sess., 157 (1978)).  That rejection is key and makes clear that "Congress intended that disputes involving the interpretation and enforcement of collective bargaining agreements be resolved through the grievance/arbitration machinery."  *Id.*

Plaintiff attempts to circumvent Chapter 71 the CSRA by bringing a breach of collective bargaining agreement action in federal district court, even though the CBA itself says that the grievance procedure is the "sole and exclusive procedure available to bargaining unit members or the [union] for resolving grievances under this or any negotiated agreement between the parties."  Ex. 1, Article 11, sect 2.  However, Courts have repeatedly held that breach of collective bargaining agreement actions such as Plaintiff's fall within the CSRA's exclusive remedial scheme, thereby precluding federal courts from exercising jurisdiction over such claims.  *See Wiley v. Shell,* No. 13-5310, 2014 WL 2209011 (D.C. Cir. Apr. 17, 2014) (finding the district court properly dismissed breach of the collective bargaining agreement action for lack of subject matter jurisdiction "because the exclusive remedial scheme of the Civil Service Reform Act provides for judicial review, if at all, *only* in the appropriate court of appeals, not in

district court."); *Bobula v. Dep't of Justice,* 970 F.2d at 857 (noting that the "CSRA was intended to be a comprehensive and exclusive legislative scheme to govern federal personnel matters" and finding no jurisdiction to review the underlying personnel matter); *Yates*, 533 F. Supp. at 464-65 (holding that unfair labor practice jurisdiction granted to FLRA under the CSRA preempts federal court jurisdiction as to such issues and thus the district court lacked jurisdiction over alleged breach of CBA action). *Cf. Doe v. United States,* 513 F.3d 1348, 1354-1355 (Fed. Cir. 2008) (holding that an employee may not enforce rights that are covered by a collective bargaining agreement's negotiated grievance procedure in the Court of Federal Claims); *Todd v. United States,* 386 F.3d 1091, 1094–95 (Fed.Cir.2004) (holding that the Court of Federal Claims lacked jurisdiction to hear a Federal employee's breach of contract claim based on a collective bargaining agreement).

Plaintiff's claims are preempted by the CSRA, even if brought under the guise of other statutes. *See Bobula v. Dep't of Justice,* 970 F.2d at 858 ("Therefore, the settlement agreement may not be enforced as a contract outside the CSRA in any forum, including the district court under the Little Tucker Act."); *Hall v. Clinton,* 235 F.3d 202, 206 (4th Cir. 2000) (holding that "the CSRA would operate to the exclusion of all other statutory remedies for claims arising out of the federal employment relationship.").

"[A]s with all of the CSRA," Chapter 71 is "an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining," and "federal employees may not circumvent that structure by seeking judicial review outside the CSRA's procedures." *Am. Fed'n of Gov't Emps.,* 716 F.3d at 636 (internal quotation marks omitted). As such, Plaintiff's only remedy for the Agency allegedly

13

failing to respond to his grievances in the timeframe prescribed in the CBA is to request that the union invoke arbitration. Ex. 1, Article 11, Sect. 9. Pursuant to both the CBA and the CSRA, arbitration may be invoked only at the discretion of the union or the Agency. 5 USC § 7121(b)(1)(c)(iii); Ex. 1, Article 11, Sect. 9. Neither the CBA nor the CSRA provide any other recourse for alleged breaches. *Id.* Nor do they authorize alleged breaches to be challenged by way of a lawsuit begun in district court. *Id.*

"The CSRA can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and has not identified some other kind of plaintiff or some other kind of procedure for bringing the claim." *Am. Fed'n of Gov't Emps.,* 716 F.3d at 637-38 (internal citations omitted); *Pinar v. Dole,* 747 F.2d 899, 909 (4th Cir. 1984); *Hall v. Clinton,* 235 F.3d at 205 (affirming district court's dismissal of former federal employee's Fifth Amendment *Bivens* claim against other White House employees even if existing remedies under the CSRA did not provide a remedy); *Zimbelman v. Savage,* 228 F.3d 367, 370 (4th Cir. 2000) (dismissing Air Force employees' *Bivens* claims because they arose from a federal employment relationship, thus holding the CSRA provided exclusive remedial framework even though it provided no remedy for the specific wrong).

