**FILED**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 SEP 21 P 1: 02

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

KURT MUELLER, )
   Plaintiff, )
   *pro se* )
v. )  Civil Action No. 1:15-CV-847 (LMB/TCB) )
)
U.S. PATENT AND TRADEMARK )
OFFICE, ET AL., )
   Defendants. )
)

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS' MOTION TO DISMISS

Plaintiff respectfully submits this memorandum of law in opposition to the Defendants' motion to dismiss for alleged lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## FACTUAL BACKGROUND

Plaintiff adopts in part Defendants' recitation of the factual background. The Plaintiff takes particular note of Defendants' admission that "the procedures **require** a deciding official to issue a decision on an informal grievance within 20 days of receipt of the grievance, id. at Article 11, sect. 6, clause D, and a decision on a formal grievance within 15 days of when the official was appointed or after close of a settlement meeting." (Defendants' Memorandum p. 2-3, emphasis added).[1] Defendants' failure to abide by these time periods is a major substantive basis for the Complaint.

Plaintiff, however, challenges Defendants' Exhibit 1 ("D-Ex.1"). D-Ex.1 appears to be a copy of the Collective Bargaining Agreement ("CBA") that exists between the USPTO and the

---

[1] The Plaintiff would like to thank counsel for the Defendants for responding within the timeframes required for response under the Federal Rules of Civil Procedure.

Patent Office Professional Association ("the union"). However, not only is D-Ex.1 laid out in a different format to the copy in possession of the Plaintiff, there appear to be material differences. For example, D-Ex.1's Article 11, Section 8, Clause A states that clause A is "not part of the Collective Bargaining Agreement". This is obviously absurd as it is claimed that a textual provision is not a part of the very document in which it is mentioned. In any case, this is not the text in Plaintiff's copy of Article 11, Section 8, Clause A.[2] The difference is further material in that Article 11, Section 8, Clause A sets out time periods for response that are material to the present disposition of this case.

Plaintiff therefore provides his own copy of the CBA as Plaintiff's Exhibit 1 to this memorandum. Plaintiff labels this exhibit "P-Ex.1." Plaintiff also respectfully asks this court to inquire of Defendants' counsel why the CBA provided to by the Defendants' Counsel as Exhibit 1 has material textual differences to the copy that is now being provided by the Plaintiff as P-Ex.1. There are material differences in the copies of the CBA provided by the Plaintiff and the Defendants; this court should inquire as to the basis for these discrepancies.

## STANDARD OF REVIEW

Plaintiff does not challenge Defendants' recitation of the standard of review.

## ARGUMENT

### I. The Plaintiff's Claims are not Moot

While the Defendants are correct that since the Complaint was filed, a decision on the Plaintiff's formal grievance was rendered (Defendants' Exhibit 11), the Complaint is not moot for want of a reply to the Plaintiff's exception letter (Defendants' Exhibit 9).

---

[2] Plaintiff has not read in detail both documents side by side to see if there are other material differences in the text, but this court should note the possibility that further discrepancies may exist when determining disposition of the case.

While Defendants' recitation of the facts discussed the Defendants' obligations and time periods for response with respect to the informal and formal phases of the grievance process as provided for by the CBA, Defendants' recitation of the facts leaves out the facts regarding the exceptions phase of the grievance process. The Court is directed to P-Ex.1. In Article 11, the CBA sets out the entire grievance process. Article 11, Section 6, sets out the process for the "informal" phase, and Article 11, Sections 7 & 8 sets out the process for the "formal" phase.

