# EXHIBIT 1

AGREEMENT
BETWEEN

## U.S. DEPARTMENT of COMMERCE/PATENT AND TRADEMARK OFFICE

AND

## THE PATENT OFFICE PROFESSIONAL ASSOCIATION

## 1986

BEFORE
ARBITRATOR MARVIN E. JOHNSON
FSIP CASE Nos. 86 FSIP 29 and 31

AGREEMENT BETWEEN
THE U.S. PATENT AND TRADEMARK OFFICE
AND
THE PATENT OFFICE PROFESSIONAL ASSOCIATION

TABLE of CONTENTS

| Article No. | | Page |
|---|---|---|
| | Preamble.................................... | 1 |
| 1 | Recognition and Unit Determination................. | 2 |
| 2 | Precedence of Law, Regulation and Other Matters.... | 3 |
| 3 | Rights and Obligations of Management............... | 4 |
| 4 | Employee Rights.................................... | 6 |
| 5 | Employee Obligations............................... | 13 |
| 6 | Association Rights and Obligations................. | 14 |
| 7 | Career Development and Work Details................ | 16 |
| 8 | Professional Training and Development.............. | 18 |
| 9 | Overtime........................................... | 21 |
| 10 | Promotions and Reassignments....................... | 22 |
| 11 | Grievance Procedure................................ | 27 |
| 12 | Disciplinary and Adverse Action Based on Conduct... | 35 |
| 13 | Awards............................................. | 39 |
| 14 | Mid-term Bargaining................................ | 40 |
| 15 | Official Time...................................... | 42 |
| 16 | Physical Facilities................................ | 45 |
| 17 | Association Facilities............................. | 49 |
| 18 | Child Care Centers................................. | 50 |
| 19 | Performance Appraisals............................. | 51 |
| 20 | Leave.............................................. | 52 |
| 21 | Retirement Counseling.............................. | 56 |
| 22 | Signatory Authority................................ | 57 |
| 23 | Work Schedules..................................... | 58 |
| 24 | Labor-Management Committees........................ | 64 |
| 25 | Contracting Out.................................... | 68 |
| 26 | Delayed Benefits................................... | 69 |
| 27 | Automation......................................... | 70 |
| 28 | Equal Employment Opportunity....................... | 72 |
| 29 | Reductions-in-Force................................ | 76 |
| 30 | Health Services.................................... | 79 |
| 31 | Health & Safety.................................... | 80 |
| 32 | Dues Withholding................................... | 82 |
| 33 | Printing and Distribution.......................... | 85 |
| 34 | Duration and Amendment............................. | 86 |
| 35 | Definitions........................................ | 88 |

| Appendix | | |
|---|---|---|
| A | Awards Agreement................................... | 92 |
| B | Arbitration Decision in 83 FISP 89................. | 94 |
| C | Agreement on Trial Gainsharing Program............. | 97 |
| D | Memorandum of Understanding on Learning Curves..... | 100 |

1

## PREAMBLE

The basic agreement and amendments thereto as may be executed hereafter from time to time together constitute a collective bargaining agreement by and between the U.S. Patent and Trademark Office, hereafter called the "Office", as represented by the Commissioner of Patents and Trademarks, and the Patent Office Professional Association, hereafter called the "Association", as represented by its President.  The rights of the Commissioner and the President to delegate responses related to labor relations are not abridged unless specifically set forth in the articles of this Agreement.

It is the intent and purpose of the parties to promote and improve the morale, thereby improving employee performance and effectiveness, to promote and improve the effectiveness and efficiency of the Office in carrying out its mission, and to promote and improve the well-being of all employees in the Unit by establishing a mutual under-standing relative to personnel policies and practices and matters affecting the terms and working conditions of such employees.

The Office recognizes that participation of employees in collective bargaining through the Association and that collective bargaining by the Association with the Office furthers and carries out not only the principles set forth in the preceding paragraph, but also the purposes and principles set forth in 5 U.S.C. § 7101.

The parties realize that an orderly and constructive relationship will be best maintained between them by providing specific means for the amicable discussion and adjustment of employee grievances and that effective labor-management cooperation in the public service requires a clear statement of the respective rights and obligations of the parties.

Since the Association does not currently have the right to negotiate matters that are traditional topics for labor-management agreements such as salary and fringe benefits, the principal concerns of the parties include the policies and procedures used for initiating and/or justifying personnel actions, and methods of evaluating professional performance.

2

## ARTICLE I

### RECOGNITION AND UNIT DETERMINATION

#### Section 1

In recognition of the fact that a majority of the professional employees of the Office have selected the Association as their exclusive representative and that a certification has been issued to this effect, the Commissioner hereby reaffirms his recognition of the Association as the exclusive representative of the employees in the following unit, hereinafter called the "Unit":

> All professional employees of the Office as determined in the unit arbitration decisions of Mr. Rocco C. Siciliano (81-Comm PATO-1 and PATO-2) dated July 31, 1964, and as modified by A/SLMR No. 856, excluding (1) any management officials or supervisors; (2) confidential employees; (3) employees engaged in personnel work in other than a purely clerical capacity; and (4) trademark professionals.

#### Section 2

A.   Not later than 4 calendar months after the effective date of this Agreement, and on the anniversary of effective date of this Agreement each year thereafter, the Office will provide the Association with a list, arranged by organizational unit and alphabetically therein, of all Office employees, showing the Office's view as to which employees are included in the Association's bargaining unit and which are not.   This list shall set forth for each employee their name, tour of duty, position title, schedule code, series, grade level, tenure, competitive level, organization code and entrance on duty date .

B.   The Office shall notify the Association in writing of all new positions either simultaneous with the posting for such positions or, in the case of non-posted positions, simultaneous with the filling of such positions, and shall indicate the Office's view as to which of these positions are included in the Association's bargaining unit.

C.   Within one month after the transmission of a list as provided in Section 2A or Section 2B the parties will meet.   At this meeting the Office shall present the factual basis for its view as to bargaining unit designations and the parties will discuss the reasons for such designations.   The Association shall present, within a reasonable period of time, the factual basis for its view if upon investigation it has a disagreement.   If the parties thereafter continue to disagree as to the appropriate bargaining unit status of any employee or position, the Office, within two months from receiving the factual basis for the Association view, will present the reasons for its position in writing and then the Association, within two months from receiving the written position of the Office, will respond in writing with the reasons for its view.

## ARTICLE 2

### PRECEDENCE OF LAW, REGULATION AND OTHER MATTERS

#### Section 1

In the administration of this Agreement, officials and employees are governed by (1) existing or future statutes, (2) regulations issued by the Department of Commerce prior to the effective date of this Agreement and not inconsistent with this agreement, (3) government wide rules and regulations prescribed prior to the effective date of this Agreement or which are issued subsequently and are not inconsistent with this Agreement and are outside of the scope of bargaining.  Except as otherwise provided, other than a rule or regulation implementing 5 USC 2302, no rule or regulation which is in conflict with this Agreement and which was prescribed after the effective date of this Agreement shall be enforced.

#### Section 2

The unwritten practices of the parties shall continue, absent written notification by either party of their intent to discontinue or modify a particular practice.  Upon the request of either party, the parties shall bargain over the change to the extent consistent with law.

4

## ARTICLE 3

## RIGHTS AND OBLIGATIONS OF MANAGEMENT

### Section 1

Management officials of the Office shall retain the right:

A.    To determine the mission, budget, organization, number of employees, and the internal security practices of the agency;

B.    To hire, assign, direct, layoff and retain employees, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against employees;

C.    To assign work, to make determinations with respect to contracting out, and to determine the personnel by which operations shall be conducted;

D.    With respect to filling positions, to make selections for appointments from:
      (1)    Among properly ranked and certified candidates for promotions; or
      (2)    Any other appropriate source;

E.    To take whatever actions may be necessary to carry out the mission during emergencies;

### Section 2

Management shall respond in writing to written requests from the Association. Where reasonably possible, the response shall be substantively responsive to the request and provided to the Association within two weeks from the date the request was received.

### Section 3

The rights of the Office to take actions or to effectuate changes shall be limited to the provision of Article 14 on Mid-Term Bargaining.

### Section 4

A.    In order that members of the bargaining unit and the officers of the Association may be better informed as to their rights, obligations and responsibilities, management will supply to the Association, as they are issued, a copy of all duly published Office policies, Patent Office Administrative Instructions and Department of Commerce Administrative Orders.

B.    Any laws, regulations and policies relevant to an employee's performance, conduct or employment in the possession of the office shall be made available for inspection and study by the

Association and individual members of the Unit, if such material is not otherwise reasonably available. Upon request, a copy of the relevant portion(s) of such material shall be provided to the Association or the requesting employee if the request is not unreasonable and the cost is not excessive.

C.    All cost center published policies directly applicable to an employee shall be available for his/her inspection and study at the Office of his/her second line supervisor.

D.    Each affected employee shall be given a copy of newly published Office policies.

E.    This section does not confer or sanction the use of nonproduction time by employees or Association officers or representatives unless, in the case of an employee, the inspection or study of the documents identified has been previously approved by his/her supervisor or, in the case of Association officers or representatives, the inspection or study is on official time.


Section 5

Disciplinary and adverse actions for misconduct will be taken for just and sufficient cause and will be in accordance with all applicable regulations and laws.

Section 6

Within the first quarter of each fiscal year, the head of an operating unit at the Group Director level or equivalent shall conduct a meeting to notify unit employees of all records maintained with respect to employees which identify the employee by name or other identifier. At this meeting, POPA shall have the opportunity to have a representative whom, if he or she attends, shall be limited to the role of observing or asking questions.

The Office, within the first quarter of each fiscal year, shall publish for the use of each unit employee and distribute to the Association a directory of each system of records maintained with respect to employees at management levels above the head of the operating unit, indicating the title and room location (e.g., Directors' offices) of such system of records and the categories of records (as exemplified by those specified in the Federal Register, Vol. 49, No. 4, pp. 913-921) contained within the system of records. "Records" include both paper and electronic records and shall refer only to that information which may be retrieved by the employees name or other identifier. Access to such system shall be governed by Article 4, Section(s) 6 and 11, but subject to the laws and regulations of higher authority.

ARTICLE 4

EMPLOYEE RIGHTS

Section  1

Employees in the Unit shall have the right, freely and without fear of penalty or reprisal, to join or assist the Association or to refrain from any such activity, and each employee shall be protected in the exercise of such right.

Section  2

Nothing in the agreement shall require an employee to become or to remain a member of a labor organization, or to pay money to the organization except pursuant to a voluntary written authorization by a member for the payment of dues through payroll deductions.

Section  3

Nothing in this agreement shall preclude an employee from bringing matters of personal concern to the attention of appropriate management officials.

Section  4

This agreement shall not preclude an employee from exercising grievance or appellate rights established by law or regulations; or from choosing his/her own representative in a grievance or appellate action, except when presenting a grievance under the procedure provided in Article 11, the limitations set forth therein must be followed.

Section  5

The following rights shall apply to communications about an employee when the source, either oral or written, is not from within the employee's examining group or its equivalent.

A.   If the communication contains a complaint against an employee it shall not be later used against an employee unless:

   (1)   it has been reduced to writing, including notation of the date;

(2)     any investigation with respect to it has been reduced to writing with specificity or there is adequate written justification for why no investigation was conducted;

(3)     any oral response by the supervisor to the complaint has been later reduced to writing with the date and approximate length of the conversation noted;

(4)     all written responses to the complaint have been retained;

(5)     there is a written account of the employee's response, if any, with respect to the complaint; or there is an adequate written justification of why the complaint or relevant matters arising out of investigation or responding to the complaint were not disclosed to the employee, and opportunity given for comment by him/her; and

(6)     the above has been provided to the employee at the time the communication is used as the basis for any action which is to the disadvantage of the employee.  Such action cannot be based on a communication which was received more than 90 days prior to the action unless:

    a.     the complaint and/or relevant matters arising out of the investigation of, or the responses to, the complaint were disclosed to the employee and a reasonable opportunity given him/her to comment in writing within the 90 day period.

    b.     there is an ongoing investigation that specifically prohibits disclosure to the employee.

(7)     When an employee has been afforded a reasonable opportunity to comment in writing within the 90 day period, any action which is to the disadvantage of the employee cannot be taken more than 12 months after the communication was received.

B.     If the communication compliments the employee, a copy shall be given to the employee or if the communication was oral, it shall be reduced to writing and given to the employee.

C.     Documents concerning admonishment, warning, caution or similar or like matters unrelated to performance are temporary and shall not be kept in any employee's record or file for longer than one year after their creation.

8

## Section 6

A.   In all matters of or concerning personnel records the office shall abide
     by applicable laws and regulations of higher authority and this
     agreement.

B.   Each employee of the unit shall have the right to inspect his/her
     personnel records and have them amended upon a showing that they are
     inaccurate, untimely or incomplete.  The request to inspect shall be
     made to the office in which such records are kept.

C.   Each employee of the unit shall be furnished a copy of any paper added
     to their Official Personnel Folder which relates to his/her performance,
     conduct, or potential provided such is not prohibited by the FPM or any
     Government-wide law or regulation, and such employee shall have an
     opportunity to submit and to have placed in said OPF a brief written
     statement concerning such paper which is furnished to him/her.

## Section 7

Employees will be treated equitably and fairly by management.  Therefore, only
employees who believe they have been personally subjected to disparate
treatment or unreasonable acts by management shall have the right to contest
such treatment by use of the negotiated grievance procedures set forth in
Article 11.

## Section 8

A.   When a representative of management wishes to meet with an employee for
     the purpose of obtaining information from him/her which management
     intends to be used with respect to determining whether disciplinary
     action shall be taken against the employee, the management
     representative shall notify the employee of the general nature of the
     meeting and of his/her right to have a union representative present
     prior to commencing the meeting.

B.   In addition to the provisions of 5 USC § 7114 (a) (2) (b) allowing an
     employee to have a union representative present at a meeting when he/she
     reasonably believes that an investigation, as part of that meeting,
     could lead to disciplinary action, the management representative
     conducting the meeting shall notify the employee of his/her right to a
     union representative to attend such a meeting, if the management
     representative reasonably recognizes that a disciplinary action may
     result.

C.   If the employee requests a union representative, management shall be obligated to wait a reasonable time to allow the employee the opportunity to secure representation, before proceeding with the meeting.

D.   None of the preceding subparagraphs shall apply to investigations, inquiries or counselling sessions which apply solely to performance-based actions.


Section 9

When it is necessary to reassign employees due to a staffing imbalance, the office will first ask for volunteers from among the qualified employees at the affected post of duty.  If there are too many volunteers, the employees with the oldest PTO service computation date shall be given first consideration for the reassignment.  If there are too few volunteers, employees with the most recent PTO service computation date will be given first consideration for the reassignment.


Section 10

A.   The Office will notify the Association and the affected employees of a proposed substantial change in a position description, such as a significant addition or reduction of duties or a change in grade level. The employees and the Association will be provided with a reasonable period for comment on the proposed language which will not unduly delay issuance of the position description.  The opportunity to comment by itself does not create or acknowledge a right to negotiate.  Minor changes, such as clarifying language or a change in organization designation or position titles which are unassociated with other more important changes, will create the duty to notify the employee and the right of the employee to comment, but no such duty or right shall extend to the Association.

B.   The Office will provide the employee with the final amended position description upon its issuance.  The Office will provide the Association with the final amended position description upon its issuance only when a substantial change is involved.

C.   The employee shall have the right to rely on the accuracy of his/her position description.  An employee cannot be presumed to be aware of changes in a position description before the employee receives a final amended position description.

10

D.    The Office will provide the Association with a copy of all newly
      proposed position descriptions.

E.    When an employee requests a desk audit, the Office shall conduct the
      audit within a reasonable time under the circumstances.

Section 11

A.    The right of an employee, or his/her representative, to information
      provided in this Article, shall not be diminished, or otherwise
      adversely affected by such information being stored in machine systems,
      such as computers.

B.    Similarly, information made available to the Office by computer
      enhancements shall not be denied an employee where such
      denial will adversely affect an employee's right to information
      otherwise required by this Article.

C.    If there are alternate means of providing such information,
      the Office may choose the least costly or time consuming alternate, if
      to do so does not prejudice the employee's
      rights to prompt and meaningful information.

Section 12

A.    An employee covered by this Agreement may, without fear of penalty or
      reprisal, engage in the disclosure of information which the employee
      reasonably believes evidences:

      (1)    Violation of any law, rule or regulation; or,

      (2)    Mismanagement, a gross waste of funds, an abuse of authority, or a
             substantial and specific danger to public health or safety.

B.    Such disclosure may be made if it is not specifically prohibited by law
      and if such information is not specifically required by executive order
      to be kept secret in the interest of national defense or the conduct of
      foreign affairs.

C.    The language of this section shall be interpreted in the same manner as
      similar language in 5 U.S.C. 2302 as interpreted by published decisions
      of the courts and those adjudicator agencies empowered by Congress to
      adjudicate "whistleblower" protections.

11

Section 13

A.    An employee may resign at any time.  However, an employee should give
      reasonable notice of his/ her resignation.  The employee's reasons for
      resigning should be entered in his/her official records.

B.    Normally, resignations should be in writing.  Requests to withdraw
      resignations may be declined by the Office consistent with the
      provisions of 5 CFR, subpart b, § 715.

C.    The Office shall not secure any employee's resignation by coercive or
      deceptive means.

D.    When an employee resigns after receiving written notice of proposed
      disciplinary or adverse action, the pending action is to be listed in
      the employee's records, as set forth in the Federal Personnel Manual
      Supplement 296-33, unless the Office and the employee agree otherwise.
      When an employee resigns before receiving written notice of proposed
      disciplinary or adverse action, no record will be maintained regarding
      the possibility of such action, as set forth in the Federal Personnel
      Manual Supplement 296-33.  All recorded information within control of
      the Office specifically related to the incomplete action, except that
      which is retained in a confidential file maintained by the properly
      designated official in the Office of Personnel, shall be destroyed by
      the Office immediately after the employee's effective date of
      resignation.

Section 14

A.    The Office and the Association jointly encourage employees to
      participate in the Combined Federal Campaign and the United States Bond
      Drive.

B.    Financial participation in such programs and other charitable campaigns
      shall be on a strictly voluntary basis.