Plaintiff's attempt to bring a Little Tucker Act suit, or suit under any other statute, over allegations of breach of the terms of the collective bargaining agreement defies the exclusivity of the CSRA in general and the FSLMRS in particular, including the carefully circumscribed limitations on the judicial review in section 7123(a). Furthermore, the CSRA permits employees and/or their unions to exert considerable influence over countless agency employment decisions in which employees would otherwise exert no influence. *See e.g., Soc. Sec. Admin. Office of*

14

*Hearings & Appeals Region II and AALJ, IFPTE*, 58 F.L.R.A. 722 (July 22, 2003) (agreeing with AALJ that agency was required to "provid[e] the Union with an opportunity to bargain" regarding an agency "decision to no longer provide free monthly parking permits to Administrative Law Judges"). Plaintiff should not be able to reap the benefits of the CSRA's collective bargaining scheme without accepting its limitations on judicial review. Since judicial review is not provided by the CSRA or the CBA, this Court lacks subject matter jurisdiction over Plaintiff's breach of collective bargaining agreement claims.

### III. Even if Plaintiff's Claims Are Not Precluded by the CSRA, This Court Lack's Jurisdiction Under the Little Tucker Act or the Federal Question Statute

Even if the CSRA did not deprive the district court of subject matter jurisdiction over this action, Plaintiff cannot show the existence of a contract between himself and the USPTO, nor does he claim entitlement to any money damages, as required to sue under the Little Tucker Act. Nor can this Court's jurisdiction rest on 28 U.S.C. § 1331 alone absent a valid waiver of sovereign immunity.

#### A. Plaintiff Cannot Meet the Requirements of the Little Tucker Act Because There is No Contract Between Plaintiff and USPTO and Because He Cannot Establish an Entitlement to Money Damages

Plaintiff attempts to establish this Court's jurisdiction over his breach of collective bargaining agreement claim through 28 U.S.C. § 1346 (Little Tucker Act). Compl. ¶ 2. The Little Tucker Act confers concurrent jurisdiction on the district courts to hear contract claims involving the United States that do not exceed $10,000. 28 U.S.C. § 1346(a)(2). To establish jurisdiction under 28 U.S.C. § 1346(a)(2), a Plaintiff must show that he has a contract with the United States and that he has a money claim arising therefrom. 28 U.S.C. § 1346(a)(2); *Skelton v. Quinn*, No. 3:10–cv–01958–MBS–JDA, 2011 WL 7628901 (D.S.C. Oct. 25, 2011). Plaintiff

15

has failed to do both.

Plaintiff has not pled facts to show the existence of an enforceable contract between himself and the United States. Plaintiff alleges breach of the collective bargaining agreement. But the CBA is an agreement between the USPTO and the Patent Office Professional Association. Compl. ¶ 8. Plaintiff is not a party to the CBA. A plaintiff cannot base a breach of contract claim on a contract to which they are not a party. *Todd v. United States,* 386 F.3d 1091, 1094 (Fed. Cir 2004) (holding that "appellants do not have a contract with the United States and cannot base a claim for money damages against the United States on a contract to which they are not a party.").

Additionally, Plaintiff does not assert a right to payment of money nor request monetary relief in his complaint. Compl. ¶¶ 70-75. However, courts have construed Little Tucker Act jurisdiction as limited to actions for monetary, as opposed to, equitable relief. *See Lee v. Thornton,* 420 U.S. 139, 140 (1975) (the Tucker Act empowers district courts to award damages but not to grant injunctive or declaratory relief); *Werner v. Dep't of Interior, Fish & Wildlife Serv.,* 581 F. 2d 168, 171 (8th Cir. 1978) ("Under the Tucker Act, the jurisdiction of a district court has long been construed as limited to actions for money judgments and not to include suits for equitable relief."); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980) ("The Tucker Act is therefore no longer in question because that Act only applies to suits for money damages."), *cert denied,* 449 U.S. 832 (1980); *Bobula v. Dep't of Justice,* 970 F.2d at 854. "Without a claim for monetary damages, there [is] no basis for district court jurisdiction pursuant to § 1346(a)(2)." *Bobula v. Dep't of Justice,* 970 F.2d at 858-859 (finding that plaintiff failed to meet her burden of proving Little Tucker Act jurisdiction because she failed to assert a right to payment of money

16

and to request monetary relief at the trial level).