Article 11, Section 8, Clause A sets out the requirements for filing a grievance under the "exceptions" phase: "The grievant may file exceptions within ten (10) calendar days of receipt of the official's answer. The grievant's exceptions (if any) shall become a part of the grievance file." (P-Ex.1). Article 11, Section 8, Clause E sets out Defendants' required time period for response: "The deciding official may attempt to settle the grievance. However, if settlement is not possible, the deciding official shall render a written decision within fifteen (15) calendar days of his appointment or the close of the meeting." *Id.*

As noted by Defendants, an Exceptions letter was filed with then-Commissioner for Patents Margaret Focarino on Feb. 27, 2015. (Defendants' Memorandum p. 5). Though Ms. Focarino has retired, this retirement was effective June 30, 2015 (Defendants' Memorandum p. 5; Defendant's Exhibit 10). The Plaintiff respectfully asks the court to note that this date is 123 calendar days after February 27, 2015. Thus, according to the provisions of the CBA governing the time period for response as outlined in the copy of the CBA provided by Plaintiff as P-Ex.1, the retirement of Ms. Focarino should have been immaterial to the processing of the Plaintiff's exceptions letter, since more than enough time remained to process it before the retirement went into effect.

In any case, the exceptions letter was filed with the office, not the person; Ms. Focarino is named as a defendant solely in her official capacity. As of July 30, 2015, the office formally held by Ms. Focarino is now held by Drew Hirshfeld.

As of Thursday September 17, 2015, the Plaintiff has not yet received a response to the exceptions letter filed on February 27, 2015, and the Defendants have not requested an extension of time. The issues presented are therefore not moot, the Defendants still fail to follow the requirements of the CBA, and the breach of contract remains.

## II. Plaintiff's Breach of CBA Claims are Not Precluded by the Civil Service Reform Act of 1978

### A. The Civil Service Reform Act of 1978 Provides for Exclusion Only in Cases Contemplated Therein

Defendants are correct insofar as the Supreme Court has stated that the Civil Service Reform Act of 1978 ("CSRA") is an "elaborate new framework", but the Defendants go off the mark in suggesting that the CSRA addresses all matters that could possibly present themselves through the normal course of federal employment. Taken to its logical extreme, this would seem to suggest that if two federal employees got into a fist fight while at work neither employee would have redress in civil law for the tort. Whatever other remedies might be available under the CRSA or other labor law, the CRSA is not "comprehensive" to the point of precluding this court's jurisdiction. Like tort actions, actions that comprise breaches of contract have a place in this court. Of course, where the CRSA directly addresses a given matter, it may well form a preemption against any other avenue of seeking out resolution of the claim. But where the CRSA is silent, then the CRSA is not controlling.

Defendants claim that "Section 7121(a)(1) provides that such grievance procedures 'shall be the exclusive administrative procedures for resolving grievances which fall within its

coverage' " is therefore off the mark. The Plaintiff is presently in Court, not before an administrative agency, and the Plaintiff is not at this point seeking "administrative" resolution, but rather judicial resolution for failure of the Defendants to abide by their contractually defined processes.

The CRSA also provides that "Any negotiated grievance procedure ... shall provide for expeditious processing." (5 U.S.C. 7121 (b)(1)(B).) The principle point of Plaintiff's complaint before this court is that the process as handled by Defendants has been and continues to be anything but "expeditious." This court has a role to play in ensuring that the provisions of the CRSA are being followed to both its letter and intent, and also a role to play in ensure the fair processing of the agreement that forms the CBA.

Additionally, Defendants state that "to the extent that Plaintiff may seek any remedy for the USPTO's alleged untimely responses to his grievances...the exclusive jurisdiction for adjudications of such claims lies with the Federal Labor Relations Authority ("FLRA")." (Defendants' Memorandum p. 9). However, the FLRA is an agency with limited jurisdiction. The FLRA's authority to hear labor disputes extends only to claims for alleged failure of a labor union to provide representation, the hearing of arbitration appeals, disputes over labor-management negotiations, or unfair labor practice cases. 5 U.S.C. 7116 - 7119. The present case does not appear to fall within the jurisdictional nexus of any of these provisions.

The CRSA does not appear to contemplate a scenario where the parties to a collective bargaining agreement simply fail to obey the agreed upon provisions. If the provisions of the CBA were being followed, then it would certainly be logical to defer to the CRSA for the processes that the CRSA contemplates. However, in a situation such as that here where the

Defendants do not follow the processes provided by the CRSA, it is absurd for the Defendants to seek to use the provisions of the CRSA to shield them from that same failure.