C.    First and second line supervisors shall not be provided any information
      as to the fact of, or the amount of, contribution by their subordinates;
      however, actual individual payroll stubs shall be exempt from this
      requirement.

D.    (1) Solicitors for contributions shall be volunteers; except, if there
      are no volunteers in a particular organizational area, the least senior
      employee shall be designated as the solicitor, unless there is a
      significant work-related reason requiring the designation of another
      employee. (2) The Office shall relieve an employee from duties as a
      solicitor

12

for cause directly related to solicitation activities. (3) No employee who reviews or directs the work of another shall solicit monies from the employees so reviewed or directed. (4) Solicitors shall be granted appropriate official time to engage in the solicitation program.

E.   Employees shall not be asked to disclose the fact of, or the amount of, their contributions or allotments to persons who review or direct those employees.

F.   All employees shall be given a non-transparent envelope for the purpose of making a confidential contribution or allotment.   Solicitors shall explain the purpose of the envelopes and shall not open any returned envelopes that are sealed.   Solicitors shall not divulge information regarding an individual's contribution or allotment to anyone other than a person designated by, and acting on behalf of, the Personnel Processing Division, other charitable campaigns, or the US Bond Drive.


Section 15

A.   The Office and the Association jointly encourage employees to donate blood.   Participation shall be strictly voluntary.

B.   An employee's supervisor shall grant an employee four hours administrative time to make a blood donation, including recuperation and travel time.   The administrative time shall be taken consecutively, beginning at the time the employee departs to make the blood donation.

C.   Employees will be released to donate blood unless the employee's absence will create a significant work detriment to the work load of the Office.

13

## ARTICLE 5

### EMPLOYEE OBLIGATIONS

#### Section   1

Each employee of the unit is presumed to know and is expected to comply with all laws, duly published regulations and policies which relate to his employment and conduct.  The fact that a particular law, regulation or policy may not be called to his/her attention by the Office will not excuse any violation on his/her part.  In such situations when a law, regulation or policy can be reasonably viewed as imposing a requirement or limitation which is not obvious or which does not involve a situation when a reasonable person should have inquired to ascertain whether there was a requirement or limitation, then an employee, who did not have actual notice or knowledge of the law, regulations, or policy, shall not be subject to a penalty more severe than an oral warning, unless the Office can show, with a high burden of proof, that the circumstances warrant a higher penalty.

#### Section   2

Whenever practical, prior to leaving their work area, all Unit employees shall inform their supervisor or designee of the nature of the activity to be transacted, the location of the area they intend to visit, and the approximate time they will be out of the work area.

#### Section   3

Notwithstanding the fact that there exists no legal requirement for employees to provide a current mailing address or home phone number to the Office, the parties nevertheless encourage employees to provide a current mailing address to the operations division and a home phone number to their immediate supervisor.  Unless required by law, this information shall be kept in strict confidence.  The immediate supervisor shall not use the employee's home phone number except in an emergency situation.

#### Section   4

Unit employees having contact with the public will maintain a neat and clean appearance, reasonably suitable for a contemporary business environment, during working hours.

14

## ARTICLE 6

### ASSOCIATION RIGHTS AND OBLIGATIONS

Section  1

The Association shall have the right to act for and to negotiate agreements covering all employees of the Unit and also shall be responsible for representing the interests of any employee or group of employees within the Unit without discriminating and without regard to employee organization membership, except as provided for in 5 U.S.C. §7114(a) (5) and 5 U.S.C. §7121(b)(3)(B).

Section  2

Management shall furnish the Association with the name of every newly-hired Unit member and his/her initial Art Unit, or equivalent, assignment during the member's initial two weeks of employment.

Section  3

The Association shall have the right to speak to all new Unit employees at an orientation session. The Association will be given adequate notice of the schedule for its presentation. The Association's presentation will not exceed 15 minutes and shall not include any direct solicitation for membership. A reasonable time will be provided for answering questions. The Association will provide and distribute copies of the Agreement and amendments thereto at its presentation.

Section  4

In order to implement the Association's rights under 5 USC 7114 (a) (2) (A) to participate in formal meetings, the Office shall make every effort to provide the Association a minimum of four hours advance notice for such meetings. In any event, such advance notice shall be reasonable under the circumstances and sufficient to allow the Association time to arrange for representation at the formal meeting. If the Association is unable to be represented at a formal meeting or chooses not to be represented, the Office shall promptly prepare a written summary of the meeting at the Association's request. The Association shall have the right to one representative at such formal discussions.

Section  5

Advance notice under Section 4 shall include:

A.    the time and place of the meeting;

B.    the expected Unit employees and Office representatives
      at the meeting;

C.    the general nature and subject matter to be discussed,
      and a copy of any agenda prepared by the Office in advance.

15

<u>Section 6</u>

A.   Any communication to the Association from the Office which is subject to a response time period started by the serving of the communication, shall be delivered on the date of service and either 1) handed by a representative of the Office directly to (a) the Association President, (b) the Association Secretary, or (c) any person previously designated by the President to receive such communication; or 2) deposited by a representative of the Office into, and date and time stamped at, a communication box located in the clerical area of the Group, or its equivalent, of the Association President and dedicated solely for the use of the Association.  When such a communication is deposited in the Association communication box, the Office will leave a message on the day of delivery notifying one of the POPA representatives listed in 1) of such.  The Office will provide access to the communication box Monday-Friday, 8:30 a.m. - 5:00 p.m. Any communication received in the box after 5:00 p.m. will be considered delivered on the following work day for the purpose of starting the period.

B.   The Office is exempt from the procedure set forth in subsection A when a neutral third party (e.g., arbitrator) specifically requires the communication be filed in a different manner.


<u>Section 7</u>

A.   No member of Management shall deliberately open and/or read mail directed to the Association.

B.   All external mail directed to the Association shall be removed during the initial mail sorting process.  Such mail shall not be opened, but, date-stamped, bundled and delivered to the organizational unit of the Association President.

C.   Any Assocation mail mistakenly opened in the Mail Room shall be identified as mistakenly opened when the Mail Room perceives such a mistake before the mail in question leaves the Mail Room.

<u>Section 8</u>

The Association shall have the right to hold one meeting per year during duty hours to discuss working conditions and related subjects with its members. The internal affairs of the Association shall not be discussed at this meeting.  The Office will grant one hour of administrative leave to all Unit members who attend.

16

ARTICLE 7

CAREER DEVELOPMENT AND WORK DETAILS

Section 1

The Office shall designate certain recurring details as " career development details." A listing of the career development details shall be posted and published annually, and copies made available to the Association and members of the Unit.  Career development details are details that not only provide assistance in meeting work requirements, but also will provide employees an opportunity to develop their skills, interests, and improve efficiency in administrative and technical fields so that a reservoir of developed employees will be in existence for possible selection to higher level vacancies.

Section 2

Assignments to career development details shall be made and administered in a fair and equitable manner among every qualified employee who has expressed an interest in a detail.  The Office and the Association encourage highly qualified individuals to participate in career development details.  Two weeks advance notification of a career development detail shall be made by means of an announcement to all Unit employees.  However, the Office may announce multiple details simultaneously and establish a roster of eligibles from the response to that announcement that is valid for a period of up to 12 months. Announcements shall include the location of the detail(s), the duration, the nature of the work, the required application procedures and the minimum qualifications and requirements of an applicant.  The Association shall be provided with a copy of each announcement.

Section 3

The term "career development detail" shall include the following, unless the creation of such a detail excessively interferes with management rights, details to:

A.    Office of Quality Review (Deputy Commissioner)

B.    Assistant Commissioner for Patents

C.    Assistant Commissioner of External Affairs

D.    Deputy Assistant Commissioner of Patents

E.    Solicitor's Office

F.    Enrollment and Discipline

G.    Any other detail:

     (1)    for which credit (e.g., points) is given in merit promotion actions,

17

(2)     which is not normally assigned to the employee
        and is outside the  employee's  position  description,  and

(3)     which requires at least 450 hours work time over a
        period of four months.

Section  4

Before selection, the skill and ability of the employee and the specific needs
of the Office will be considered.  Selection preference shall be given to
those qualified applicants who have the least amount of service on career
development details.  A career development detail which terminated more than
four years prior to the announcement of a new detail will be ignored in
assigning selection preference.  Except in extraordinary circumstances an
employee shall not serve on a career development detail a second time in the
same area.

Section  5

Full allowance will be made for the time lost while said member is
participating in a career development detail.  The Office shall notify
affected employees of the existence and expected duration of conditions in a
Group Art Unit or equivalent area which would preclude their participation in
a career development detail.

Section  6

The Office shall provide the Association with the name of the applicant
selected to fill the detail.

Section  7

The Office may assign employees to work details without regard to the
provisions of the article when workload requirements exist so as to make
alternate assignments to details necessary to carry out the agency mission.

18

## ARTICLE 8

### PROFESSIONAL TRAINING AND DEVELOPMENT

Section  1

A.     The Association and the Office agree that the professional training and development of Unit employees is a matter of great importance.

B.     The factors which shall be considered in determining which employees will be selected for training are:

(1)          benefits to be derived by the Office
(2)          resource limitations
(3)          enhancement of the employees performance
(4)          number and type of training sessions previously attended by the employee
(5)          length of employment in the Office

C.   If management determines that it is in the best interest of the Office and the employee, the employee may be asked to repeat all or selected portions of training previously given or may be asked to take training.  Management shall pay all costs of such training.


Section  2

The Office recognizes that the reading of technical and legal publications is necessary to keep professionals abreast of recent developments related to their work assignments, and to keep searches up to date.  Absent a budgetary emergency, the Office will continue to supply professionals with articles, magazines and books written on legal and technical subjects pertinent to his/her assignments.  In arts involving rapid technical advances, it is recognized that the reading, copying and classifying of technical publications may require a substantial amount of time.  Accordingly, supervisors shall grant professionals a reasonable amount of non-production time, per bi-week, for this purpose.


Section  3

A.     The Office recognizes that attendance at certain conferences, seminars and meetings outside of the Office is necessary for full professional development of the members of the bargaining unit, and is both desirable and in the best interest of the mission of the Office.  Therefore, the Office shall annually publish a list of such outside conferences, seminars and meetings at which attendance was approved in the previous calendar year.  A copy of the list shall be maintained in each Group Art Unit or equivalent area for review by Unit members and made available to the Association.  This list shall not be read or used as a limitation on such outside symposiums and employees may request other appropriate outside conferences, seminars and meetings under this Section.

B.    A supervisor may authorize:

    (1)    up to 16 hours annually of excused absence for attendance, and

    (2)    40 hours of compensatory leave, to be earned in advance, in accordance with applicable law, rule and regulation.

This opportunity will be accorded to those members of the Unit who have demonstrated satisfactory job performance and would most probably benefit the Office mission by their attendance.


Section  4

The Office intends to maintain a "Professional Examiner Training Program," under appropriate laws, rules, regulations, and funding constraints.  The current program includes the following types of training for selected professionals:

A.    The Patent Academy - Intensive in-house training program primarily for all newly hired examiners, or refresher training for others, to teach the basic legal and procedural skills of patent examining;

B.    Legal Training such as: In-house legal courses; law school tuition assistance program; and legal lectures;

C.    Technical Training such as: In-house technical training; Technical Course Program (for example tuition assistance for job related technical courses at local universities); and

D.    Specialty Training - This activity is for those professional employees lacking sufficient skill in areas such as communication skills.


Section  5

Once an employee has requested and been selected for training or personal development under this article, the Office shall pay for all tuition and books which may be associated with the training.  However, if the employee fails such training, the employee shall reimburse the Office.

Section  6

If the Office assigns patent applications or classification work in the area of technology foreign to the member's training and background, the Office shall afford the member appropriate classroom or on the

job training in the foreign technological area during duty hours.  Time spent
in training shall be accounted for separately from examining time or
classifying time.

Section 7

The Office shall make and administer assignments to training under this
article in a fair and equitable fashion consistent with management rights,
workload requirements and budgetary limitations.

Section 8

The parties hereby adopt the guidelines set forth in Commissioner
Donald J. Quigg's September 20, 1982 memorandum concerning the
Examiner Education Program, with the following modifications:

1.    The report generated under Section IX.D.4 shall include an accounting of
      the number of field trips separately for Unit members and managers.

2.    Copies of the report, excluding the information provided in accordance
      with subsection D.4(c) shall be sent to the Association quarterly.

21

## ARTICLE 9

### OVERTIME

#### Section 1

When management deems there is a specific need for compensated overtime or that such is a proper and fit manner to expend funds, then overtime shall be authorized in accordance with the following criteria:

A. the amount of work to be done;
B.    the funds available to do the work;
C.    the ability of the member of the Unit to satisfy the specific need;
D.    the ability of the member of the Unit to perform the work to be done in an independent manner during the period of overtime;
E.    demonstrated effectiveness in producing the required quality and quantity of the work product involved.

#### Section 2

The above criteria shall be uniformly applied in any cost center for which overtime is authorized. Insofar as practicable, overtime will be on a voluntary basis. Justification for restricting or denying overtime shall be in writing if requested by the member of the Unit affected.

22

## ARTICLE 10

### PROMOTIONS AND REASSIGNMENTS

All career vacancies shall be filled from among the best qualified candidates available on the basis of merit, fitness and qualifications; and without regard to race, color, religion, national origin, personal favoritism, age, marital status, sex, physical handicap, political or employee organization status or affiliation, except as may be authorized or required by law.

### Section 1

The Office shall confer, at least annually, with the Association regarding the general professional staffing goals and hiring plans. Subsequent anticipated staffing goal and hiring plan adjustments will be addressed in a labor-management committee meeting.

### Section 2

The Office hereby expresses willingness to consider promptly requests for transfers or reassignments from all members of the Unit. Any transfers or reassignments shall comport with sound personnel practices and the needs of the Office. Nothing derogatory shall be connoted in any request for transfer or reassignment and the individual so requesting shall be free of discrimination or reprisal therefore.

### Section 3

A.   The Office shall consider candidates for extra credit ratings at least twice a year. Candidates will be submitted by appropriate supervisors or an individual may nominate himself. No cognizance will be taken of any type of nomination. Each candidate not awarded the requested rating shall be given the reasons for the denial in writing.

B.   Prior to any change in existing criteria for extra credit items, or in any changes in the procedures for the submission and consideration of candidates, the matter will be addressed in a labor-management committee meeting. The requirements for the granting of extra credit items will be in accordance with those set forth in the Position Classification Standards for Patent Examining Series, GS-1224, as interpreted by, the Department of Commerce. The Office recognizes the benefits of maintaining a consistent scope of the art for examiners. Therefore, to the extent consistant with the interests of the Office, every reasonable effort will be made to allow examiners in GS Grade 13 and above to maintain their assigned dockets.

### Section 4

Requests for personnel action will be processed promptly.

23

Section 5

No member of the Unit shall be placed in a disadvantageous position with regard to promotions by virtue,of officially initiated service on special detail or assignment. If such detail or assignment should preclude or otherwise render impracticable an accurate work performance evaluation for promotion purposes, said member shall be considered as working at this same level of work performance evidenced immediately preceding his/her entrance on such detail or assignment.

Section 6

In compliance with regulatory requirements, the Office shall grant temporary promotions to members of the bargaining unit who have served in a higher grade position for more than 45 days.

Section 7

The Office agrees that the promotion of an employee shall not be delayed only because the employee's supervisor has been newly appointed to that position and is unfamiliar with the employee's work.

Section 8

Every member of the Unit shall have the right to be considered for promotion to the next higher grade one month prior to completion of the minimum time in grade required by law and regulation, provided the member is working in a position identified as a career-ladder position and providing such higher grade position exists. However, the criteria of the Signatory Authority Program shall apply to GS-13 examiners who are on the Signatory Authority Program. Any member who is not promoted after completion of the minimum time in grade shall have the right to request and receive a written statement from his supervisor after personal discussion between them. The supervisor's statement shall list the reasons for withholding the promotion and explain how the member's performance can be improved to qualify for promotion. This statement may be maintained by the Office but shall not become a part of the member's OPF.

Section 9

Programs which are established to provide for orderly career or promotional advancement shall be announced by the Office. Criteria for evaluation of participants in such programs will be published by the Office and copies thereof will be made available to individual members of the Unit upon request. Criteria contained in existing programs, identified by the Association, will also be published and made available. The Association shall be furnished a copy of any such criteria.

24

Section 10

It is the purpose of this Section to provide a fair and equitable procedure
for filling positions through competitive procedures based on merit
principles. To that end, the following procedures shall be used to identify
and select the best qualified candidates for career vacancies, grades GS-12
and above, which are not within an employee's established career ladder,
whether by promotion, transfer or new appointment.

A.   Position Vacancy Announcements shall be promptly posted on all Office
     bulletin boards and in each art unit or its equivalent. A copy of each
     Announcement shall be provided to the Association. The Announcement
     shall contain:

     (1)   the area of consideration;

     (2)   the minimum qualifications required;

     (3)   the categories of evaluation criteria and the total points
           available in each category;

     (4)   the crediting plan for each category;

     (5)   an identification of other similar vacancies that may occur in the
           ensuing 12 month period, if known;

     (6)   closing date; and

     (7)   a statement of equal employment opportunity.

     Interested candidates shall be.required to apply no sooner than 10
     workdays after the date the Announcement is posted. Open continuing
     vacancy announcements, i.e., vacancy announcements without specific
     closing dates, may be used to advertise recurring vacancies for which
     recruitment is expected to be difficult or continuing. When a sufficient
     number of candidates apply for consideration, a promotion register or
     skill file will be established. The register cannot be used for a period
     longer than six months. Candidates on the register will be considered
     for all applicable vacancies developing during the period.

B.   Applicants must meet all qualification requirements by the closing date
     of the vacancy announcement or the issuance date of a merit promotion
     certificate from an established register or skills file, to be eligible
     for consideration for that vacancy.

C.   Prior to the announcement of a vacancy, the Office shall appoint an
     evaluation panel to evaluate and rank the candidates for the vacancy.
     The panel will consist of persons who are at least one grade higher than
     the highest grade assignable to the vacancy and, where possible, shall
     include no more than one person under the jurisdiction of the second
     line supervisor.