Here, Plaintiff has not alleged a right to payment of money and his prayer for relief does not include a monetary request. Compl. ¶¶ 70-75. Nor could Plaintiff claim any entitlement to money damages when the grant of permanent Partial Signatory Authority does not come with a pay raise or formal promotion. In sum, Plaintiff cannot show the elements required to establish Little Tucker Act Jurisdiction.

### B. Plaintiff Cannot Rely Exclusively on Section 1331 for Jurisdiction Because He Has Not Identified a Valid Waiver of Sovereign Immunity

Plaintiff cannot use the federal question statute alone to establish jurisdiction over his breach of collective bargaining agreement claim because he has not identified any valid waiver of sovereign immunity as required to sue the United States. *See* Compl. ¶ 2 (citing 28 U.S.C. § 1331). Plaintiff states in the complaint that his suit is against the USPTO and the Director and the Commissioner for Patents in their official capacities. Compl. ¶¶ 5-6. As a result, Plaintiff would need to identify a valid waiver of sovereign immunity in order for this Court to exercise jurisdiction. *See United States v. Testan*, 424 U.S. 392, 933 (1976) (noting "that the United States, as sovereign is immune from suits save as it consents to be sued" and without a waiver of immunity the court lacks jurisdiction) (citations omitted). Section 1331 on its own, however, does not waive the sovereign immunity of the United States. *See Randall v. United States,* 95 F. 3d 339, 345 (4th Cir. 1996) ("section 1331 is not a general waiver of sovereign immunity. It merely establishes a subject matter that is within the competence of federal courts to entertain"); *Vliet v. Vliet,* Civil Action No. 4:14cv151, 2015 WL 631360 (E.D.V.A. Feb. 11, 2015) (explaining that although section 1331 defines part of the court's subject matter jurisdiction generally, "it is not a waiver of sovereign immunity.").

The Little Tucker Act Plaintiff waives sovereign immunity for breach of contract claims under $10,000, but as discussed above, the CSRA preempts that statute and Plaintiff does not meet its requirements in any event.  Because Plaintiff has not identified any other waiver of sovereign immunity, the Court should dismiss this action for lack of jurisdiction on this ground as well.

## CONCLUSION

For the foregoing reasons the Court should dismiss Plaintiff's complaint in its entirety

Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

LAUREN A. WETZLER
CHIEF, CIVIL DIVISION
Assistant United States Attorney

By:  _____/s/_____
CHIEKO CLARKE
Special Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone:   (703) 299-3770
Fax:              (703) 299-3983
Email:           chieko.clarke@usdoj.gov

ATTORNEYS FOR DEFENDANT

DATE:             August 31, 2015

OF COUNSEL:   Heidi Bourgeois, Attorney Advisor, United States Patent and Trademark Office

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 31, 2015, I filed a copy of the foregoing with the Clerk's Office and will cause to be delivered, by first class mail, a copy of the foregoing to the following:

>Kurt Mueller
>5870 Cameron Run Terrace
>Apartment 909
>Alexandria, VA 22303
>*Pro Se Plaintiff*

Date: August 31, 2015

                                                              /s/
                                        CHIEKO CLARKE
                                        Special Assistant United States Attorney
                                        2100 Jamieson Avenue
                                        Alexandria, VA 22314
                                        Telephone: (703) 299-3770
                                        Fax: (703) 299-3983
                                        Email: chieko.clarke@usdoj.gov

                                        ATTORNEY FOR DEFENDANTS