### B. The CSRA does not Preclude Plaintiff's Claim

Defendants' statement that the CSRA "regulates virtually every aspect of federal employment" belies the fact that some aspect of federal employment are outside of the CRSA.

It is odd indeed for Defendants to argue that "Chapter 71 of the CSRA provides a comprehensive scheme ... [but] absence of such a jurisdictional grant is a clear indication that Congress intended to bar federal labor dispute actions in district courts". (Defendants' Memorandum p. 11.) One cannot infer the intent of Congress from Congress' failure to include a particular provision. Silence is simply failure to speak, not indication of particular intent. If Congress wanted to exclude the courts from hearing these kinds of cases, they certainly knew how to draft statutory language that would have stated this intent clearly. Thus, the courts are left with a situation where Congress has neither expressly provided for particular remedies in the courts, nor stated that the Courts are precluded from hearing such disputes. In situations where the CSRA does not provide for explicit issue preclusion, as is the situation here, the courts should not infer subject matter jurisdictional preclusion in an area where Congress has provided no explicit guidance.

Defendants' citation to Wiley v. Shell, No. 13-5310, 2014 WL 2209011 (D.C. Cir. Apr. 17, 2014) is misplaced (Defendants' Memorandum p. 12). A review of the case and the cases it cites appear to resolve the issue on peculiarities that only apply to employees of the Veterans Health Administration (the cases resolving the matter on the basis of 38 USC 7422, which is inapplicable here). The present case is therefore not properly logged in the first instance in the

Court of Appeals because the eccentricities that apply to employees of the VHA do not apply here.

Defendants attempts to have their cake and eat it too. Defendants argues on page 12 of their memorandum that the grievance procedure is the "sole and exclusive procedure available", even as they constantly and continuously fail to follow it. It is therefore unclear why Defendants would process any grievance brought by an employee on behalf of themselves ever again if this court denies jurisdiction. Under Defendants' analysis, the Defendants could quite literally take a filed grievance and put it in a drawer forever without any possible repercussions, since the grievant cannot file a request for arbitration (as only the union has that power) nor can the grievant seek redress in this or another court. The entire grievance process would therefore become a complete illusion, since Defendants' failure to follow the process would be without review or consequences. Surely Congress could not have intended such a result.

Defendants also err in their citation to Bobula v. Dep't of Justice. In Bobula, the court was asked to review and modify a settlement agreement. No settlement has been reached; in fact, no settlement discussions have taken place. Likewise, Defendants err in their citation to Hall v. Clinton, in which the court wrote that the "CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding **personnel decisions**" (Hall v. Clinton, 235 F.3d 202, 206 (4th Cir. 2000) (emphasis added). This matter is not a personnel decision; the Plaintiff has not been reassigned or had the scope of his employment modified in any manner. This is a breach of contract arising from the failure to following the mandatory, binding grievance resolution process, which stems from Defendants' continued apparent contempt toward their contractual obligations.

Defendants' argument on pages 13-14 of their memorandum that "Plaintiff's only remedy for the Agency allegedly 14 failing to respond to his grievances in the timeframe prescribed in the CBA is to request that the union invoke arbitration. Ex. 1, Article 11, Sect. 9. Pursuant to both the CBA and the CSRA, arbitration may be invoked only at the discretion of the union or the Agency" makes obvious what Defendants' motion really amounts to--a denial of due process. Again, if Defendants are correct, it is unclear why Defendants (or any other federal agency for that matter) would <u>ever</u> do anything other than take a grievance filed by an individual employee (as the statute provides the employee the right to do so) and promptly place it in a drawer and forget about it. Under Defendants' analysis, federal employees would be left with no possible recourse for such treatment. This is particularly dangerous in workplace environments with ineffective union representation - such employees would be subject to the whim of their employers, unable to file for arbitration, unable to file a lawsuit, unable to seek refuge before any kind of tribunal, unable to receive relief. The scope of what Defendants is asking this court to do is reveal for what it is--the right for Defendants to mistreat the Plaintiff, perpetually, with no recourse.[3]