25

D.   All eligible candidates will be evaluated and ranked in a fair and objective fashion. At least 60 percent of the candidates' evaluation score shall be based upon objective criteria, such as, objective examinations, blind evaluation of written work, experience and relevant training, and sanitized performance evaluations.

E.   A crediting plan, how points will be awarded for work experience, performance evaluations, etc., shall be established and reduced to writing before the vacancy announcement is posted.

F.   Within 30 days after the vacancy announcement has closed, the panel shall evaluate and rank the cadidates as "Qualified," "Well Qualified," or "Best Qualified." The panel shall maintain a record of what points are credited to each candidate by category and the factual basis for crediting those points. The records of each panel shall be available to the Association and to each candidate upon the filing of a grievance or other appropriate challenge to the promotion. These records shall be retained for two years or until any grievance or challenge regarding the selection is finally resolved, whichever is longer.

G.   When all eligible candidates have been evaluated and ranked, the Office will promptly issue form CD-262, "Merit Assignment Program Certificate," listing the names of the best qualified candidates in alphabetical order, to be considered by the selecting official.

    (1)   A certificate will usually include the names of three to five best qualified candidates for the vacancy to be filled. Additional candidates may be certified where meaningful distinctions cannot be made. Ten is the maximum number of best qualified candidates that may be referred to the selecting official, except as stated in subsection G.3, but the number of candidates may be increased to the extent necessary to include all of the candidates available from other appropriate sources as "other appropriate sources" is used in 5 U.S.C. § 7106 (a)(2)(C) (ii).

    (2)   In cases where meaningful distinctions of qualifications cannot be made through the application of quality ranking factors and an excessive number of candidates are considered equally qualified, up to 10 candidates may be listed on a certificaLe based on seniority with the Office.

    (3)   When there is more than one vacancy to be filled from a certificate, one additional candidate may be added to the certificate for each additional vacancy. In the event an additional vacancy occurs within one month after an announcement has closed, the old announcement may be used to fill the vacant position, with the consent of the Association.

    (4)   A Merit Assignment Program Certificate is valid for 30 calendar days from the date of issuance. The certificate

26

may be extended for 30 additional days upon a valid request by the
selecting offical, with the consent of the Association.

(5)    Interviews with the selecting official are optional. If one member
of the "best qualified" group is interviewed, all must be
interviewed.

(6)    If the candidate selected is a Unit employee, he/she shall be
promoted within one pay period of the date of his/her selection
Under unusual circumstances (e.g. to permit completion of
essential assignments or to permit arrangements to be made for for
the completion of essential assignments), this time period for
promotions may be extended, but for no more than two additional
pay periods.

H.    The Office shall notify all candidates as to whether they were selected
or not.

I.    The selecting official will personally discuss with candidates any
questions they may have about their non-selection.

J.    When requested by a competing applicant, the Office shall furnish the
following information after the action has been completed:

(1)    The name of the individual(s) selected;

(2)    Whether the applicant was found to be qualified;

(3)    Whether the applicant was on the list from which selection to fill
the position was made; and

(4)    Any other relevant information the applicant may require to
prosecute a grievance or other challenge.

(5)    In what area, if any, an employee may improve his or her
qualifications to enhance chances for future selection. (This
information normally will be furnished by means of a counseling
discussion with either a representative of the office of Personnel
or a knowledgeable supervisor with feedback from the panel.)

ARTICLE 11

GRIEVANCE PROCEDURE

Section 1

A.   The Office and the Association recognize and endorse the importance of
     considering and resolving complaints and grievances promptly and,
     whenever possible, informally. The parties agree that this grievance
     procedure will provide a mutually acceptable means of resolving
     complaints and grievances at the lowest level possible, and the Office
     and Association agree to work toward this end.

B.   The Office and the Association shall afford and assure all employees
     freedom from restraint, interference, coercion, discrimination or
     reprisal for filing or presenting a grievance or for otherwise
     participating in the grievance procedure including arbitration.

Section 2

The procedure described in these sections shall constitute the sole and
exclusive procedure available to bargaining unit members or the Association
for resolving grievances under this or any other negotiated agreement between
the parties. Matters covered under this procedure and under certain statutory
procedures may, at the discretion of the aggrieved employee, be raised under
either procedure but not under both. The employee will be deemed to have
exercised this option at such time as the employee timely initiates an action
under the applicable statutory procedures or timely files a grievance in
writing under this Article, whichever event occurs first. The matters for
which this option exists are:

A.   discrimination based on race, color, religion, sex, national origin,
     age, physical or mental handicap, marital status or political
     affiliation under 5 USC 2303 (b)(1);

B.   removal or reduction in grade based on unacceptable performance under 5
     USC 4303;

C.   other adverse actions under 5 USC 7121 (i.e., removal, suspension for
     more than 14 days, reduction in grade, reduction in pay and furlough of
     30 days or less); and

D.   matters which may be raised as unfair labor practices under 5 USC 7116.

28

Section 3

For purposes of this Grievance Procedure the term grievance means any complaint:

A.    by an employee against the Office concerning any matter relating to the employment of the employee;

B.    by the Association against the Office concerning any matter relating to the employment of any employee; or

C.    by an employee or the Association against the Office concerning:

    (1)    the effect or interpretation, or a claim of breach, of this Agreement; or

    (2)    any claimed violation misinterpretation, or misapplication of any law or regulation affecting conditions of employment.

D.    by the Office against the Association concerning any claimed breach of an obligation or responsibility owed to the Office as a result of this Agreement.


Section 4

The parties (i.e., grievant, Association, and Office) have the following rights in all grievances under this agreement:

A.    To be present during any grievance discussion conducted pursuant to this Article, including any settlement discussions. The right of the Association to be present, however, may not impair the right of the grievant independently to handle the grievance.

B.    To be furnished with a complete copy of any documents presented or generated in the grievance. This copy shall be furnished by the person presenting or generating the paper at the same time that it is furnished to any other concerned official or party.

C.    The Association shall have the right to state its position on a grievance orally and in writing which is prosecuted by a grievant pro se.

D.    The rights specified in subsections A, B, and C shall not apply during informal discussions at the examining group or equivalent level unless the employee states that a grievance is being presented.

29

E.   The grievant shall have the right to self represention at each level of the grievance procedure. However, grievant may be accompanied and assisted by the Association or by no representative, if the grievant so desires.

F.   The Association may be chosen as the representative at any point in the grievance procedure. A grievant may only be represented by one Association representative. When necessary, another Association official (a trainee or a technical assistant) may attend the grievance meeting on bank time but, shall not participate in presenting the grievance. However, where two or more management representatives are going to hear a grievance, the grievant may be represented by the same number of Association representatives as there are management representatives hearing the grievance.

## Section 5

The following matters are excluded from coverage under the provisions of this procedure:

A.   Those matters excluded from coverage under 5 USC 7121 (c) relating to:

    (1)   any claimed violation of prohibited political activities;

    (2)   retirement, life insurance, or health insurance;

    (3)   suspension or removal in the interest of national security;

    (4)   any examination, certification, or appointment; or

    (5)   the classification of any position which does not result in the reduction in grade or pay of an employee.

B.   Nonselection for promotion from a group of properly ranked and certified candidates.

C.   Nonadoption of a suggestion, except when the grievance alleges that an employee's suggestion was adopted without appropriate recognition of the employee who made the suggestion.

D.   A preliminary oral warning or a written proposed notice of an action which, if effected, would be covered by this procedure or any statutory appeal procedure, provided that the written proposed notice of action is considered, after

30

the employee is given an opportunity to reply to the proposed action, and a written decision issued at the earliest practical date, after the employee has made a reply or after the date for making a reply has passed.

E.   Actions to terminate trial or probationary employees serving probationary periods, or employees holding temporary appointments with definite time limits.

F.   Matters excluded by 5 USC 5366.


Section 6 - Informal Procedure

A.   Within 20 calendar days after receipt of an unfavorable administrative decision, or the date of the event or action prompting the grievance or the date the grievant becomes aware or should have become aware of such action,'the employee, or his or her representative must personally present the grievance to the employee's immediate supervisor. In the event of Office or Association grievances, the grievant representative must personally present the grievance to the lowest official with authority to adjust the grievance or to effectively recommend its adjustment. At this time, the official receiving the grievance shall issue a brief written memorandum to the grievant stating merely that an informal grievance has been filed, identifying the date and party(ies) and then provide a copy to the Association, as appropriate.

B.   If the person receiving the grievance in subsection A does not have the authority to resolve the matter, he/she shall promptly refer the grievance to the official who does have such authority and notify the grievant and/or the Association, as appropriate, in writing of this referral. Any time limit on the informal response occasioned by this referral may be tolled, for a reasonable period, but not to exceed two (2) workdays.

C.   The 20 calendar day time period to file an informalgrievance shall not bar an Office or Association grievance based on an alleged "continuing violation" (as that term has been construed by the courts in labor relations matters) or an alleged pattern of conduct provided that the grievance is filed within 20 calendar days after the date when awareness of the alleged pattern occurred.

D.   The official receiving the informal grievance shall inform the grievant, and/or the Association, as appropriate, of

his/her decision within 20 calendar days after receipt of the grievance. If the decision does not resolve the grievance, the official shall immediately issue a written memorandum to the grievant stating that the parties were unable to resolve the matter informally. Copies of the memorandum shall be provided to the Association, as appropriate.

Section 7

A.  If the grievance is not resolved informally, the grievant may file a formal written grievance within 10 calendar days of receipt of the informal grievance decision.

B.  The formal grievance shall contain the following information:

    (1)  Identification of the grievant;

    (2)  Nature of the grievance;

    (3)  Corrective actions requested and reasons;

    (4)  The fact that the Association has been designated as representative, if the grievant has so designated.

Section 8 - Formal Procedure

A.  A copy of the written grievance shall be furnished to the next higher management official with authority to resolve the matter causing dissatisfaction or the next higher Association official in the case of an Office grievance. The official shall answer the merits of the grievance, provide any pertinent information relevant to the grievance, and present any allegations of procedural deficiencies within ten (10) calendar days of filing the formal grievance. The official's answer shall clearly indicate the reason(s) for his/her position and shall address the points raised by the grievant in the formal grievance. The grievant may file exceptions within ten (10) calendar days of receipt of the official's answer. The grievant's exceptions (if any) shall become a part of the grievance file.

B.  The Commissioner or Association President, as applicable, shall appoint himself/herself or another official as the deciding official within two (2) workdays after receipt of grievant's exceptions.

C.    In any grievance against the Office, all papers submitted under this section shall be filed with the Commissioner. In any grievance against the Association, all papers under this section shall be filed with the Association President.

D.    Either party may request that a meeting be held to discuss the matter. If such a request is granted, the meeting shall take place within ten (10) calendar days after receipt of the grievant's exceptions. The meeting shall not be considered a hearing and the examination or cross examination or other presentation of witnesses by either party shall not be permitted.

E.    The deciding official may attempt to settle the grievance. However, if settlement is not possible, the deciding official shall render a written decision within fifteen (15) calendar days of his appointment or the close of the meeting.

F.    The deciding official's written grievance decision may be appealed to binding arbitration by the Association or Office, as appropriate.


Section 9 – Arbitration

A.    Arbitration may be invoked only by the Association or by the Office. An employee does not have the right to invoke arbitration. If the Association desires to invoke the binding arbitration provisions of this section, it must notify the Chief of the Employee and Labor Relations Division within ten (10) calendar days of its receipt of the deciding official's written grievance decision. Likewise, the Office must notify the Association President of its desire to invoke arbitration within ten (10) calendar days of its receipt of the Association President's written grievance decision.

B.    Within seven (7) calendar days from the date of receipt of the request for arbitration, the Association and the Office shall meet for the purpose of selecting a qualified arbitrator. If agreement cannot be reached at that meeting, the parties shall immediately request the Federal Mediation and Conciliation Service (FMCS) to provide a list of five persons qualified to act as arbitrator. Within seven calendar days after receipt of the list, the Office and the Association shall meet to select an arbitrator from the list. If they cannot mutually agree upon one of the listed arbitrators, then the Office and the Association will each strike one arbitrator's name from the list and repeat the procedure until one name remains on the list. The remaining person shall be the duly selected arbitrator. The party to make the first strike shall be determined by the toss of a coin.

C.   Where an arbitrator has not been selected within twenty (20) calendar
     days after the date of receipt of the FMCS list of arbitrators, due to
     either party refusing to participate in the selection of an arbitrator,
     the procedures of the American Arbitration Association (AAA) may be
     invoked by either party. once these procedures are properly invoked, the
     AAA shall have jurisdiction over the arbitration. However, the AAA
     procedures must be invoked within ninety (90) calendar days after the
     date of the receipt of the FMCS list of arbitrators. The parties shall
     not maintain their arbitration rights if the procedures are not invoked
     within the ninety (90) day period.

D.   Within three working days after the selection of the arbitrator, the
     parties shall notify, in writing, the source supplying the list of
     arbitrators of the arbitrator selected and the requirements of this
     Article. In addition, if the arbitrator is chosen under the FMCS
     procedures, the parties shall jointly notify the arbitrator of his/her
     selection and request the arbitrator's availability for purposes of
     scheduling a hearing.

E.   The arbitrator shall conduct the arbitration in accordance with the
     following procedures:

     (1)  The arbitration hearing shall not be open to the public or the
          press. In such hearings presented in the name of an individual or
          groups of individuals, attendance shall be limited to persons
          determined by the arbitrator to have a direct connection with the
          grievance. Parties to the grievance may be represented by an equal
          number of counsel, but not less than two.

     (2)  All witnesses except the grievant or counsel as the first witness
          shall be sequestered.

F.   The arbitrator shall be requested to render a decision to the Office and
     the Association as quickly as possible, but no later than 30 days after
     the conclusion of the hearing or the arbitrator's receipt of
     post-hearing briefs, if they are submitted.

G.   The arbitration proceedings shall be held on premises provided by the
     Office.

H.   Normally, there shall be verbatim transcript of the hearing. A copy of
     the transcript shall be provided to each party promptly after the
     hearing is closed.

I.   The arbitrator's fee and the expenses of arbitration, if any, will be
     shared equally by the parties, except that the expenses of any witness
     shall be borne by the party calling the witness.

34

The salary for a PTO employee, while participating in the presentation of testimony, shall be borne by the Office, if that employee would otherwise be in a duty status.

Section 10

A.    The grievant shall be granted a reasonable amount of official time, up to eight hours, for preparation of the grievance and a reasonable amount of official time, up to 8 hours, for preparation for arbitration.

B.    The grievant, the Association representative and all relevant employee witnesses shall be on official time for the presentation of any grievance matter or at any arbitration hearing.

35

## ARTICLE 12

### DISCIPLINARY AND ADVERSE ACTION
### BASED ON CONDUCT

#### Section 1

The parties agree that primary emphasis should be placed on preventing situations which may result in disciplinary or adverse actions and that an employee may be more effectively helped through counseling than through a disciplinary or adverse action.

#### Section 2

A disciplinary action for the purpose of this Article is defined as an oral warning, a written warning, a letter of reprimand or a suspension of 14 days or less.

#### Section 3

An Adverse Action for the purpose of this Article is defined as a removal, a suspension for more than 14 days, a reduction-in-grade or pay for conduct, or a furlough of 30 days or less for non-conduct reasons. This Article does not apply to discharges during probationary, or trial period's or termination of temporary appointments.

#### Section 4

The employee and/or his or her representative shall receive all evidence relied upon by the Office in proposing any disciplinary or adverse action. The Office shall also provide the employee, upon request, all evidence that is favorable to the employee and related to the reasons for the proposed action. After a disciplinary or adverse action has been proposed, any new evidence which will amend or create a new allegation or reason for the proposed action, will require a new proposed action, if such evidence is to be relied upon by the Office. If the Office is to rely upon any other evidence after proposing a disciplinary or adverse action, the employee or his/her representative will be provided an opportunity to respond to such new evidence.

#### Section 5

Where the Office has relied upon witnesses to support the reasons for the proposed action, the Office will make those witnesses available, to the extent it has control over them, for the employee or his/her representative to question.

#### Section 6

Oral warnings, written warnings and letters of reprimand may be grieved pursuant to the terms of Article 11 of this Agreement.

36

Section 7

When the Office proposes to suspend an employee for 14 days or less the following procedures will apply:

A.    The Office will provide the employee with 15 days advance written notice of the proposed disciplinary action;

B.    The advanced written notice of proposed disciplinary action shall include all the reasons for the proposed action, a statement that the employee has a right to a representative, and the right to respond orally and/or in writing within 10 days from the date he/she received the notice. A request for an oral reply must be made in writing. A reasonable request for an extension will be granted.

C.    The documentary evidence on which the notice of proposed disciplinary action is based will be assembled, copied and given to the employee at the time the notice is delivered.

D.    Where an employee chooses to make an oral reply, the reply will be heard by a higher level management official than the official who issued the notice of proposed disciplinary action. The Office will record the oral reply, prepare a summary and provide a copy of the summary to the employee or his/her representative. The employee may make corrections to the summary. Any dispute over errors/corrections shall be verified by the recording of the oral reply.

E.    The oral reply affords the employee a forum to present an uninhibited oral defense, including denial of reasons for the proposed action, a presentation of any mitigating circumstances and a request for less severe action. It is not a hearing. Although questions may be asked for clarification, there is no cross examination or presentation of witnesses. In delivering an oral reply, the employee may make any representation he/she believes might influence the final decision. The oral/written reply shall be made a permanent part of the documentary evidence upon which the proposed action is based and shall be submitted to the deciding official.

F.    A letter of final decision containing the Office's detailed findings with respect to each reason upon which the proposed action was based, and the appropriate appeal rights, will be issued and delivered to the employee at the earliest date possible after the oral reply or the receipt of the written reply or the termination of the 15 day period. However, in no instance shall this time be greater than 60 days from the employee's response.

Section 8

A suspension of 14 days or less will be grieved at the level of the deciding
official. Thereafter, all requirements associated with subsequent steps of the
grievance procedure will apply.