Defendants argue that "Plaintiff should not be able to reap the benefits of the CSRA's collective bargaining scheme without accepting its limitations on judicial review" (Defendants' Memorandum p. 12), but Defendants are asking for the exact same thing for themselves. Under their argument, they would have all the benefits of not having court review of their process, but have no actual obligation to follow their process because of that very lack of review. If Defendants are arguing that Plaintiff is trying to have his cake and eat it too, Plaintiff suggests

---

[3] There is also significant risk of retaliatory conduct here. If this court confirms Plaintiff has no redress before this Court, what prevents Defendants from taking notice of this lawsuit and using it to make "personnel" or other types of decisions that would work to create an unfavorable, even hostile work environment to the Plaintiff? Defendants' analysis if adopted by the court is an open invitation for abuse for employees advocating their own interests.

Defendants might want to take a better look in the mirror. Besides, as noted above, the CSRA does not contain any explicit provisions that deny the Plaintiff judicial review. Defendants' argument that the statute's silence manifests an express intent of Congress to exclude this court from all potential abuses or mistreatments by federal employers upon their employees is as dangerous as it is absurd.

### III. This Court has Jurisdiction Under the Little Tucker Act and the Federal Question Statute

Defendants argue that because the Plaintiff has failed to ask for monetary damages the Plaintiff cannot seek relief under the Tucker Act. However, the Plaintiff did ask the Court to grant such other relief as the court may deem appropriate or equitable. Compl. par. 75. If required to maintain jurisdiction, the Plaintiff therefore seeks leave to file an amended complaint seeking monetary damages. Monetary damages are manifest in that upon completion of the entire signatory process, Plaintiff would receive a promotion to the next GS grade, thereby receiving additional monetary compensation. The failure of Defendants to follow the rules for the signatory process and the grievance process is denying the Plaintiff successful completion of the first half of the requirements for such a promotion, thus denying Plaintiff approximately $11,000 per year in additional pay. The Plaintiff therefore seeks to amend the complaint to seek this additional compensation. Alternatively, the Plaintiff seeks leave to amend the complaint to seek nominal damages in order to maintain jurisdiction.

Defendants are incorrect that Plaintiff is a third party to the CBA. 5 USC 7121(b)(1)(C)(ii) explicitly provides "an employee the right to present a grievance on the employee's own behalf." Thus, Plaintiff's right to advocate for his own interests is specifically

addressed. It is therefore clear that because CBA provides Plaintiff with a course of action, Plaintiff is a party. But assuming *arguendo* that Plaintiff is not a party to the contract, Defendants' argument falls apart. Defendants have repeatedly argued that Plaintiff is bound by the provisions of the CBA with respect to the handling of grievances and the alleged failure of this court to have jurisdiction to hear this case. But this makes no sense - if Plaintiff is not a party to the contract of the CBA, then as a non-party the Plaintiff would not be bound by any of the provisions of the CBA, and therefore would not be bound to follow the grievance provisions of the CBA. A non-party cannot be bound by a contract to which he or she did not agree. If the Plaintiff is not a party to the CBA, the Plaintiff is not bound by the limitations or restrictions of the CBA, and therefore this court would have jurisdiction (albeit on a tort theory rather than contract).

## CONCLUSION

For the foregoing reasons the Court should not dismiss Plaintiff's complaint.

Respectfully Submitted,

Kurt Mueller

Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2015, I filed a copy of the foregoing with the Clerk's Office and will cause to be delivered, by first class mail, a copy of the foregoing to the following:

CHIEKO CLARKE
Special Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314

Kurt Mueller
Pro Se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
ALEXANDRIA DIVISION

__Kurt Mueller__
Plaintiff,

v.                                             Civil Action No. 1:15-cv-847

__US PTO__
Defendant.

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

__Kurt Mueller__
Name of *Pro Se* Party (Print or Type)

__[signature]__
Signature of *Pro Se* Party

Executed on: __9/21/15__ (Date)

OR

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)