Section 9

When the Office proposes an adverse action against an employee, the following
procedures will apply:

A.   The Office will provide the employee with 30 days advance written notice
     of the proposed adverse action;

B.   The advanced written notice of proposed adverse action shall include all
     the reasons for the proposed action, a statement that the employee has a
     right to a representative, and the right to respond orally and/or in
     writing within 15 days from the date he/she received the notice. A
     request for an oral reply must be made in writing. A reasonable request
     for an extension will be granted.

C.   The documentary evidence on which the notice of proposed adverse action
     is based will be assembled, copied and given to the employee at the time
     the notice is delivered.

D.   Where an employee chooses to make an oral reply, the reply will be heard
     by a higher level management official than the official who issued the
     notice of proposed adverse action. The Office will record the oral
     reply, prepare a summary and provide a copy of the summary to the
     employee or his/her representative. The employee may make corrections to
     the summary. Any dispute over errors/corrections shall be verified by
     the recording of the oral reply.

E.   The oral reply affords the employee a forum to present an uninhibited
     oral defense, including denial of reasons for the proposed action, a
     presentation of any mitigating circumstances and a request for less
     severe action. It is not a hearing. Although questions may be asked for
     clarification, there is no cross examination or presentation of
     witnesses. In delivering an oral reply, the employee may make any
     representation he/she believes might influence the final decision. The
     oral/written reply shall be made a permanent part of the documentary
     evidence upon which the proposed action is based and shall be submitted
     to the deciding official.

F.   A letter of final decision containing the Office's detailed findings
     with respect to each reason upon which the proposed action was based,
     and the appropriate appeal right, will be issued and delivered to the
     employee at the earliest date possible after the oral reply or the
     receipt of the written reply or the termination of the 15 day period.
     However, in no instance shall this time be greater than 90 days from the
     employee's response.

38

## Section 10

Adverse actions may be appealed either directly to the Merit Systems Protection Board (MSPB) or, with the consent of the Association, to arbitration under Article 11 of this Agreement, but not both. Employees shall be warned in writing that once an election to appeal is made, it is final and irrevocable.

## Section 11

If an employee elects to appeal an adverse action to arbitration, the Association must give the Office notice of its decision within 15 days after the employee receives the Office's final decision.

## ARTICLE 13

### AWARDS

The present Incentive Awards Program in effect in the PTO is the Agreement on Awards negotiated between POPA and management. The Agreement was executed on June 27, 1983, but, the FLRA later ruled that certain aspects of the award program are non-negotiable. The PTO, nevertheless, has maintained, voluntarily the provisions with no change. Accordingly, while no change in the awards program is contemplated at present, the Office reserves the right, subject to the mid-term bargaining provisions of this Agreement, to change those portions of the awards program which are outside the Office's obligation to bargain. The Agreement on Awards is appended to this Agreement as Appendix A, and shall be deemed to be part of this Agreement to the extent that provisions thereof are within the mandatory scope of bargaining.

40

## ARTICLE 14

### MID-TERM BARGAINING

#### Section 1

Nothing in this Article shall affect the authority of the Office to take actions that are absolutely necessary for the functioning of the agency.

#### Section 2

Mid-term changes in conditions of employment shall be proposed on a quarterly basis, beginning three months after the implementation of this Agreement.

#### Section 3

Unless the parties agree otherwise, the following procedure shall be used for preparing mid-term bargaining proposals:

A.   The party proposing a change in working conditions or personnel policies shall present its proposed action to the other party in writing and shall include the reasons for the action and copies of relevant statutes, regulations and other relevant supporting background materials.

B.   Within one week thereafter, the parties shall meet to explain and clarify the proposals and answer questions regarding the proposals.

C.   For Office initiated changes, the Association will be granted the opportunity to meet with the affected employees to discuss the proposed action within one week after the completion of clarification. The Office shall provide adequate space for all such meetings. Participants shall be granted one hour of official time to attend such meetings.

D.   Within two weeks after the meeting with affected employees, the party not initiating the procedure shall present its counter-proposals and bargaining shall begin as soon as practical (normally within one week).

E.   For comprehensive negotiations involving performance appraisals, signatory authority or automation, the time limits in this section shall be extended one week or one hour accordingly.

#### Section 4

A.   The Association shall have the right to the same number of repre-sentatives at mid-term bargaining as the Office, but not less than two representatives per party.

B. For comprehensive negotiations involving performance appraisals, signatory authority or automation, there shall be no less than three representatives per party.

## Section 5

Unless the parties agree otherwise, the ground rules for mid-term negotiations shall be as follows:

A.   Time of Negotiations - 9:30 a.m. to 4:00 p.m.

B.   Frequency - at least 3 days a week.

C.   Duration - up to 30 days or 6 weeks, whichever occurs first.

D.   Mediation - up to 10 days or 2 weeks, whichever occurs first.

E.   To meet the urgency of a Reduction in Force, the time limits in subsections C and D above may be reduced by one half.

F.   For comprehensive negotiations involving performance appraisals, signatory authority or automation, the time limits for subsections C and D above shall be doubled.

## Section 6

If agreement is not reached during mediation, the parties shall jointly petition the FSIP requesting interest arbitration ending in a Last-Best-Offer, issue-by-issue procedure, unless they agree to an alternative impasse resolution procedure or the FSIP deems other action to be appropriate.

## Section 7

A.   Management may not implement changes until the above procedures have been exhausted, except as provided in Section 1.

B.   When the Office is required to implement pursuant to Section 1, it shall give written notification, including justification, to the Association as early as possible. Any negotiated agreements concerning such action shall be given retroactive effect.

42

ARTICLE 15

OFFICIAL TIME

Section 1

A.    Association Officials and Representatives shall be authorized official
      time during duty hours not to exceed the established bank of hours per
      fiscal year described below for the following activities:

      (1)    to consult and counsel employees concerning personnel practices
             and policies, working conditions and employment related matters;

      (2)    to prepare and investigate grievances;

      (3)    to prepare and investigate matters other than grievances for the
             purpose of representing employees;

      (4)    to prepare for any meeting and/or consultations with management
             officials;

      (5)    to prepare for joint committee meetings;

      (6)    to prepare for all presentations before third parties;

      (7)    to review and respond to memoranda, letters and requests from the
             Office, as well as proposed new instructions, manuals, notices,
             etc., which affect personnel policies, practices or working
             conditions;

      (8)    to attend hearings or meetings in the capacity of an observer
             where an employee has elected to pursue a grievance without Union
             representation;

      (9)    to conduct any legitimate representational activity not precluded
             by statute and not set forth above.

B.    In any fiscal year the time used shall not exceed the following:

      °  3 Association Officials 3,800 hours

      °  4 Association Officials 3,200 hours

      °  All Other Association Officials 2,800 hours

      °  Association Sponsored LMR Training 160 hours

      The Association Officials who draw from each bank must be identified
      annually, in writing, to the Employee and Labor Relations Division
      within two calendar weeks after the conclusion of the Association's
      annual election of officers.

C.    On a quarterly basis, starting with the first full quarter after the
      beginning of the fiscal year or the first quarter following the
      implementation of this agreement, the Association

43

may transfer hours among the first three above described categories of bank time by written notificatiori to the Office, detailing such transfers, within 10 workdays after the quarter commences.

## Section 2

In addition to the bank of hours set forth in Section 1, the Office shall grant to Association officials reasonable time for:

A.   presentations to any agent of the FLRA, FSIP, MSPB and/or arbitrators;

B.   presentations at any third party proceeding not included in subsection A above, and ex parte presentation to other federal agencies;

C.   grievance presentations;

D.   joint committee meetings and authorized activities therefor;

E.   meetings and/or consultations with management officials not included in part C and part D above;

F.   addressing new employees as provided in Article 6, Section 3;

G.   all activities for which official time is explicitly granted by statute, law, rule or regulation;

H.   preparation for mid-term bargaining.

## Section 3

Any activities performed by an employee relating to the internal business of the Association, shall be performed at a time when an employee is not on duty or is on approved leave. Such activities include (1) membership meetings; (2) soliciting union membership; (3) collecting union dues or assessments; (4) campaigning for union office; (5) distributing or posting union literature, notices or authorization cards; and (6) any activities pertaining to the internal management of the union, including executive board meetings.

## Section 4

A.   Official time for the activities in Sections 1 and 2 above shall be accounted and reported to the Office on a bi-weekly basis. There shall be only one time code for each of the listed categories and not subproject codes. Travel time incident to a particular activity shall be included with that activity.

44

B. The Office shall make available to the Association bi-weekly information on the time used by each Association official under each category. The information shall include 13 pay period and fiscal year to date totals.

Section 5

A.   No Association official shall be prejudiced or adversely affected by virtue of the fact that the official is authorized or required to spend time performing representational duties.

B.   Whenever an Association official spends, over a two year period, less than 40% of his/her duty hours per bi-week on examining related activities, the official, upon returning to substantially full time examining duties, will be given a reasonable retraining period (without loss of grade or status) of at least 120 days.

C.   During the retraining period, there shall be no formal evaluations with respect to quality and quantity that could result in adverse consequences to the Association official. However, supervisors are encouraged to informally evaluate and counsel officials during the retraining period. After the retraining period, no record shall be kept regarding any informal evaluation. If during that 120 day period there is a reassignment (e.g., a docket change), the retraining period shall be restarted from the date of the reassignment. After the retraining period, the official shall only be formally evaluated by, and in accordance with, regular evaluations and regular evaluation procedures that apply to full time examiners; there shall be no special evaluations for former Association officials.

D.   The parties acknowledge that any examiner who starts without a docket will usually have a pipeline problem for more than six months. The Office will account for this problem in any evaluation given during the first 10 months after the official returns substantially full time to examining duties. An official returning substantially full time to examining duties will have the right to raise the pipeline problem as a defense to any action taken against him/her.

45

## ARTICLE 16

### PHYSICAL FACILITIES

Section 1

A.    Each professional will be provided with a private, wall--enclosed (full
      ceiling height) office of approximately 150 square feet whenever
      possible.

B.    If there are situations where A. of this section is not possible, then
      professionals sharing office space with other professionals will be
      located in wall-enclosed (full ceiling height) offices with the smallest
      number of additional professionals feasible and provided with
      approximately 150 square feet, where possible, for their own working
      area.

C.    The PTO will attempt to lessen the adverse impact of increased noise on
      the production of professionals sharing offices by: (1) providing
      movable, accoustical wall partitions for each of these offices, unless
      the professionals sharing an office do not want partitions and (2)
      having the supervisor, after she/he is informed of a valid complaint
      (e.g., one affecting the professionals' productivity), temporarily
      reassign or allow reasonable non-production time to the affected profes-
      sional (i.e., the professional making the complaint), when one of the
      professionals sharing the office performs required work activities
      (e.g., examiner interview, classification project meetings, post
      classification disputes) creating disturbances which do not allow the
      affected professional, who shares this office, to maintain necessary
      concentration.

D.    Except for subsections 1E and 3E, the rights and obligations set forth
      in Sections 1-3 do not apply to temporary redistributions of space for
      less than 60 days.

E.    The Office is cognizant of its responsibilities to work towards the goal
      of removing architectual barriers to the physically handicapped.

Section 2

The arbitration decision of Jerome H. Ross in 83 FSIP 89, shall be
incorporated into this agreement without change and is set forth in Appendix
B.

Section 3

A.    The Office agrees that inadequate ventilation, heating, cooling and
      lighting in areas of the Office,

46

in which members of the Unit work, contribute to inefficiency and further agrees to seek and request installation of adequate facilities to provide such ventilation, heating, cooling and lighting where it does not exist. In the event of failure of the air conditioning system, heating or lighting facilities, the Office agrees that those employees present may be excused from duty with no loss of leave or salary. (Failure of the air conditioning system will be defined as any continuous period greater than four hours in which the employee's office temperature is greater than 87*F. Failure of the heating facilities will be defined as any continuous four hour period in which the employee's office temperature is below 60*F.)

B.     Each office will contain adequate controlled lighting, ventilation with proper dust filtration system, and heating, cooling and electrical outlets. .

C.     Each patent search room will be provided with lighting at a level which allows the reading of the documents within their search area.

D.     Each examiner detailed to classification will be provided with a quiet, individual work space having adequate lighting, ventilation, heating and cooling.

E.     Smoking will be prohibited in rooms where meetings are being conducted, or in shared offices or work areas unless all professionals therein agree to such. Smoking professionals shall not be required to share an office or a work area with non-smoking professionals. To achieve this end, the office, upon request from the affected professionals, will be permitted to deviate from the priority of Section III of Appendix B.

Section 4

A.     Each professional's office or work area will be provided with a telephone whenever practical.

B.     The PTO is encouraged to provide a 24-hour per day security system for all work areas utilized by the professional staff. The PTO will provide access for authorized professionals to their designated work areas at all times (i.e., 24 hours per day). Lockable doors will be provided for either each individual office or work area.

C.     As necessary, a reasonable amount of non-production time per bi-week will be granted to Post Classifiers, or such time will

be accounted for separately, for travel between his/her work area and the Examining Corps to conduct official business when the Post Classifier and Examining Corps are housed in different buildings. Reasonable non-production time for travel may be granted, as necessary, to Project Classifiers and/or Detailed Examiners, at approximately the same rate of time per trip as that of Post Classifiers when needed for official business or such time may be accounted for separately.

D.    The PTO agrees to normally deliver all written information or actions which affect either the production, rating, pay, promotions or services provided to professional personnel in a timely manner (i.e., approximately the same time now necessary for normal delivery in CP-2, 3 and 4). Turn-around time periods shall start when the work is received by the professionals.


Section 5

A.    During a move, each affected professional will be allowed a reasonable amount of non-production time for the preparation, implementation and the reorganization of their office due to either a modification of, or a transfer to or from, his/her office area, subject to later review by the supervisor.

B.    No professional will be assigned or reassigned to office space until such time as that office space is substantially ready for occupancy in accordance with Sections 1, 2, 3 and 4 of this Article, except that the installation of phones may not be completed in the new offices at the time of the move.


Section 6

The Office acknowledges the following practices which it intends to continue: Foreign patents will either be delivered and returned to a location in CS-4 by processing personnel or classification projects will be given additional time allotments to compensate for non-productive project time expended in the delivery and return of documents. The personnel responsible for moving the patents will be responsible for their delivery and return. Further increases in storage space will be provided in classification groups for these patents and located, if space is available, near the project personnel.


Section 7

The agreement on parking, which will result from the currently recessed negotiations between the Office and the joint labor team (consisting of the Unions which represent Office employees), will become part of this Agreement.

48

Section 8

A.    The Office and the Association agree that clean, wellmaintained areas in
      which members of the Unit work contribute to the efficiency of the
      operation. In this regard, the Office agrees to diligently enforce the
      lease requirements regarding the painting and cleaning of such areas.

B.    Offices will be cleaned and painted as required during the off-duty
      hours of professionals, when practical.

Section 9

The Office will take appropriate steps to ensure that all members of the
bargaining Unit will be provided with a comfortable chair in which to work.

Section 10

Professionals shall be permitted freedom of expression in decorating their
office or work area. Only obscene or unsafe decorations will be prohibited.

Section 11

Six months after the completion of any move of at least one examining group or
its equivalent, the parties will meet to consider any adverse effect(s) of the
move and together make a bona fide attempt to solve such problem(s), if any.

49

ARTICLE 17

ASSOCIATION FACILITIES

Section 1

The Office will provide a furnished office and private line telephone for the Association, to provide a confidential place to discuss complaints and other Association matters. Unless the parties agree otherwise, the Office may not relocate such office or alter its size or configuration except where it is necessary to meet the Office's obligations under Article 16. However, the office shall not be reduced to a size less than 230 square feet. Use of the office is subject to the following conditions:

A.   The Office will not be responsible for Association property located within the office space provided to them;

B.   The Association will exercise due safety and security precautions when using such ' space, inspectab.le by the Office when accompanied by an Association official.

C.   The Association may use the telephone only to the extent permitted by law and regulation.

Section 2

The Association shall be granted use of Office designated bulletin boards and space for meetings unless (1) such use is prohibited by applicable laws, rules, regulations or Office policies, and/or (2) such space is not available. Notices posted by the Association on the bulletin boards designated for their use shall be reasonable in size and shall be identified as posted by the Association.

Section 3

The Office will provide "contractor or user passes" to Association staff (not employees of PTO) for use during duty hours only in accordance with Office security regulations. During non-duty hours Association staff, who are not employees of PTO, must be accompanied by a PTO employee.

50

# ARTICLE 18

## CHILD CARE CENTERS

### Section 1

The parties recognize that PTO employees need to have reliable and adequate day care services available to them so that they are free to devote their full energy and attention to their duties and responsibilities. Accordingly, the PTO shall establish a list of existing local day care facilities, including information on occupancy,, capacity, rates, location, hours of operation, local licensing status and the local agency responsible for licensing. The PTO agrees to make copies of this information available to new employees upon their entry into service and to others who express an interest.

### Section 2

The parties recognize and acknowledge that the establishment of a child care center at the PTO can result in substantial benefits for the PTO and its employees. These benefits include, but are not limited to, enhanced employee family life, improved employee morale and performance, reduced use of leave for family-related problems, lower employee turnover and reduced personnel costs for the PTO. Because of anticipated improvements in the quality of work life and financial savings for the PTO, the parties agree to cooperate in seeking to establish a Child Care Center in the Crystal City Complex for PTO employees during the term of this Agreement.

51

## ARTICLE 19

### PERFORMANCE APPRAISALS

Inasmuch as the parties have several proposals concerning performance
appraisals currently pending a negotiability determination before the FLRA,
negotiations concerning performance appraisal subjects affected by those
proposals may be deferred until the FLRA renders its decisions on those
proposals.  However, the parties shall submit a letter to the FLRA requesting
that it expeditiously pass on the negotiability of the proposals pending
before it.  The parties shall negotiate over those subjects which are not
affected by the negotiability issues before the FLRA.  Negotiation over such
subjects shall commence 45 days after the effective date of this agreement
pursuant to Article 14.  To the extent not inconsistent with law, government-
wide regulations or the necessary functioning of the agency, the Office shall
maintain the status quo in those performance appraisal matters affected by the
proposals pending before the FLRA, until the FLRA issues its decision.  Within
45 days after the FLRA renders its decisions, the parties shall negotiate over
the appropriate affected performance appraisal subjects.  The Arbitrator shall
exercise continuing jurisdiction over this subject.

52

## ARTICLE 20

### LEAVE

### Section 1

A.  Requests for and approval of sick leave shall be made as far in advance as possible and shall be made directly to the employee's immediate supervisor or supervisor's designees in the absence of the supervisor.

B.  When the need for sick leave is not known in advance, the employee shall request sick leave directly from his/her immediate supervisor or the supervisor's designees by 9:30 a.m. or as soon as practical thereafter. After two attempts to request such leave, the employee shall leave a message for the supervisor or the supervisor's designees.

C.  Employees are required to request additional sick leave on each day they are absent unless leave for a continued sickness has been previously approved.  Sick leave requests shall be granted for purposes approved by law and government-wide regulations.

D.  Sick leave shall be granted for the care of family members with communicable diseases.

E.  Employees shall not be required to furnish an acceptable medical certificate to substantiate requests for approval of sick leave unless:

    (1)  the employee has not complied with this Section; or

    (2)  the employee is on leave restriction; or

    (3)  the employee is a chronic user of short periods of sick leave and there is evidence as to the invalidity of his/her claim to such leave.

F.  Where the nature of the illness was such that an employee did not or could not see a medical practitioner, the Office may waive the requirement for a medical certificate.

G.  An acceptable medical certificate is a written statement signed by a registered practicing physician or health professional certifying to the incapacitation, examination, treatment, or the period of disability of an employee while he/she was undergoing professional treatment.

H.  A person shall be placed on sick leave restriction only if there is evidence of sick leave abuse and the restriction is justified in writing.  The mere amount of leave used for illness does not constitute abuse.

53

I.   Sick leave restrictions) shall be administered as follows:

    (1)   In individual cases, if there is evidence showing that an employee is abusing sick leave privileges, the employee shall first be counseled.  If there is no improvement, the employee will be notified in writing that an acceptable medical certificate will be required for each subsequent absence for sick leave purposes.

    (2)   Cases requiring an acceptable medical certificate for each sick leave absence shall be reviewed by supervision, for the purpose of determining whether there is a need to continue the restriction.  Such review shall take place at the end of six (6) months from the date of the notice to the employee requiring an acceptable medical certificate.  When it has been determined that there is a need to continue the restriction, the employee shall be notified in writing.  If there is no such notice, the previous notice shall be removed from the records.

    (3)   If a grievance is filed, placing an employee on sick leave restriction shall be stayed for 45 days or until the final Agency decision is rendered, whichever occurs first.

## Section 2

The earning of annual leave, as provided by applicable law, is a right; however, the use of annual leave is granted subject to the needs of the Office.

A.   Consistent with the needs of the Office, employees and supervisors will schedule annual leave as far in advance as is necessary and reasonable.

B.   The employee shall request annual leave of his/her immediate supervisor. So as to provide a prompt decision on leave requests, the supervisor shall designate other employees in the Art Unit or Group (or similar administrative area) who shall have the authority to grant an annual leave request when the supervisor is not available to grant the request. After two attempts to request such leave, the employee shall leave a message for the supervisor or the supervisor's designees).

C.   Consistent with the needs of the Office, annual leave will be granted, if, at the time of the request, the employee (1) has no interviews or meetings scheduled for the leave period, (2) is under no duty to respond during the leave period to an individual who is under a running statutory time constraint, or (3) makes appropriate arrangements for such interviews, meetings and/or communications.

54

<u>Section 3</u>

A.   Pregnancy shall be treated like any other medically certified temporary
     illness.  Maternity leave may be any combination of sick leave, annual
     leave, leave without pay, and compensatory time as appropriate.
     Advanced sick and annual leave, for maternity purposes, may be granted
     in accordance with applicable law and government-wide regulations.
     Available sick leave may be used for the time required for physical
     examinations and any incapacitation due to pregnancy and childbirth.
     Length of absences for maternity reasons will be determined by the
     employee and her physician in coordination with her supervisor.  Absent
     an emergency situation, the employee must coordinate such leave with her
     supervisor, prior to her absence for maternity reasons.

B.   Upon reasonable advance notice and a showing of need, a male employee
     shall be granted any combination of annual leave, leave without pay or
     compensatory time, as appropriate, for a reasonable period of time to
     assist or care for his child(ren) or the mother of his child(ren) due to
     her confinement for maternity reasons, unless his absence causes a
     substantial work interruption.

<u>Section 4</u>

An employee will be granted annual leave, compensatory time, or leave without
pay to attend a funeral.

<u>Section 5</u>

A.   Consistent with the needs of the Office and in accordance with relevant
     law and regulations, no request for earning compensatory time shall be
     unreasonably denied.

B.   Compensatory time must be used within six pay periods after it is
     earned.  However, where an employee is denied use of compensatory time
     during the six pay periods after it was earned, the Office will either
     pay the employee for the time at his/her overtime rate or the time shall
     be carried over for use during the next six pay periods.  If an employee
     is denied use of the compensatory time during the second six pay
     periods, he/she will be paid for the time at his/her overtime rate.

C.   Consistent with the needs of the Office and in accordance with relevant
     law and regulations, an employee will be advanced compensatory time when
     his/her personal religious beliefs require abstention from work for
     certain periods of the workday or workweek.

55

D.   Consistent with the needs of the Office and in accordance with relevant
     law and regulations, no request for using compensatory time shall be
     denied if, at the time of the request, the employee
     (1)   has no interviews or meetings scheduled for the leave period,
     (2)   is under no duty to respond during the leave period to an
     individual who is under a running statutory time constraint, or
     (3) makes appropriate arrangements for such interviews, meetings, and/or
     communications.

E.   Consistent with the needs of the Office, every reasonable attempt will
     be made by employees and supervisors to schedule compensatory time as
     far in advance as is necessary and reasonable.

F.   Compensatory time off will be deducted from a bargaining unit member's
     production time for the bi-weekly period in which the time off was
     taken.  The compensatory time worked will be added to the member's
     production time for the bi-weekly period in which the time was worked.


Section 6

When it is necessary to close the Office because of inclement weather or an
emergency situation (e.g., heavy snow, severe icing conditions, flood,
earthquake, hurricane, major fire, bomb threats or massive power failures)
employees will be granted administrative leave.

56

## ARTICLE 21

### RETIREMENT COUNSELLING

#### Section 1

The Office will arrange for at least one retirement seminar each year.  The seminar shall include specific information on the trial retirement program and shall relate prior experience under it.

#### Section 2

All bargaining unit members currently eligible or within two years of retirement eligibility may attend.  Attendance of any person will be limited to a maximum of once every two years.

#### Section 3

Attendance at this seminar will be considered training.

#### Section 4

The Office shall provide information assistance necessary for employees considering retirement.

57

## ARTICLE 22

### SIGNATORY AUTHORITY

Inasmuch as there is a grievance concerning the subject of signatory authority pending before Arbitrator Jerome H. Ross, negotiations concerning signatory authority shall not commence under Article 14, until 45 days after Arbitrator Ross renders his arbitration award, unless exceptions to the award are filed with the FLRA.  Where exceptions are filed with the FLRA or where a negotiability dispute arises, the parties shall only negotiate over those subjects of signatory authority that are not affected by the appeal or the pending negotiability determination.  Within 45 days after the FLRA issues its decisions, the parties shall negotiate over the appropriate affected subjects of signatory authority in accordance with Article 14.  The parties shall maintain the status quo in those areas of signatory authority affected by the issues before Arbitrator Ross, unless and until it is supplanted by his decision or a decision by the FLRA.  The Arbitrator of this Agreement shall exercise continuing jurisdiction over this subject.

58

ARTICLE 23

WORK SCHEDULES

Section 1

A.  Normal Tour of Duty - Monday thru Friday from 8:30 a.m. to 5:00 p.m. is
    the normal tour of duty for Office employees.

B.  Flexitime Plan - Under the flexitime plan, an employee works Monday
    through Friday but may report to work at any appropriate time (not
    earlier than 6:30 a.m.) during the morning flexitime band, be present
    during core hours and leave after the employee has accumulated eight
    hours of work, plus one half hour for lunch.

C.  Four Day Week (4/10 Plan) - Under the four day week schedule, an
    employee will work four days each week, 10 hours daily, thus satisfying
    the requirement for 40 hours per week.

D.  5-4/9 Plan - This plan permits an employee to have one "extra" day off
    each pay period.  To satisfy the 80 hour pay period work requirement,
    the employee will work 8 nine-hour days and I eight-hour day.  On the
    eight-hour day, the employee may not report to work before 6:30 a.m. To
    simplify implementation of Time and Attendance record keeping for the 5-
    4/9 Plan, employees will be required to work the eight-hour day on the
    last scheduled work day of each pay period.  Therefore, the eight-hour
    work day will always be the last Friday of the pay period, unless the
    last Friday is a scheduled non-work day in which case the last Thursday
    will be an eight-hour day.

Section 2

Each employee is required to arrange his/her work schedule Plan with their
supervisor one quarter of the fiscal year in advance, identifying the day of
the week which will be the employee's nonwork day in the case of the 4/10
Plan, and the day of the bi-week which will be the non-work day in case of the
5-4/9 Plan.  Employees are required to elect a single day which will be the
non-work day for the entire quarter.  Subject to supervisory approval, the
employee may select any day as a non-work day except for Tuesday and Thursday
which, during all work weeks, will be considered . core" work days.  However,
when a holiday falls on a employee's scheduled non-work day, Tuesday and
Thursday may be used "in lieu of" holidays if required by the chart in Section
11B.

Section 3

All full-time employees represented by the Association are required to elect
one of the work schedule plans in Section 1. An employee's election to
participate in a work schedule plan other than the normal tour of duty must be
approved by his/her supervisor.  If either the 4/10 Plan or the 5-4/9 Plan is
selected, an election must also be made of a specific schedule.

Section  4

Employees participating in a work schedule plan other than the normal tour of duty may withdraw from the program at any time, by giving the supervisor two weeks advance notice.  Employees who withdraw from such plans shall revert to the normal tour of duty.  After withdrawal, employees will be permitted to elect another work schedule plan only in accordance with Section 7.

Section  5

New employees may begin participation in a work schedule other than the normal tour of duty at the beginning of any pay period subject to the restrictions in Section 13.

Section  6

Employees transferring from one division  to  another  will  be  required to obtain approval, from the new supervisor, of their previous election or make a new election at the time of the transfer.  Upon supervisory approval the employee can begin participation in a work schedule other than the normal tour of duty at the beginning of the next pay period.  It is recognized that it is possible that the new position may be such that the employee must be denied the opportunity to participate or have his/her participation restricted.

Section  7

Employees who wish to change work schedule plans or who wish to change their non-work day selection will be permitted to submit such a request only during the months of February, May, August and November.  Upon supervisory approval of the request, the employee will begin participation in another work schedule plan or effect the desired change at the beginning of the first pay period in the following quarter of the fiscal year.

Section  8

Only full-time employees will be eligible for participation in the 5-4/9 and 4/10 Plans.

Section  9

A.    An employee participating in a work schedule plan other than the normal tour of duty and is in travel status or on Office business outside the Crystal City area will revert to the normal tour of duty for the period involved unless an alternative arrangement can be agreed upon between the employee and appropriate supervisory authority.  The alternative arrangement must not increase the cost of the travel, training or other Office business to the Office or violate any rule, regulation or statute.

60

B.   For employees on the 4/10 and 5-4/9 Plans, when an employee is on Office business away from the Office but in the Crystal City area, and the duration of the business is less than the duration of the employee's normally scheduled work day, the employee must report to the Office and work for a period of time equal to the difference less reasonable travel time from the place of the other Office business to the Office.

C.   For employees on Flexitime or Normal Tour of Duty Plans, when an employee is on Office business away from the Office but in the Crystal City area, and the duration of the business is less than eight (8) hours, the employee must report to the Office and work for at least a period of time equal to the difference less reasonable travel time from the place of the other Office business to the Office.

Section 10

A.   An employee's elected work schedule plan will remain in effect until the participant withdraws under Section 4 or until the opportunity to change the plan occurs as set forth in Section 7.

B.   When circumstances arise which are both unusual and extenuating an individual employee upon written request may, after obtaining appropriate supervisory approval, be permitted to amend his/her choice of a non-work day to another day in the same bi-week, provided that such amendment will not prevent the unit to which the employee is assigned from providing its normal service to the public, the Office and other agencies of the government.  Under no circumstances will such an amendment be permitted in two consecutive pay periods.

Section 11

A.   General Leave - When an employee is absent from the job other than for a holiday, he or she will be charged with leave equal in hours to the scheduled length of the work day.  Employees working for a four-day week will, therefore, be charged with 10 hours of leave (Annual, Sick, LWOP, AWOL, Administrative, etc.) whenever absent during a regularly scheduled work day.  Employees working under the 5-4/9 Plan will be charged with nine or eight hours, depending upon the employee's schedule.  Employees working under the normal tour of duty and the Flexitime Plans will be charged with eight hours.

B.   Holiday Leave - A full time employee who is relieved or prevented from working on a day designated as a holiday is entitled to pay with respect to that day for the number of work hours scheduled (i.e., 4/10 Plan - 10 hours, 5-4/9 Plan - 9 or 8 hours depending

upon the schedule, normal tour of duty and Flexitime Plans - 8 hours).
The following rules apply when a holiday falls on a scheduled non-work
day:

(1)     When the holiday falls on the employee's first or second
        consecutive scheduled non-work day, the preceding work day shall
        be designated as the day off in lieu of the holiday, in accordance
        with the following chart.

(2)     When the holiday falls on the third consecutive scheduled non-work
        day, the next work day shall be designated as the day off in lieu
        of the holiday, in accordance with the following chart.

| Employee's Non-Work Days | Holiday or Day Off in Lieu of a Holiday | Day Off |
|---|---|---|
| Fri., Sat., Sun. | Friday | Thursday |
| Sat., Sun., Mon. | Monday | Tuesday |
| Sat., Sun., Wed. | Wednesday | Tuesday |

Section 12

Authorized work performed outside an employee's work schedule (i.e.,
in excess of 10 hours, 9 hours or 8 hours, depending upon the schedule) or in
excess of 80 hours per pay period or on any non-work day, is overtime work.
Employees are entitled to overtime compensation or compensatory leave as
appropriate for overtime work in accordance with applicable provisions of law.

Section 13

A.     Consistent with the provisions set forth below, all employees shall be
       authorized the unrestricted use of any Work Schedule.

B.     Restrictions or denials on the use of a Work Schedule by employees shall
       be based on one of the following:

       (1)     Operational considerations, related to the work situation only
               (non-related to job performance);

       (2)     Abuse of the particular Work Schedule, meaning misconduct of a
               serious nature during the scheduled work days that would be
               alleviated by the presence of a supervisor;

       (3)     Supervisors may temporarily suspend employee participation in a
               particular Work Schedule program for formal training;

    (4)      Requirement for close supervision for the initial training required to understand and perform the duties of the position;

    (5)      The requirement for close supervision for employees with serious deficiencies in the performance of their primary tasks over a period of at least one per quarter to the extent that the level of their performance would constitute grounds for an unsatisfactory performance rating. The intent here is that employees operating at this level would have the attention, to the extent practical, of their regular or acting supervisors during times that would not be available if the employee were participating in that particular Work Schedule Plan.

C.    Justification for restricting or denying a Work Schedule must be neither punitive in nature nor otherwise related to conduct or job performance except as discussed above.

D.    All disapprovals or restrictions shall be in writing and they shall clearly describe the basis used to justify the decision to deny or restrict participation in the work schedule elected. Copies of the justification shall be furnished to each employee affected at least two weeks prior to the time when the denial or restriction is to take effect, unless the denial or restriction is caused by an emergency situation or affects a new employee. In such cases, supervisors may reschedule the day(s) off.

E.    Justification for restrictions or denials shall be reviewed at the request of the employee upon a change in condition.

<u>Section 14</u>

A.    Operational, flexible, core and public hours, and core days from Monday through Friday will be:

| | |
|---|---|
| Operational Hours | <u>6:30</u> a.m. – <u>6:00</u> p.m. |
| Morning Flexible Band | <u>6:30</u> a.m. – <u>9:30</u> a.m. |
| Afternoon Flexible Band | <u>3:00</u> p.m. – <u>6:00</u> p.m. |
| Core Hours | <u>9:30</u> a.m. – <u>3:00</u> p.m. |
| Core Days | Tuesday and Thursday |
| Public Hours | <u>8:30</u> a.m. – <u>5:00</u> p.m. |

B.    Employees on a Work Schedule other than the normal tour of duty may report at any appropriate time during the morning flexible band consistent with being able to work the approved 8, 9, or 10 hour day with operational hours. From the time of reporting

63

they must remain at work for 8 1/2, 9 1/2 or 10 1/2 hours in order to be credited with the respective hours of work and to cover a 1/2 hour period for lunch.

Section 15

A.    Employees on a Work Schedule other than the normal tour of duty shall personally sign in and sign out on a daily basis in alphabetical order. The two daily signatures constitute certifications that the employee arrived no later than and left no earlier than the times indicated.  The T and A Sheets (Time, Cost and Attendance Report, CD-238) shall continue to be used and shall be the official form for recording, certifying and reporting time and attendance.  The sign in and sign out sheet(s) will be located in the same place every day, preferably immediately adjacent to the office or desk of the immediate supervisor, insofar as is practicable.

B.    Employees on the normal tour of duty shall not be required to sign in and sign out each day for normal working hours.

Section 16

Nothing in this article shall affect the authority of the Office to take whatever actions may be necessary to carry out the functions of the agency.

64

ARTICLE 24

LABOR-MANAGEMENT COMMITTEES

Section 1

The parties, recognizing the need for improved communication and a better understanding of each other's concerns, agree that a cooperative involvement must exist at all levels of the Office and the Association in order to enhance labor-management relations.  To this end, the parties agree to jointly commit their efforts to establish and support a Quality Joint Labor-Management Committee System.  The objectives of the Quality Labor-Management Committee System are to enhance the quality of work life in the Office and to improve the effectiveness of the Office by providing for the discussion of each other's concerns, the open exchange of information, and the opportunity for joint problem-solving of issues and concerns that have an adverse impact on the work environment.  It is understood that the establishment of the Quality Joint Labor-Management Committee System is not intended to replace the collective bargaining process or the grievance procedure, but to provide a foundation from which to build and promote the cooperative attitude the parties acknowledge must exist at all levels of the organization.

Section 2

A.    Within 60 days after effective date of this agreement, the Office and the Association will appoint 3 persons from their organizations to serve as members of the following Quality Discussion Groups (each person must work in the area the Discussion Group represents) :

      (1)    Chemical Quality Discussion Group
      (2)    Documentation/Other Quality Discussion Group
      (3)    Electrical Quality Discussion Group
      (4)    Mechanical Quality Discussion Group

B.    The Office shall not appoint managers above the level of first line supervisor or managers who were participants in the arbitration leading to this agreement to serve as members of the Quality Discussion Groups.

C.    The Association shall not appoint Association Official/Representatives to serve as members of Quality Discussion Groups.

Section 3

A.    Quality Discussion Group meetings shall be held every two months, and shall be limited to two hours, unless the Group mutually decides to meet more frequently.  At the first meeting, a specific day and time shall be selected for future meetings.

B.    The Chair of the Discussion Groups shall alternate every six months between Association and Office Discussion Group members, unless the Group mutually decides to have another arrangement.

C.   The Chairperson is responsible for calling meetings, maintaining orderly meetings, obtaining agenda items from the members and preparing the meeting agenda.

D.   Except for an agenda, Discussion Group meetings shall be informal.

E.   Except for grievances, Unfair Labor Practices and the like, Discussion Groups may discuss any topic related to the Office work environment, despite the fact that such topic(s) may be outside of the scope of bargaining.  However, the Discussion Groups have no authority to amend or delete any term of this Agreement or to compel action on any subject.

F.   The Discussion Groups shall make recommendations and/or reports to the Joint Labor-Management Committee.

G.   Unless the Discussion Group members mutually decide otherwise, the two alternating Chairpersons shall attend Joint Labor-Management Committee meetings as ex officio members and shall report on the recommendations of the Discussion Group or on whatever the Group deems appropriate.

H.   Discussion Group members shall be authorized official time to attend Group meetings.

## Section 4

The Association may periodically send an Association official to a Discussion Group meeting as an observer.  However, the Association official shall not participate in the Group meeting.  The official's time at the meeting shall be charged to the Association's bank time.

## Section 5

When requested by a Discussion Group, arrangements shall be made for key people from the Office, the Association and elsewhere to address the Group.

## Section 6

A.   Within 90 days after the effective date of this agreement, the Association and the Office shall appoint 5 representatives from their respective organizations to serve on the parties' Joint Labor-Management Committee.

B.   The two ex officio representatives of the Discussion Groups shall serve as non-voting members of the Joint Labor Management Committee.

66

<u>Section 7</u>

A.    Joint Labor-Management Committee meetings shall be held quarterly and
      shall be limited to four hours, unless the Committee mutually agrees
      otherwise.  At the first meeting, a specific day and time shall be
      selected for future meetings.  At the same meeting, a Standing Joint
      Sub-Committee on Automation, and a Health and Safety Committee in
      accordance with Article 31 shall be established.  The Committee may
      subsequently establish any standing
      or special subcommittee it deems appropriate.

      (1)   The Health and Safety Committee and each Standing Joint Sub-
            Committee shall be composed of six members, three representatives
            appointed by the Office and three appointed by the Association.
            At least two members of each sub-committee (one appointed by the
            Office and one appointed by the Association) shall also be members
            of the Joint Labor-Management Committee.

      (2)   Each Standing or Special Joint Sub-Committee shall operate in
            accordance with Section 3 above, excluding subsection G. The Joint
            Labor-Management Committee member who is also a Standing or
            Special Joint Sub-Committee member shall report recommendations to
            the Joint Labor-Management Committee.

B.    The Joint Labor-Management Committee Chair shall be held jointly by a
      representative of the Office and a representative of the Association.
      Each party will determine whether it will have a permanent or a rotating
      co-chairperson.

C.    Joint Labor-Management Committee meetings shall discuss, explore and
      study the recommendations and reports of the discussion groups and the
      Standing and Special Joint Sub-Committees.  By mutual agreement, the
      committee shall make a recommendation or report to the Office concerning
      those issues discussed, explored and/or studied.  However, the Committee
      has no authority to compel or preclude the Office from action or
      implementing proposed actions.

D.    The Chairpersons shall cause an agenda to be prepared and distributed to
      all Committee members at least two workdays prior to the meeting.  The
      agenda shall include a brief description of each item to be discussed.
      Agendas should not be limited to Discussion Group and/or Standing or
      Special Joint SubCommittee recommendations and/or reports, although such
      items shall have priority along with previously scheduled agenda topics.
      The Joint Labor-Management Committee may agenda any topic of interest to
      the Association, the employees or the Office, despite the fact that such
      topic(s) may be outside the scope of bargaining.  Topics not on the
      agenda shall not be discussed but rather shall be placed on the agenda
      for the next meeting.  Emergency items may be added to the agenda by
      mutual consent.

67

E.   Every attempt shall be made to keep to the meeting schedule and agenda and, where possible, the parties will avoid carrying agenda items over more than two meetings.

F.   In order to have a frank and open discussion, the Committee shall have no authority to discuss grievances, unfair labor practices or the like, or to amend or delete any of the terms of this Agreement.

G.   When necessary, appropriate arrangements will be made for experts to address the Committee.

Section 8

The parties recognize that they will need a neutral facilitator to assist in their initial move towards a better understanding of each others concerns and a more cooperative, problem solving relationship.  In this regard, the parties may agree to obtain a facilitator to initially provide at least the following functions:

A.   Bring the parties together and Chair the initial meetings.

B.   Provide the parties with feedback and recommendations concerning their participation in the system.

C.   Assist in planning if it is needed.

D.   Assist in controlling the agenda (provide the neutral presence which allows disagreement to be expressed but kept controlled and within acceptable limits).

E.   Help committee participants identify issues which can best be worked on in smaller groups, task forces, or subcommittees and assist in setting up such groups.

F.   Provide one-on-one consultation with Office managers, Association officials and employees.

G.   Provide the parties with information about similar programs and arrange for experts to address the committees where necessary.

Section 9

After 20 months the parties will assess their progress under the Quality Joint Labor-Management Committee System and determine if it should be continued, discontinued or modified.

68

## ARTICLE 25

### CONTRACTING OUT

#### Section 1

For the purposes of this agreement, contracting out is defined as the transfer of any bargaining unit job or job function which adversely affects bargaining unit employees from the Office to the private sector.

#### Section 2

A.    Simultaneous with the publication of a request for bids or proposals, the Office will provide the Association with a copy of the request for bids or proposals.

B.    The Association may provide comments to the Office concerning the contracting out within the time frame provided to contractors.

#### Section 3

Within 10 workdays after the contract has been awarded, the Union will be notified of the name of the awardee, the date of contract implementation and of any impact(s) on bargaining unit employees.

#### Section 4

When appropriate, the Office agrees to assist and counsel affected employees in obtaining employment with the contractor and/or other employers.  The name and address of the awardee will be provided to all affected employees.

#### Section 5

When appropriate, the Office will explain any programs for early retirement to affected employees.

#### Section 6

Nothing in this Article shall preclude the parties' obligations under Article 14 of this Agreement.

#### Section 7

If a Reduction-In-Force becomes necessary due to contracting out, the parties will follow the RIF procedures set forth in Article 29 of this Agreement.

69

## ARTICLE 26

### DELAYED BENEFITS

Section 1

The Processing and Records Division when notified by an employee that his/her paycheck was lost, missing or not received, will expeditiously investigate the facts and circumstances and instruct the proper authorities to issue a replacement check, if appropriate.  If a replacement check is not received within 72 hours, the Office shall issue emergency supplemental funds to the employee.

Section 2

The Processing and Records Division will correct payroll related errors (i.e., in allotments, tax deductions, annual leave, sick leave, compensatory time, overtime compensation, etc.) normally within two pay periods after notification.  The Association will be given written notice of those errors that are not corrected within the two pay periods with the reason(s) why they were not corrected and a proposed date within which they will be corrected.

70

ARTICLE 27

AUTOMATION

Section  1

A.      The Office shall promptly furnish to the Association detailed advance
        information about the development and implementation of automated
        operations through the application of computer technology.  The
        providing of information shall include preliminary (or tentative) and
        revised documentation and periodic briefings.

B.      The Office shall provide the Association with the results of system
        evaluations performed by the Office to determine whether functional
        requirements are being met.

Section  2

A.      Employees working with computers and video display equipment shall have
        a work environment that is based upon high standards of health, safety
        and ergonomics.

B.      The Office will inspect each machine in use on a regular basis and will
        maintain all equipment in proper repair, state of cleanliness and
        working order.  Each machine will be checked regularly for noise,
        flicker, clarity of image, contrast, brightness and adjustability.
C.      The Office will make available published health and safety
        specifications and the maintenance log for each machine used by a member
        of the bargaining unit.

Section  3

Upon request from a pregnant employee and subject to the needs of the Office,
the PTO will reassign the employee to work that does not require the use of
video display equipment.  If such reassignment is not made, the employee may
request leave for the duration of the pregnancy, in accordance with applicable
rules, provisions and policies applicable to maternity leave.  This Section
does not preclude the Office from accommodating the employee in other ways
that are acceptable to the employee and approved by the Association.

Section  4

In accordance with Article 24 of this Agreement, a joint committee shall be
established to study the Automated Patent System and the special needs of
employees with regard to it.  Two members of the committee (one appointed by
the Office and one appointed by the Association) shall also be members of the
Health and Safety

71

Committee.   Recommendations concerning issues of health and safety will·be
promptly referred to the Health and Safety Committee for comment and
submission to the Office.

<u>Section 5</u>

Nothing in this Article shall preclude the parties' obligations under Article
14 of this Agreement.

72

## ARTICLE 28

### EQUAL EMPLOYMENT OPPORTUNITY

#### Section  1

The Office and the Association agree to fully support the concept of Equal Employment Opportunity, the Federal Equal Employment Opportunity Program and the terms of this Article.

#### Section  2

The Office shall not discriminate against any employee on the basis of race, color, religion, age, national origin, sex, handicap condition, marital status, social or political activities or affiliation, or sexual preference.

#### Section  3

Any meeting conducted for the purpose of reaching a final settlement of a discrimination complaint involving a bargaining unit member shall be treated as a formal meeting and, therefore, shall be subject to the statutory and contractual provisions applicable to formal meetings.

#### Section  4

The Office and the Association agree to encourage those employees having an underrepresentation in the above mentioned groups to qualify for and apply for higher level positions.  The Office agrees to make reasonable accommodations in the work schedules of employees to permit them to obtain training or education to so qualify for such positions.

#### Section  5

The Office shall provide the Association with a copy of the current Office Affirmative Action Plan (AAP) and a copy of the Equal Employment Opportunity (EEO) complaint procedure.

A.   The Office agrees, at such times as the AAP is revised, to provide the Association with a draft copy of the revised plan, prior to the proposed implementation.  The Association shall review the revised plan and provide appropriate comments thereto and/or provide negotiation proposals.  Written reasons will be given to the Association regarding any rejected suggestions.

B.   The Association agrees that negotiation proposals relative to a revised AAP are governed by the procedures set forth in the Article on mid-term bargaining.

73

Section  6

The Office agrees that a copy of the EEO complaint procedure shall be posted on each floor occupied by Association members.

Section  7

The Office shall annually provide the Association with the following information:

A.    workforce composition by race, sex and grade level;

B.    composition of each major occupation (job series) by race, sex and grade level;

C.    upward mobility positions filled by race, sex; and

D.    numbers and types of discrimination complaints filed;

Section  8

The PTO will establish an EEO counselor system to provide counseling to any aggrieved person who believes that he/she has been discriminated against because of race, color, religion, sex, national origin, age or handicap condition.  The EEO counselor system is not available to an aggrieved person who believes that he/she has been discriminated against for other reasons.

Section  9

The Office will select and train all EEO counselors.

Section 10

In an attempt to resolve discrimination charges as early as possible, EEO counseling will be provided to an aggrieved employee on an informal basis, before a formal EEO complaint is filed.

Section 11

The name, picture, telephone number and work site location of each EEO counselor will be posted in a conspicuous location in an enclosed or protected bulletin board on each floor where unit employees work.

Section 12

Each quarter the Office will publish/distribute information to unit employees that will include the name, telephone number and the work site location of each EEO counselor.

## Section  13

An aggrieved employee shall have the sole right to select any one of the designated counselors to handle his/her complaint, as long as the selected counselor is available.

## Section  14

An aggrieved employee, if in a duty status, shall be granted a reasonable amount of time to contact and explain his/her complaint to an EEO counselor.

## Section  15

The PTO agrees to provide adequate facilities wherein an aggrieved employee and the EEO counselor can discuss the matter forming the basis of the complaint in a confidential setting/forum that is excluded from other persons.

## Section  16

The purpose and subject matter of an EEO counselor's visit to an aggrieved employee's work site shall be kept confidential unless authorized to be released by the aggrieved employee.

## Section  17

The counselor selected by an aggrieved employee shall attempt to resolve the complaints or matter(s) raised by said employee on an informal basis and to the satisfaction of said employee before the complaint is filed under 29 CFR 1613.214.

## Section  18

Any resolution of a complaint that is proposed by an EEO counselor shall be fair, equitable and where feasible designed to prevent similar complaints from arising in the future.  No counselor will coerce or pressure an aggrieved employee to accept a proposed resolution.

## Section  19

The PTO will, upon request, promptly provide any EEO counselor with pertinent data and information necessary to assist the counselor to fairly and equitably resolve a complaint.  The aggrieved employee will be provided with a copy of the counselor's report.

Section  20

When contact is made with the aggrieved employee, the counselor shall inform said employee of information concerning the availability of applicable EEO Statutes, Regulations, Departmental Orders and Agency (PTO) Orders and Guidelines.  Upon request, copies of information may be provided to employees.


Section  21

An EEO counselor shall not use pressure or coercion of any form to prevent an aggrieved person from filing a formal complaint.


Section  22

The EEO counselor shall provide the aggrieved employee with a written summary of the resolution of any complaint at least ten (10) working days prior to submitting it to the Personnel Office.


Section  23

Notice of EEO counselor vacancies shall be posted on all bulletin boards. Interested unit employees may apply.


Section  24

The parties agree to meet at least twice per year to discuss EEO matters of mutual interest.  Reasonable time will be granted for such meetings.

Section  25

To the extent permitted by law and government-wide regulation, the Office shall make whole any unit member who has been subjected to unlawful discrimination.

ARTICLE 29

REDUCTIONS-IN-FORCE

Section  1

Reduction-In-Force (RIF) shall be governed by 5 C.F.R. Part 351 and the provisions of this Article.

Section  2

The Office, whenever practical, shall avoid RIF actions by utilizing attrition and/or other means that will not interfere with the accomplishment of the Office's mission.  Implementation of a RIF shall be a last resort.

Section  3

A.    The Office will counsel and assist employees, for whom no acceptable position can be provided, regarding early retirement and/or preparing resumes, holding job interviews, and other techniques of gaining acceptable employment.

B.    Counseling and assistance shall be conducted on official time.

C.    When more than fifteen (15) employees are to be released over a two month period, the Office will invite suitable employers for a job fair.

Section  4

A.    To facilitate impact and implementation negotiation, the Office will inform the Association of any pending RIF, as soon as possible, but not less than 30 days prior to official notification of the employees.

B.    The Office shall inform the Association by written notice, which shall include the reasons for the RIF, the number and types of positions affected, and the approximate date of the action.  A copy of the retention register shall be made available for inspection by the Association.

C.     The Office will meet with the Association to explain the RIF procedure and answer any questions.

Section   5

A.    After receiving written notice of the RIF, the Association shall have
      the right to negotiate on the impact and implementation of the impending
      RIF.

B.    Negotiations will be conducted in accordance with this Agreement's
      provisions for mid-term negotiations and shall be limited to proposals
      not inconsistent with this Article.

Section   6

The Office shall not institute a RIF as a disciplinary measure against an
employee or group of employees.

Section   7

A.    Upon notification to the Association of an impending RIF, the Office
      will impose a hiring freeze on positions within the competitive level of
      the affected employees.

B.    The hiring freeze will stay in effect until all affected employees have
      retired and/or are placed in positions having the same representative
      rate as their current positions but, in no event shall it stay in effect
      for more than one year.

Section   8

A.    The Office shall maintain the records needed to accurately determine the
      retention standing of employees.

B.    Upon request, the Office will timely provide the Association with copies
      of records relevant to a proposed separation or assignment to a lower
      grade level position.

Section   9

For all members of the Unit, the minimum competitive area is the entire Patent
and Trademark Office.

Section 10

A.    A competitive level shall be consistent with the regulatory definition
      of competitive level.

B.    If the Association provides, in writing, reasons for including
      additional positions within a particular competitive level, the Office
      shall either include these positions or provide substantive written
      justification for excluding them.

78

Section 11

A.   When an employee is to be released from a competitive level, the Office
     will provide the employee with a list of all positions within the
     bargaining unit for which the employee is at least minimally qualified.

B.   The employee will be given thirty (30) days to accept or refuse the
     first offered assignment and ten (10) days to accept or refuse any
     subsequent offered assignment which is less severe than the first
     assignment.

Section 12

Specific notice of release from a competitive level, as defined in 5 C.F.R.
351.802, shall be given to the employee at least 30 days before the effective
date of release.

Section 13

A.   When a specific position from which an employee has been demoted
     by a RIF action becomes vacant and is being filled, the demoted employee
     will be considered for repromotion noncompetitively to
     the position subject to subsection B below.

B.   An unsatisfactory performance rating which is documented in the
     employee's Official Personnel File, or a failure to achieve an
     acceptable level of competence either before or after demotion by
     a RIF action shall be bases for nonpromotion.

C.   If more than one employee meets the criteria of subsection A and
     is not subject to the criteria of subsection B, the employee who
     possessed the highest retention standing at the time of demotion will be
     promoted.

D.    All employees previously demoted without personal cause, misconduct
     or inefficiency, will receive special consideration for repromotion.

79

## ARTICLE 30

### HEALTH SERVICES

#### Section 1

In compliance with Section VIII.A of Appendix B, the Office will compile a list of employees with determined emergency health problems from information voluntarily submitted by employees. The purpose of the list is to facilitate advice or services obtained in the event of an emergency. The Office shall maintain the information submitted and the list in a strictly confidential fashion.

#### Section 2

The Office shall continue to provide existing health services through the health unit in Crystal Plaza.

#### Section 3

Upon request, the Office shall supply an employee with the results of any test or examination given him/her.

80

## ARTICLE 31

## HEALTH AND SAFETY

### Section  I

The Office and the Association shall encourage unit employees to participate in the Occupational Health and Safety Program.

### Section  2

In accordance with Executive Order 12196, the Office and the Association shall establish an on-going Joint Health and Safety Committee to perform the following functions:

A.   consult and advise the Office concerning the health and safety conditions, practices (existing and proposed), programs and regulations within the Office;

B.   promote employee health and safety education, which will consist of, but not be limited to, training for emergency evacuation of the buildings, training in first aid and training in the use of fire extinguishers for an appropriate number of employees for each floor;

C.   provide a means for presentation and evaluation of employees' comments;

D.   conduct semi-annual safety inspections of facilities and recommend measures for the elimination or control of conditions hazardous to the health and safety of the employees, especially handicapped employees.

### Section  3

The Health and Safety Committee shall be furnished with copies of all reports furnished to the Department of Labor under terms of the Occupational Safety and Health Act.

### Section  4

Fifteen (15) days after the Office determines which Committee recommendations will not be adopted, the Association shall be notified of such in writing, including the reasons therefor.

### Section  5

If the unions which represent Office employees agree to establish a Joint Labor-Management Health and Safety Committee, such Joint Committee shall be established in lieu of the Health and Safety Committee established under this Article.

81

Section 6

When an employee is injured in the performance of his/her duty, the employee will promptly be referred to the Office of Personnel for counseling as to his/her right to file for compensation benefits and benefits payable when it is known that the absence will be for more than three (3) workdays.

82

ARTICLE 32

DUES WITHHOLDING

Section 1

Any employee of the Office may authorize an allotment of pay for the payment of dues for membership, provided:

A.    The employee is included in the Unit;

B.    The employee has voluntarily completed a request for such allotment of pay on the existing SF-1187;

C.    The employee receives an amount of pay on regularly scheduled paydays which is sufficient, after other legally required deductions, to cover the full amount of the allotment; and

D.    The employee is serving under an appointment not limited to six (6) months or less.

Section 2

The procedures and effective date of authorization shall be as follows:

A.    The Association agrees to acquire existing authorization form SF-1187, distribute the form to its members, ask its members to read the form and to receive completed forms from members who request allotment.   The Office agrees to direct employees who have questions concerning the form to the union;

B.    The Treasurer or his/her designee is designated to process completed existing authorization forms SF-1187, by completing Section A thereof. The Treasurer or his/ her designee will submit, not later than the second Tuesday of the pay period, the completed existing authorization forms to the Employee Relations Division, Office of Personnel, who will forward them promptly to the Processing and Records Division, Office of Personnel, after checking for and establishing eligibility.   The Association will be notified promptly of any employees found not to be eligible for dues deduction; and

C.    The deduction will begin with the next pay period after the authorization form is received by the Employee Relations Division.

Section 3

Allotted dues will be withheld each pay period.   The amount to be withheld shall be the amount of the regular bi-weekly dues of the member, exclusive of initiation fees and fines.

If the amount of regular dues is changed by the Association, the Processing and Records Division will be notified in writing by the President of the Association.  This notice will certify that the dues structure of the organization has been changed in accordance with the Constitution and By-Laws of the Association, and will give the effective date of the change.  The notice must be forwarded to the Processing and Records Division three (3) pay periods before the effective date, to allow time to change computer programs. Only one such change in the computer program may be made in any period of twelve (12) consecutive months.

Section 4

The allotment will be terminated by the Processing and Records Division at the end of the pay period in which loss of eligibility occurs from any of the following events:

A.   When the Association is finally adjudicated as having lost its recognition;

B.   When a Unit employee dies, retires, is separated from the Office, or is promoted or reassigned to a non-Unit position;

C.   Upon receipt of notice from the Association that the employee is no longer a member; or

D.   After an employee submits a written request for revocation of an allotment, SF-1188, "Revocation of Voluntary Authorization of Allotment of Compensation for Payment of Employee Organization Dues." However, as provided in 5 USC 7115(a), an initial allotment may not be revoked for a period of one year.  A revocation received on or before the first anniversary of the date the employee authorized withholding will be effective the first pay period which begins on or after the anniversary date.  Thereafter, a revocation will be effective the first pay period which begins on or after March 1st, if the revocation is received on or before March 1st.

Section 5

The amount due the Association shall be remitted to the Treasurer of the Association or designee, approximately 10 days following the end of the pay period.  Each remittance will be accompanied by a statement giving the following information:

A.   Identification of Association;

B.   Names of members for whom deductions were made, and the amount of each deduction;

84

C.    Names of employees who did not earn enough salary to permit a deduction;

D.    Total number of members for whom dues are withheld;
E.    Total amount withheld from payroll and remitted;

F.    Names of employees removed from dues withholding during the relevant pay period; and

G.    Identification of employees added in each new list.


## Section 6

The Association and the Personnel Division agree to issue the following written notices:

A.    The Association will send by interoffice mail to the Processing and Records Division within ten (10) workdays any written revocation of allotment received by the Association;

B.    The Processing and Records Division will send to the Association within ten (10) workdays a copy of each written revocation received by the Office;

C.    When the Association becomes aware of an overpayment, the Processing and Records Division will be notified. The overpayment will be deducted from the remittance check normally sent to the Association. This deduction will occur within two (2) pay periods after the notice of overpayment.

D.    When the Association receives a remittance check which is less than that due to the Association, the Association will notify the Processing and Records Division. Within two (2) pay periods after such notice the appropriate adjustment shall occur in the next remittance check.

85

## ARTICLE 33

### PRINTING AND DISTRIBUTION

Section 1

The Chief Negotiators shall arrange for printing at a mutually agreeable cost.
The cost shall be shared equally by the Office and the Association.  The
printing will be done as expeditiously as possible.

Section 2

The Office will distribute copies to all unit supervisors and management
officials.

Section 3

The Association will distribute copies to all unit employees.

86

ARTICLE 34

DURATION AND AMENDMENT

Section 1

A.   Except as provided in this Article, this Agreement shall remain in full
     force and effect for a three year period commencing July 1, 1986, and
     thereafter for additional one year periods, unless written notice of
     intent to terminate is given to the other party in accordance with
     Section l(b) below.

B.   Such notice of intent to terminate shall be given not sooner than 180
     days before the termination date and not less than 120 days before the
     termination date.  Once such notice is given, the moving party must
     submit its proposals to the other party not less than 120 calendar days
     before the termination date.  The party receiving the proposals may
     submit counterproposals and/or proposals to the other party during the
     next 45 day period.  The parties shall begin negotiations no later than
     70 days prior to the termination date.  This Agreement will remain in
     full force and effect until the implementation of a new basic agreement.

Section 2

Except as provided in Article 2, Section 2, this Agreement may be reopened for
amendment at any time by mutual consent of the parties.  Any request for
amendment shall be in writing and must be accompanied by proposed amendments
or modifications(s).  Within 30 days after a request has been received, the
party receiving the request will indicate either willingness or refusal to
negotiate.  If the consent is obtained or if a request has been made under
Article 2, Section 2, negotiations will commence in accordance with Article
14, Section 3B.  Only those changes accompanying the request shall be
considered unless the parties agree otherwise.

Section 3

Amendment to this Agreement may be required because of changes in applicable
laws, rules, regulations or policies issued by higher authority after the
effective date of this Agreement.  In this event, the parties will meet for
the purpose of negotiating new language that will meet the requirements of
such higher authority.  No changes shall be considered except those bearing
directly on and falling within the scope of such laws or regulations.

Section 4

Except for those specific provisions which have been identified to the arbitrator and submitted to the FLRA for a negotiability determination, all provisions of this Agreement shall be in effect immediately upon approval by the Department of Commerce or within 30 days after the agreement has been submitted to the parties by the arbitrator.  If the FLRA decides that any provision of this Agreement is outside the Office's duty to bargain, then negotiations shall be reopened to consider alternatives to the affected provision.  If the FLRA decides that a provision is negotiable, then the specific provision shall have the effective date it would have had if it had not been submitted for the negotiability determination.

Section 5

For all matters arising prior to the effective date of the appropriate provisions of this Agreement, the provisions governing the resolution of the matter shall be those of the parties' prior Agreement.

88

ARTICLE 35

DEFINITIONS

Section I

In the interpretation and application of the Contract, the following words or terms, whenever used in the Contract, shall have the following definitions, except when otherwise clearly and specifically provided:

A.   Effective date of this Contract shall be May 1, 1986, for the Preamble and Articles 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 (minus Section 10 of Article 10), 14, 15 and 21.  All other Articles will be effective immediately upon approval by the Department of Commerce or within 30 days after the last day of arbitration leading to this Agreement (May 27, 1986).

B.   Time periods as set forth in this Contract are determined to be calendar days, unless specifically identified otherwise.  In computing any period of time prescribed or allowed in the Contract, the day of the act, event, or occurrence from which the designated period of time begins to run shall not be included.  When the day or the last day fixed by any time period for taking action falls on a Saturday, Sunday or a holiday, the action may be taken on the next succeeding day which is not a Saturday, Sunday, or Federal holiday.

C.   Any "justification" or reasons given in writing, as required in this Agreement, shall mean that a management response justifying a particular action shall contain the reasons and arguments that the Office shall rely upon if the action is contested.  Any reasons or arguments that are not presented in the writing shall not be presented in an arbitration, unless the arbitrator permits it after hearing management's justification for not previously providing the information.

D.   "Presentation" means an oral or physical appearance to state a position on a particular issue.  Presentation does not include the writing of documents, such as briefs, etc.  However, such documents may be submitted during a presentation.

E.   An "unwritten practice" in Article 2, Section 2, is a term or condition of employment if, prior to this Agreement, (a) the practice had been consistently exercised for an extended period of time by the parties to this Agreement of (b) the practice had been followed over a substantially long duration by one of the parties and not challenged by the other.  The party asserting the practice must establish the elements of the practice by a preponderance of evidence.  A party may establish that the practice was consistently exercised over

the requisite period of time by demonstrating that the practice occurred with such frequency over such a period of time that a reasonable person would expect it to continue. A party may demonstrate that the practice was followed by both parties, or by one party with the acquiescence of the other, by showing that a substantial number of individuals engaged in the course of conduct establishing the practice, and that the other party "knew" of the conduct and consented to its continuance." A party's knowledge may be implied where circumstances are shown which should have led that party to be aware of the conduct. Likewise, a party's consent may be implied where it is demonstrated that the party did not reasonably exercise its prerogative to communicate its lack of consent to a specific ongoing practice of which it was aware.

F.   "Practical" in Article 5, Section 2, shall mean efficient in the context of the work of PTO professionals. Article 5, Section 2, shall not apply to leaving a work area for the purpose of lunch, breaks or consultations by or with Association representatives.

G.   "Work areas" in Article 5, Section 2, shall mean any area in which a Unit Member performs duties pursuant to his/her Performance Appraisal Plan. For example, the Board of Appeals and the Solicitor's Office shall not be considered work areas for examiners.

H.   "Contemporary business environment" in Article 5, Section 4, includes those private, public and federal professional business offices which interact with the public.

I.   "Announcement" in Article 7, Section 2, shall mean that copies of the notification are posted on bulletin boards and sent to Art Unit Supervisors who shall display them in a conspicuous location.

J.   "Provided" in Article 7, Section 2, shall mean that a copy of the notification shall be sent through interoffice mail to the President of the Association.

K.   "Necessary" in Article 7, Section 7, shall mean that there are relatively few employees who can successfully perform the essential elements of the detail upon entry into it, without a reasonable loss of the quality or quantity of the work needed to be performed.

L.   "Foreign to the member's training and background" in Article 8, Section 6, means that the unit member has no formal education or work experience in a certain technology.

90

M.   "Trainee" as set forth in Article 11, Section 4f, means an individual who has very little or no experience in handling a grievance.  The trainee shall not participate in the presentation.

N.   "Technical Assistant" as set forth in Article 11, Section 4f, means an individual who is knowledgeable in the specific technology involved in a grievance to serve as an advisor to the POPA representative who lacks sufficient technological knowledge in a grievance where such knowledge is necessary.

O.   A "preliminary oral warning" in Article 11, Section 5, is a verbal warning which does not include "specific" findings of fact with respect to a wrongdoing on the part of an employee.  A preliminary oral warning cannot be used as a basis to support any action subsequently taken against the employee in the future.

P.   "Complaint" shall have the common dictionary meaning, except in Article 28, Section 3, the term "discrimination complaint" shall refer to only that part of the EEO procedure after the informal procedure has been exhausted.

**APPENDIX**

Appendix A
# Agreement on Awards

The Commissioner of Patents and Trademarks and POPA hereby agree to amend their agreement of December 13, 1972, as amended, by adding thereto the following article:

## Article XV - Awards
## Section 1. Quality Step Increases

A.  An employee is eligible for a quality step increase if, in accordance with this Article and the employee's performance appraisal plan, the employee performs at an outstanding level in all critical performance elements and achieves at least a satisfactory level in all other performance elements over a period of four consecutive quarters. Because a quality increase will indefinitely raise the employee's salary, the employee's performance must give promise of continuing at the same high level in the same grade and type of position.

B.  Where a standard which measures the quantity of accomplishment for a critical element is included in the performance appraisal plan, an achievement of 110% of an assigned goal shall be the award goal on the factor of quantity to warrant the grant of a QSI. An achievement of 117.5% of an assigned goal shall be prima facie evidence of sufficiently exceptional performance on the factor of quantity to warrant the grant of an additional QSI to an employee having one effective QSI. Achievements of 123%, 128% and 133% are the award goals for employees having two, three and four effective QSIs, respectively. With respect to all performance standards other than quantity, the achievement required for second and subsequent QSIs shall be the same as for the first QSI.

C.  An "effective" QSI is a QSI that raises the salary of an employee above the salary level the employee would be at had the employee received each within-grade increase in the employee's current grade in the minimum time provided by law and regulation. No QSI earned prior to a grade promotion or a change in rank that increases the employee's assigned goal shall be considered an effective QSI. When a salary increase due to a QSI is blocked by a pay cap, that QSI is not an effective QSI.

D.  To be eligible for a quality step increase, an employee must have spent a minimum of 1400 hours during the four quarter award period performing the functions of the employee's job. The functions of a patent examiner's job are patent examining and examining related activities.

## Section 2. Special Achievement Awards for Superior Performance

A.  An employee is entitled to a special achievement award if, in accordance with the employee's performance appraisal plan, the employee performs at the following level over a period of four consecutive quarters:

1 (a).   For patent examiners and classifiers: 110% of an assigned goal for employees having no effective QSIs or 10 percentage points above the minimum quantitative achievement necessary to qualify for the employee's most recent effective QSI. A satisfactory level of performance in each other performance element is also required.

1 (b).   For bargaining unit members other than patent examiners and classifiers: performance at the outstanding level for at least 50% of the critical elements and a satisfactory level of performance in each other performance element.

B.  The basic amount of a special achievement award shall be 3% of the employee's current base per annum salary as of the end of the award period. An employee who has spent at least 1400 hours during the award period performing the functions of the employee's job shall receive the basic amount. An employee who has spent at least 700 hours but less than 1400 hours during the four quarter award period performing the functions of the employee's job shall receive a proportionate amount. The proportionate amount shall be 3% of the employee's base per annum salary times the number of hours spent performing the job functions divided by the 1400 hour base. The functions of a patent examiner's job are patent examining and examining related activities.

C. If the award period for a special achievement award encompasses the date when an employee has received a promotion or a permanent increase in signatory authority, the quantitative achievement required to earn a special achievement award shall be the sum of:

1.   110% of the minimum quantitative achievement necessary to qualify for the promotion or permanent increase in signatory authority for the 13 pay periods prior to said date; and

2.   The achievement that would be otherwise necessary for an award during the periods outside said 13 pay periods.

## Section 3. Implementation Procedures

A.   A written explanation of the reasons for denial of an award shall be given to the employee upon his request.

B.   No employee may, except as provided in Section 4.13. of this Article, receive more than one award for the period used to justify the award. An employee whose performance merits either a quality step increase or a special achievement award shall have the option to refuse either award or both awards.

C.   In determining whether an employee has sufficient quantity to earn an award and in determining the number of hours spent performing the functions of the employee's job, some or all of the hours the employee has worked overtime may, at the employee's option, be subtracted from the total number of hours spent performing the functions of the employee's job during the award period. When a patent examiner has overtime hours subtracted, a number of BDs equal to the number of subtracted overtime hours divided by the examiner's H/BD goal will be subtracted from the total BDs achieved during the award period. When a classifier has overtime hours subtracted, an analogous computation will be made.

D.   Awards will be submitted and forwarded to payroll within two months of the end of the award period or within two months after the employee exercises the option described in Section 3.C. of this Article, whichever occurs later.

## Section 4. Transition Procedures

A.   A special achievement award period under this article shall not begin prior to October 1, 1982.

B.   An employee who is granted a special achievement award under this Article for a four-quarter period which overlaps the award period of a previously received special achievement award shall have the four-quarter award amount reduced by the following: the previously received award amount times the ratio of the number of pay periods of overlap to the total number of pay periods in the award period of the previously received award.

C.   No six-month award period (provided for in the paragraph labeled 2 in the "meaning and effect of a goal" section of the Agreement on Goals executed on July 9, 1976) shall terminate later than the end of the 3rd quarter of FY'83. All employees who qualify for a six-month award by that time shall be granted such award.

D.   To the extent that paragraphs labeled 1 and 2 in the "meaning and effect of a goal" section of the Agreement on Goals executed on July 9, 1976 conflict with specific language within this Article, this Article shall govern. In addition, the minimum time provisions of Section 1D and Section 2B of this Article shall supersede the minimum time provisions set forth in the penultimate sentence of the 1976 Agreement on Goals.

## Section 5. Duration of Effectiveness

A.   This Article shall be effective October 1, 1982, subject to the transition provisions of Section 4 of this Article.

B.   This Article shall expire on the fourth anniversary of this Article, i.e., September 30, 1986, except when both parties have agreed otherwise.

C.   Upon the third anniversary of this Article, or any time thereafter, either party may request reopening of this Article. Once a party has submitted in writing its proposals, the opposite party within three calendar weeks shall submit its proposals and/or counterproposals. Negotiations upon a successor or modified article shall commence no later than two weeks thereafter. The article, as produced or modified by such negotiations, shall be incorporated into the basic agreement between the parties and shall be subject to its terms.

For POPA                                   For PTO
*/s/Ronald J. Stern*                        */s/Donald 1. Quigg for*
Ronald J. Stern                            Gerald J. Mossinghoff
President, POPA                            Commissioner of Patents and Trademarks
Date: June 27, 1983                        Date: June 27, 1983

In the Matter of the Arbitration                    Appendix B
        between
PATENT AND TRADEMARK OFFICE              Case No. 83 FSIP 89
        and
PATENT OFFICE PROFESSIONAL
ASSOCIATION

In accordance with a directive of the Federal Service Impasses Panel, dated September 2, 1983, the parties selected the undersigned as mediator/arbitrato*r in the above styled case. Conferences were held on October 31, November 1, 2, 3 and 4, 1983 in the offices of the Patent and Trademark Office in Arlington, Virginia.

## AWARD

This Award shall be an article in the parties'existing Agreement and shall be incorporated into the parties' next basic Agreement.

This Award is not intended to construe the parties' Memorandum of Understanding-of December 2, 1982 and is not intended to rule upon any claim of either party with respect to that Memorandum of Understanding.

The following provisions shall constitute the Addenda to the Memorandum of Understanding on Impact and Implementation of Relocation of Professional Employees to or within Crystal Square 4, Crystal Plaza 2, Crystal Plaza 3 or Crystal Plaza 4:

I.   The following item is agreed to by the above parties with respect to Patent Examiners, or those acting in that capacity, in the bargaining unit who are not located in Crystal Square 4: When a patent application is ready for allowance except for a classification issue, and a post classifier is not readily available in the Examiner's group to resolve said issue and failure to promptly resolve said issue will result in the application being held beyond an office required "turnaround" time, the Examiner will have the application counted. After this application is counted, the application will be mailed to the appropriate Documentation Division for resolution of the issue.

II.   Non-production time for work related travel shall be granted as·follows to any examiner who, because of relative office and search room relocations during this move, travels to a different building than the one in which his/her office is located to search a class outside of his/her assigned docket: Ten minutes for each round trip between Crystal Plaza 2 and either Crystal Plaza 3 or Crystal Plaza 4. A round trip only encompasses multiple searches in the same building when done during the same trip.

This travel time will be permitted to accumulate over one or more pay periods and will be granted in one hour increments of accumulated time. The examiner will supply the serial number of each application for which at least one of the above type trips is claimed on the Form 690-E for the pay period during which an increment(s) accumulates.

III.   The goal of the Office shall be to provide equivalent offices to examiners of equal grade and signatory authority. The following provisions shall be implemented no later than May 1, 1984:

A.   Within each art unit, priority of office selection shall be determined first by the grade of the examiner, then by the degree of signatory authority, and finally by the amount of time served in the employee's current and previous higher grades (as in the case of down-graded employees) while an employee of the PTO.

B. Selection of employees to share offices shall be made in the reverse order of the priority.

C. Except as provided below, when exa miners agree among themselves to" trade" rooms, their choice shall be honored.

D. If a group director desires to assign a room out of the agreed upon sequence of priority, the director may do so only if the variance is due either to: (a) the physical requirements of the examiner, as in the case of a handicapped person, or (b) special requirements of the work. Conduct or work performance shall not be a basis for room assignments. The director shall have the burden of justifying the variance in writing to the affected employee.

E. All examiners and classifiers, grades 13, 14 and 15, shall be provided with private offices of approxi-mately 150 square feet; however, chemical classifiers shall be provided with separate offices based on the reconstruction of walls within existing space allocations of the Chemical Classification Divisior.

F. All non-examiners and non-classifiers, grades 13, 14 and 15, will be maintained in at least their existing level except for offices presently under the Administrator for Automation for whom every reasonable effort will be made to provide private offices of approximately 150 square feet to the extent the nature of those professionals' work requires privacy.

G.  All examiners and classifiers, GS-12 and below, shall be provided with at least 75 square feet if in an outside office, and at least 100 square feet if in an inside office, except that reasonable variations from these standards shall be allowed where it would be necessary to tear down walls to be in compliance. Neither examiners nor classifiers sheill be placed more than three to an outside, corne- room and no more than two in any other room.

H.  Each non-exa miner and non-classifi er, GS-1 2 and below, presently employed by the PTO who now have office space of at least 75 square feet in an outside office or at least 100 square feet in an inside office shall not be reduced in office space below 75 square feet or 100 square feet respectively. In the event new space is acquired, the first priority of management shall be to provide 75 square feet of outside office space and 100 square feet of inside office space for non-examiners and non-classifiers, GS-12 and below, if the new space or other space can be reasonably used for this purpose. In no case shall non-examiners and non-classifiers, GS-12 and below, have less than 66 square feet of office space.

I.  Within the lowest level organizational unit, office selection for other members of the POPA bargaining unit involved in this reallocation of office space shall be based on analogous criteria to that applied to examiners (e.g., unit, grade, time served).

J.  Prior to any final assignment of offices, the PTO will provide POPA with a listing of office assignments which is such that a determination can be made that the requirements of this section have been met.

IV. For moves subsequent to the execution date of this document, the Office shall send a memorandum to each affected-professional assuring the employee of his/her entitlement to all non-production time agreed to in these negotiations.

V. At the conclusion of each major relocation of examiner offices (e.g., plural art units or a group), the Office shall provide each Art Unit and Classification Group with information sheets containing both (a) the final locations of the examiners and their new telephone numbers, and (b) the final location of each Class (when in a single search room) or major subclass grouping thereof (when the class is located in plural search rooms).

VI. The Office agrees to maintain clerical support for all examiners located on a floor other than the one on which the clerical operation for their group is located. No examiner shall be more than one floor from his/her normal clerical staff. A central pick-up and delivery station shall be provided on floors without clerical support staff. In addition, a photocopier and a PALM terminal will be provided at or near each of these central stations. If the Office fails to maintain an equivalent level (e.g. twice daily pick-ups) of central station clerical service for more than five working days within a bi-week, then any affected examiners shall be provided one hour of non-'production time for travel during that bi-week.

VII. The following items are agreed to by the above parties with respect to the members of the bargainini~, --Init located in buildings other than Crystal Gateway 2:

A. Any member of the bargaining unit who goes to the Crystal Gateway 2 location shall be granted reasonable and adequate time for work related travel.

B. Each examiner shall be provided, at the conclusion of the relocation of personnel into Crystal Gateway 2, with an information sheet containing the room and telephone number for each person located at Crystal Gateway 2.

VIII. The following items have been agreed to by the above parties with respect to the unit members located in Crystal Gateway 2:

A. *Health Services*

The Office will provide the same health services that are provided for PTO employees in all of the other buildings occupied by PTO employees. PTO will endeavor to persuade government agency health services, closer to such employees than the health service in CP-3, to provide emergency medical services to such employees. Management will furnish such health facility with a list of employees with determined emergency health problems.

B. *Parking*

The PTO will make a bona fide effort to get parking spaces within the existing facilities when requested for professionals near their office location in Crystal Gateway 2 at employees' expense. In addition, every bona fide effort will be made to make available one parking space for each disabled personnel where mobility is impaired (e.g., confined to wheelchair, etc.).

Jerome H. Ross
Arbitrator

Appendix C

# Agreement On Trial Gainsharing Program
## Between
## The Patent And Trademark Office
## And
## The Patent Office Professional Association

*The PTO and POPA hereby agree to establish a trial
gainsharing program, effective October 1, 1988, as follows:*

### SECTION 1
### PRODUCTIVITY GAINSHARING AWARDS

*A. Productivity Award*
An employee is entitled to a Productivity Gainsharing Award in an
amount based upon the percentages listed below of the employee's
current base per annum salary as of the end of the award period if an
employee performs at the following levels over a complete fiscal year
beginning October 1, 1988, or any portion of a subsequent fiscal year as
provided for under Section 4A.

1. For patent examiners and patentability review examiners:

| Achievement of Goal* | Performance Rated Quality Elements | Amount of Current Base Salary |
|---|---|---|
| 110% | At least all Fully Successful | 1% |
| 110% | At least all Commendable | 2% |
| 120% | At least all Fully Successful | 3% |
| 120% | At least all Commendable | 4% |
| 130% | At least all Fully Successful | 5% |
| 130% | At least all Commendable | 6% |

At least a Fully Successful level of performance in Workflow
Management is also required.

2. For classifiers:

| Performance Achievement of Goal* | Amount of Rated Quality Elements | Current Base Salary |
|---|---|---|
| 110% | At least Fully Successful | 1% |
| 120% | At least Fully Successful | 3% |
| 130% | At least Fully Successful | 5% |

The classifier's production shall be reduced to a single
percentage achievement by creating a weighted average of the
percent achievement for all production tasks with the weighting
factor being the time spent on each task.

Employees in part 1 and 2 above who have spent at least 1400
hours in a fiscal year performing the functions of the employee's
assigned job shall receive the full amount designated above within
the appropriate award category. An employee who has spent at
least 700 hours in a fiscal year perform-dng the functions of the
employee's assigned job shall receive a proportionate amount
within the appropriate award category. The proportionate amount
shall be the full amount of the appropriate award times the
number of hours spent performing the job functions divided by
the 1400 hour base. The functions of patent examiner's assigned
job are patent examining and examining related activities.

3.  For all other members of the bargaining unit:

| Total Score Critical and Non-Critical Elements | Amount of Current Base Salary |
|---|---|
| 460-474 | 1% |
| 475-489 | 3% |
| 490-500 | 5% |

For the 3%, and 5% awards under 3, the immediate supervisor
Must document that the contributions fat exceed the minimum
requirements for outstanding p(,t-formance in those areas which
affect the Office Pendenc~ and Quality Reinforcement Programs.

An employee in part 3 who has spent at least 1400 hours in a
fiscal year performing the functions of the employee's assigned
job which directly contribute to the Pendency Reduction and
Quality Reinforcement Programs shall receive the full amount
designated above

*The percentages set forth above are applicable for employee.,,
having no effective QSIs. For employees with effective QSIs, the
performance necessary for award consideration are 10, 20 or 30
percentage points above the minimum quantitive achievement
necessary to qualify for the employee's most recent effective QSI.

within the appropriate award category. An employee who has spent at least 700 hours in a fiscal year performing the functions of the employee's assigned job which directly contribute to the Pendency Reduction and Quality Reinforcement Programs shall receive a proportionate amount within the appropriate award category. The proportionate amount shall be the full amount of the appropriate award times the number of hours spent performing the job functions divided by the 1400 hour base.

No Productivity Award shall include the hours of an employee's first year in the Patent and Trademark Office.

4. If the award period for a Productivity Award encompasses the date when an employee has received a promotion or a permanent increase in signatory authority, the quantitative achievement required to earn that award shall be the sum of:

1) 110%, 120%, or 130% as appropriate, of the minimum quantitative achievement necessary to qualify for the promotion or permanent increase in signatory authority for the number of pay periods, up to 13, that are both within the award period and prior to that date; and

2) the achievement that would be otherwise necessary for the award during the pay periods that are both outside the 13 pay periods prior to that date and within the award period.

B. *Pendency Redtiction Award*

In addition to and independent of any Productivity Gainsharing Award under (A) above, patent examiners ~vill be entitled to a Pendency Reduction Award in an amount based upon the percentages listed below of the employee's current base per annum salary as of the end of the award period. In addition to the criteria below, the examiner must perform at a level of at least Fully Successful in the Production Goal Achievement and Quality elements over a period of two consecutive quarters beginning October 1, 1988. In the Workflow Management element, in addition to the criteria set forth below, no more than nine (9) subtraction points may be lost during the two consecutive quarter period.

1. For the Ist and 2nd Quarters of FY 1989:

| Pendency Reduction Award | Amount of Current Base Salary |
|---|---|
| All examiner's answers and responses to amendments replying to non-final Office actions are completed and submitted for credit within one month of their receipit by the examiner. | 1% |

All typed Office communications are mailed within 15 calendar days from the submission for credit by the examiner.

The new case having the oldest actual filing date is completed and submitted for credit each pay period.

2. For the 2nd and 3rd Quarters of FY 1989:

| Pendency Reduction Award | Amount of Current Base Salary |
|---|---|
| Same as above | 0.75% |

3. Each subsequent two consecutive quarters beginning with the 3rd Quarter of FY 1989:

| Pendency Reduction Award | Amount of Current Base Salary |
|---|---|
| Same as above | 0.5% |

However, no Quarter may be used to justify more than one of the above Pendency Reduction awards.

A patent examiner who has spent at least 700 hours during two consecutive quarters performing the functions of the examiner's assigned job shall receive the full amount designated above within the appropriate award category. A patent examiner who has spent at least 350 hours during two consecutive quarters performing the functions of the examiner's assigned job shall receive a proportionate amount within the appropriate award category. The proportionate amount shall be the full amount of the appropriate award times the number of hours spent performing the job functions divided by the 700 hour base. The functions of a patent examiner's job are patent examining and examining related activities.

No Pendency Award shall include the hours of the employee's first year in the Patent and Trademark Office or the first quarter after the completion of a four month or longer detail.

## SECTION 2
## IMPLEMENTATION PROCEDURES

A. Awards granted pursuant to this Agreement shall be in addition to and independent of any benefit conferred by the parties' June 27, 1983 Agreement on Awards, which has been incorporated into the parties 1986 Basic Agreement.

B. A written explanation of the reasons for denial of any award and/or any recognition level required for an award under this Program shall be given to the employee upon histher request.

99

C. In determining whether an employee has sufficient quantity to earn a Productivity Award and in determining the number of hours spent performing the functions of the employee's job, some or all of the hours the employee worked overtime may be subtracted from the total number of hours spent performing the functions of the employee's job during the award period. When a patent examiner has overtime hours subtracted, a number of BDs equal to the number of subtracted overtime hours divided by the examiner's H/BD goal will be subtracted from the total BDs achieved during the award period. When a classifier has overtime hours subtracted, an analogous computation will be made. The overtime subtraction provision contained herein is not applicable to the Pendency Award.

D. Awards will be submitted and forwarded to payroll within two months of the end of the award period.

E. For the purpose of this Agreement, productivity, quality and workflow performance elements and standards are those defined in the October 30, 1986 PAP, regardless of the outcome of the litigation pending before Arbitrator Bloch. The use of the 1986 PAP in this Agreement shall not be used as evidence of the fairness, reasonableness or desirability of using the 1986 PAP for other performance determinations. Accordingly, the PTO shall be barred from introducing this Agreement or any information regarding this Agreement in the pending litigation before Arbitrator Bloch, any litigation arising out of Mr. Bloch's award (including enforcement proceedings), any FSIP proceedings or interest arbitration arising from or replacing the current performance appraisal negotiations and any future litigation arising therefrom or the outcome therefrom, unless explicit written permission is granted by POPA.

## SECTION 3
## DURATION

The Program shall remain in effect for a period of three years from its creation, SUbject to the availability of funds and a determination after October 1, 1989 or at anytime thereafter, by the Office with approval by the Department of Commerce, of the continuing exigencies and the effectiveness of the Program in dealing with the exigencies. If the Office determines that the exigent cirCUmstances no longer exist, or that the Awards Program is not effective in combating the exigencies, or that funding is not available, the Program may be terminated on or after October 1, 1989 subject to the provisions of Section 4.

## SECTION 4
## TERMINATION PROCEDURES

A. Upon providing notice of termination to the members of the bargaining unit, the Trial Gainsharing Program shall terminate at the end of the fiscal quarter in which notice is given. Eligibility standards and award amounts shall be prorated relative to a yearly basis depending on the quarter in which termination is effective.

B. When PTO terminates the Program, it will provide notice to POPA. POPA will be given an opportunity to bargain over the impact resulting from termination of the Program. This will not affect PTO's right to terminate the Program as of October 1, 1989 or at the end of any quarter thereafter. The right to notice and to negotiate over impact will not preclude the PTO from terminating the Program at the end of any quarter after September 30, 1989.

C. If a decision is made to terminate, PTO will provide POPA with available Program cost information and available productivity and pendency data for the period in which the Program was in effect.

FOR: Patent Office Professional Association

*/s/ Ronald J. Stern*
Ronald J. Stern, President
*October 6, 1988*
Date

FOR: Patent and Trademark Office

*/s/ James E. Denny for*
Donald J. Quigg, Assistant Secretary and Commissioner of Patents and Trademarks
*October 6, 1988*
Date

Appendix D

# Memorandum of Understanding
# Between
# Patent and Trademark Office
# And
# Patent Office Professional Association

The PTO and POPA agree as follows:

1. Learning curves, pipeline adjustments and any other adjustments to assigned goals based upon circumstances known in advance shall be communicated up front. If no learning curve, pipeline or other adjustment is warranted, it shall not be granted.

2. The phrase "up front" shall mean that the employee is informed of the adjustment to be granted as soon as practicable, but in no event later than the bi-week after the work to which the adjustment is applicable is assigned.

3. Adjustments when given will be effectuated at the time at which the work to which the adjustment applies is actually completed.

4. Management shall reconsider goal adjustments, upon request by an employee, at later times, up to and including the time at which the employee's performance of the assigned work to which the adjustment is applicable is evaluated.

5. This Memorandum of Understanding shall remain in force until the parties implement a new Memorandum of Understanding on this subject.


FOR: Patent Office Professional Association          FOR: Patent and Trademark Office

*/s/Ronald J. Stern*                                  */s/ James E.Denny for*
Ronald J. Stern, President                            Donald J. Quigg, Assistant Secretary and
                                                      and Commissioner of Patents and Trademarks


*October 6, 1988*                                     *October 6, 1988*
Date                                                  Date